CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
Carolyn.Luedtke@mto.com
JUSTIN P. RAPHAEL (State Bar No. 292380)
Justin.Raphael@mto.com
CHRISTOPHER CRUZ (State Bar No. 346128)
Christopher.Cruz@mto.com
JAVIER KORDI (State Bar No. 348358)
Javier.Kordi@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

Attorneys for *Defendant National
Collegiate Athletic Association*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH COLON, SHANNON RAY, KHALA TAYLOR, PETER ROBINSON, KATHERINE SEBBANE, and PATRICK MEHLER, individually and on behalf of all those similarly situated,<br><br>        Plaintiffs,<br><br>     vs.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, an unincorporated association,<br><br>        Defendants. | Case No. 1:23-cv-00425-WBS-KJN<br><br>**DEFENDANT NCAA'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**<br><br>Judge:    Hon. William B. Shubb<br>Courtroom: 5<br>Date:     July 24, 2023<br>Time:     1:30 p.m. |

## <u>NOTICE OF MOTION AND MOTION TO TRANSFER VENUE</u>

PLEASE TAKE NOTICE that, on July 24, 2023, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5 of this Court, located at 501 I Street, Sacramento, California, Defendant National Collegiate Athletic Association ("NCAA") will and hereby does move this Court for an order transferring this case to the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interest of justice.

This Motion is based upon the Memorandum of Points and Authorities, the attached declaration of Kevin Lennon, all other materials supporting this Motion, all pleadings on file, and any other matter submitted before or at the hearing.

DATED:  May 23, 2023            MUNGER, TOLLES & OLSON LLP


                                By:    /s/Carolyn Hoecker Luedtke
                                       CAROLYN HOECKER LUEDTKE
                                       Attorneys for Defendant National
                                       Collegiate Athletic Association

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO TRANSFER VENUE....................1

I.    INTRODUCTION................................................1

II.   BACKGROUND..................................................3

    A.    The NCAA and the Bylaws at Issue......................3

    B.    The Named Plaintiffs and Putative Class...............4

    C.    Procedural Posture...................................5

III.  ARGUMENT....................................................6

    A.    This Case Could Have Been Brought In The Southern
       District of Indiana..................................7

    B.    Convenience and Fairness Factors Strongly Support
       Transfer.............................................7

        1.   The named Plaintiffs' choice of forum carries
           minimal weight..................................7

        2.   Indiana will be a more convenient location
           for witnesses...................................9

        3.   Ease of access to evidence favors transfer.......12

        4.   Familiarity with applicable law is a neutral
           consideration...................................14

        5.   Local interest in the controversy favors
           transfer........................................14

        6.   Relative court congestion and time to trial
           is a neutral factor.............................17

IV.   CONCLUSION.................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Aftab v. Gonzalez*,
   597 F. Supp. 2d 76 (D.D.C. 2009) ...........................18

*Agnew v. NCAA*,
   2011 WL 13152860 (N.D. Cal. Feb. 22, 2011) .......11, 12, 13, 14

*Aldrich v. NCAA*,
   484 F. Supp. 3d 779 (N.D. Cal. 2020) ....................15, 16

*D.J. Markham v. Variable Annuity Life Ins. Co.*,
   2022 WL 891290 (E.D. Cal. Mar. 25, 2022) ...............6, 7, 9

*Doe 1 v. NCAA*,
   2023 WL 105096 (N.D. Cal. Jan. 4, 2023) .................15, 16

*Ecological Rts. Found. v. U.S. E.P.A.*,
   2019 WL 5295124 (N.D. Cal. Oct. 18, 2019) ....................16

*Italian Colors Rest. v. Am. Express Co.*,
   2003 WL 22682482 (N.D. Cal. Nov. 10, 2003) ..................10

*Johns v. Panera Bread Co*,
   2008 WL 2811827 (N.D. Cal. July 21, 2008) ....................8

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir.2000) ..................................6

*Lou v. Belzberg*,
   834 F.2d 730 (9th Cir. 1987) .................................7

*O'Bannon v. NCAA*,
   2009 WL 4899217 (N.D. Cal. Dec. 11, 2009) ...................13

*Saleh v. Titan Corp.*,
   361 F. Supp. 2d 1152 (S.D. Cal. 2005) .......................12

*Skyriver Tech. Sols v. OCLC Online Comput. Libr. Ctr.
   Inc.*,
   2010 WL 4366127 (N.D. Cal. Oct. 28, 2010) ...................11

*Stewart Org. v. Ricoh Corp.*,
   487 U.S. 22 (1988) ...........................................6

*Ward v. Fluor Enters., Inc.*,
   2011 WL 778720 (N.D. Cal. Mar. 1, 2011) .......................8

*Wilson v. Conair Corp.*,
   2014 WL 4249514 (E.D. Cal. Aug. 27, 2014)(Shubb, J.) .........10

*Wolfram Alpha LLC v. Cuccinelli*,
   490 F. Supp. 3d 324 (D.D.C. 2020) ...........................18

**STATE CASES**

*Barenborg v. Sigma Alpha Epsilon Fraternity*,
   33 Cal. App. 5th 70 (Cal. App. 2019) ........................15

**FEDERAL STATUTES**

28 U.S.C. § 1404(a)...................................1, 2, 6, 7

Clayton Act...................................................7

Sherman Act...................................................7

**FEDERAL RULES**

Fed. R. Evid. 201(b)..........................................9

**OTHER AUTHORITIES**

*Hearing on The Need for New Lower Court Judgeships, 30
   Years in the Making*, 117th Cong. 2-3 (2021)
   (statement of Chief Judge Mueller, E.D. Cal.,
   https://docs.house.gov/meetings/JU/JU03/20210224/1112
   37/HHRG-117-JU03-Wstate-MuellerK-20210224-U1.pdf
   (last visited Feb. 23, 2023) ...............................17

*U.S. District Courts Federal Court Management
   Statistics*, Reporting Period Ending June 30, 2022,
   https://www.uscourts.gov/file/45245/download (last
   visited Feb. 23, 2023) .....................................18

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

This is the second case filed in the Eastern District involving a legal challenge to bylaws adopted by colleges and universities across the country who are members of the NCAA, an unincorporated association of nearly 1,100 member institutions nationwide, which is based in Indianapolis, Indiana.  The first case was *Smart v. NCAA* and it was brought on behalf of a putative class of volunteer baseball coaches.  Plaintiffs here similarly allege that NCAA bylaws improperly restricted Division I teams to a fixed number of coaches and allowed a volunteer coach in violation of federal antitrust laws.  Careful to not step on the *Smart* plaintiffs' toes, the named Plaintiffs here–living in six different states and hailing from five different sports–seek to represent a nationwide class of volunteer coaches in all Division I sports "other than baseball" where the challenged bylaw applied.  In the unlikely event such a class is certified, it would map on to the geographic spread of the NCAA's member institutions – the vast majority of which are found in the Midwestern, Southern or Eastern region of the United States. Based on the NCAA's location in Indianapolis and the potential distribution of the class and witnesses, defendant NCAA submits the convenience of the parties and witnesses, as well as the interest in justice, would be better served by transferring this case to the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a).  A similar motion to transfer for the *Smart* case is fully briefed and pending and set for the same hearing date, July 24, 2023.

Transfer is warranted here, as in *Smart*, because the case has strong connections to Indiana and no greater connection to this District than other districts where putative class members and the institutions where they coached are located. The named Plaintiffs in this case are spread across the country, just as the putative class would be. None of the six named Plaintiffs reside in this District, and only one resided in this District during their time as a volunteer coach. Joseph Colon was allegedly a volunteer wrestling coach at Fresno State University from 2017–2020 and now lives in Illinois. The other named Plaintiffs live in Florida, Texas, Georgia, Washington D.C. and the Bay Area, and none of them worked as a volunteer coach in this District. In other words, this District has almost no connection to the allegations in the Amended Complaint, Indiana is closer to the residences of five of the six named Plaintiffs, and no named Plaintiff resides in or coaches in this District. The putative class will similarly be spread across the country and will not have a particular connection or concentration in this District.

The challenged bylaws at issue in this litigation also have no tie to this District. The bylaws were developed in Indianapolis, were adopted by NCAA member institutions nationwide through a process facilitated by NCAA staff members based in Indianapolis, and are enforced from Indianapolis. There is no allegation that any of that legislative process of adopting or enforcing the bylaw took place in California, let alone this District. Because Indiana has the strongest connection of any District to this litigation, transfer under Section 1404(a) makes

sense here and the NCAA respectfully requests that this Court exercise its discretion and transfer the litigation.

## II.   BACKGROUND

### A.   The NCAA and the Bylaws at Issue

The NCAA is based in Indianapolis, Indiana.  Amended Class Action Complaint ¶ 13 ("Am. Compl."); Declaration of Kevin Lennon In Support of Motion to Transfer ("Decl.") ¶ 3.  It is a voluntary unincorporated association created by nearly 1,100 member colleges and universities across the country to administer intercollegiate athletics.  Am. Compl. ¶¶ 13, 28, 41.  "The NCAA together with its members have long adopted and enforced rules that regulate college sports."  *Id.* ¶ 34.  For example, the NCAA member institutions set rules "concern[ing] everything from how the games are played to standards of amateurism to rules governing the size of athletic squads and coaching staffs."  *Id.*

NCAA legislation is adopted by its member institutions, who consider the legislation either from their respective campuses, at NCAA Conventions at venues across the country, or at meetings and conferences at NCAA headquarters in Indiana.  Legislation includes bylaws such as those challenged in this litigation. Decl. ¶¶ 7, 8.  The NCAA national office staff communicates with member institutions about legislation proposed by the membership, works with the membership and governance committees to draft the proposed legislation, disseminates the draft legislation among member institutions, and schedules meetings for the membership to vote on specific legislation.  *Id.* ¶ 8.  In addition, "the NCAA employs a staff to ensure compliance with and to enforce bylaws and other legislation…."  Am. Compl. ¶ 47.  National office

staff work from the NCAA's headquarters in Indianapolis, Indiana. Decl. ¶¶ 6, 8.

Division I Bylaws 11.7.6 and 11.7.6.2.3, challenged here, limit each Division I member institution to a specific number of paid coaches per sport. Am. Compl. ¶ 44. The bylaws permit members to also bring on a volunteer coach, who cannot receive compensation or benefits. *Id*. ¶ 3.

In January 2023, the membership of the NCAA voted to repeal the volunteer coach designation across Division I and instead include those coaches within the new limits for countable coaches in each of the applicable sports. Decl. ¶ 8. This was the result of work by various NCAA committees comprised of representatives of member institutions across the country and supported by national office staff from the NCAA's headquarters in Indianapolis. *Id*. ¶¶ 6, 8-9. The bylaw challenged in this litigation will no longer apply after July 1, 2023. *Id*. ¶ 9.

**B.    The Named Plaintiffs and Putative Class**

Plaintiffs allege that Division I has "about" 350 schools with "approximately 24 of them" being located in California. Am. Compl. ¶ 13, 28. Plaintiffs believe the proposed class will include "over 1000 members residing in various parts of the United States." *Id*. ¶ 21.

Six named Plaintiffs seek to represent this 1,000-member-plus putative nationwide class of present and former coaches.

- Joseph Colon coached wrestling at Fresno State University from 2017-2020 and now lives in Illinois. Am. Compl. ¶ 7.

- Shannon Ray coached track and field at Arizona State University from 2019-2021 and now resides in Florida. *Id*. ¶ 8.

-4-

- Khala Taylor coached softball at San Jose State University from 2022 to the present and now resides in California (though not in the Eastern District).  *Id.* ¶ 9.

- Peter Robinson coached swimming and diving at the University of Virginia from 2019–2021 and now resides in Texas.  *Id.* ¶ 10.

- Katherine Sebbane coached softball at the University of Pittsburgh from 2019–2021 and now resides in Georgia.  *Id.* ¶ 11.

- Patrick Mehlert, coached soccer at American University from 2019 to the present and now resides in Washington, D.C.  *Id.* ¶ 12.  He was a volunteer coach from 2019 to 2021.

The Complaint is silent as to the named Plaintiffs' current professions and whether they were also coaches with other Division I programs in other states.  The Complaint is also silent as to what efforts these six named Plaintiffs made, if any, to find coaching jobs other than their alleged volunteer coaching jobs for a couple years at each of the designated colleges or universities.

Although the named Plaintiffs hail from only five sports, the Amended Complaint proposes the named Plaintiffs represent a class of people who served as volunteer coaches "for an NCAA Division I sports program other than baseball."  *Id.* ¶ 20.  By Plaintiff's own allegations, this may include up to 45 different sports for which no plaintiff is named.  *Id.* ¶ 32.  Men's sports may include cross country, golf, ice hockey, lacrosse, tennis, and track and field.  And women's sports may include cross country, field hockey, golf, lacrosse, rowing, soccer, swimming and diving, tennis, and volleyball. *Id.*

C.   **Procedural Posture**

The NCAA respectfully requests this Court transfer the case to the Southern District of Indiana.  If the Court elects to retain the case in the Eastern District of California, the NCAA has filed a motion to dismiss the Amended Complaint.

## III. ARGUMENT

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  Under § 1404(a), a district court "has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc*., 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp*., 487 U.S. 22, 29 (1988)) (internal quotation marks omitted).  Ultimately the moving party, here the NCAA, "bears the burden of showing that transfer is appropriate." *D.J. Markham v. Variable Annuity Life Ins. Co.*, 2022 WL 891290, at *2 (E.D. Cal. Mar. 25, 2022).

"In determining whether to transfer a case under § 1404(a), district courts employ a two-step analysis." *Id.* at *2 (granting motion to transfer nationwide class action to forum where defendant corporation is based).  First, the moving party must show that the transferee forum is a forum in which the action could have been brought. *Id.*  Then, as a second step, "the Court must consider a number of public and private factors to determine whether, on balance, the transfer is warranted, such as: (1) plaintiff's choice of forum; (2) convenience of the witnesses; (3) convenience of the parties; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law;

(6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum."  *Id.*

Looking at these factors that go to convenience and the interest of justice, they either favor transfer to Indiana or are neutral or inapplicable.  On balance, the factors support transfer.

### A.   This Case Could Have Been Brought In The Southern District of Indiana

First, as a threshold matter, there is no question that this action could have been brought in the Southern District of Indiana.  As the Amended Complaint pleads, subject matter jurisdiction is based on a federal question and commerce and antitrust regulations, namely, the Clayton Act and Sherman Act. Am. Compl. ¶ 15.  The NCAA's "principal place of business" is in Indianapolis, within the Southern District of Indiana.  *Id.* ¶ 13. This case is therefore eligible for transfer to the Southern District of Indiana pursuant to 28 U.S.C. §1404(a).

### B.   Convenience and Fairness Factors Strongly Support Transfer

Next, this Court should look to the various factors to determine whether, on balance, transfer is appropriate here. Those factors counsel in favor of transfer to Indiana.

#### 1.   The named Plaintiffs' choice of forum carries minimal weight.

Plaintiffs' choice of forum is entitled to little deference when a case—like this one—involves a putative nationwide class scattered throughout the country.  *See, e.g., Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("When an individual brings a

derivative suit or represents a class, the named plaintiff's choice of forum is given less weight."); *Ward v. Fluor Enters., Inc.*, 2011 WL 778720, at *3-4 (N.D. Cal. Mar. 1, 2011) (in alleged nationwide class action, plaintiffs' "choice of forum is entitled to minimal deference."). Because Plaintiffs seek to represent a class of Division I volunteer coaches residing across the country who coached sports (other than baseball) at colleges and universities located across the country, there is little reason to defer to Plaintiffs' chosen forum in this District.

In granting a motion to transfer in *Johns v. Panera Bread Co*, the Northern District of California similarly gave little weight to the choice of forum where a California-based store manager tried to represent a nationwide class against a Missouri-based defendant. 2008 WL 2811827 (N.D. Cal. July 21, 2008). In that case, only 32 of Panera Bread's 509 stores were located in California, and only 40 of the 1,400 store managers worked in California. *Id*. at *3. The court thus granted transfer from plaintiff's home in California to defendant's headquarters in the Eastern District of Missouri, finding that plaintiff's decision to represent a nationwide class "substantially undercut[]" the deference courts would generally give to plaintiff's chosen forum. *Id*. at *2. Like in *Panera Bread*, "the numbers" detailed in the *Colon* Plaintiffs' Amended Complaint "tell a different story" than the one suggested by Plaintiffs' chosen forum. *Id*. at *3. There is an alleged nationwide class of Division I volunteer coaches. Less than 7% of Division I member schools are located in California. Am. Compl. ¶¶ 13, 28 (24 out of 350). Even fewer are located *in this District* (5 out of 350, or 1.4%).

*Id.*; Decl. ¶ 10  (identifying Cal State Bakersfield, Fresno State, Sacramento State, UC Davis, and University of the Pacific, Stockton as Division I schools located in this District).  The vast majority of NCAA member institutions for which class members may have volunteered are located in the East, South, and Midwestern United States.  See Decl. ¶ 10, Ex. A (list of Division I member institutions and their geographic regions).[1]

Given the tiny fraction of the potential nationwide class that resides in this District, the Plaintiffs' choice of this District as their forum is entitled to little deference.

### 2. Indiana will be a more convenient location for witnesses.

"The convenience of witnesses is one of the most important factors in determining whether a transfer under § 1404 is appropriate."  *Markham*, 2022 WL 891290, at *4 (finding that where most of defendant's witnesses would be in their home venue, this factor weighed in favor of transfer).  Taken together, the Complaint and Lennon Declaration indicate the party witnesses in this case will be (1) NCAA employees who all work in Indianapolis, (2) six named Plaintiffs, only one of which resides west of the Rockies and none of whom reside in this District, and (3) yet to be identified class members who volunteered as coaches at over 350 Division I schools, the majority of which are in the

---

[1] The Court can take judicial notice of the location of NCAA member institutions on this motion, because the fact of the location of these schools is (a) not subject to reasonable dispute, (b) generally known within the territorial jurisdiction of this Court and/or (c) capable of accurate determination by sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

East, South, and Midwest and are thus closer to Indianapolis than
Sacramento.  Am. Compl. ¶¶ 7-13, 21; Decl. ¶¶ 6 (NCAA's
approximately 500 employees work in Indianapolis), 8 (NCAA
employees worked with member institutions on the volunteer coach
legislation at issue in this litigation from the NCAA's
headquarters in Indianapolis), 10 (identifying 5 Division I
programs in this District and noting that the vast majority of
Division I programs are in the South, Midwest, and East).

The costs of litigation are generally "reduced when venue is
located near most of the witnesses expected to testify or give
depositions." *Italian Colors Rest. v. Am. Express Co.*, 2003 WL
22682482, at *5 (N.D. Cal. Nov. 10, 2003).  This is especially
true where "most of the witnesses" are expected to be "the
defendants' employees" who worked in the home venue of defendant
in the transferee district.  *Id.* at *3, *5 (transferring
nationwide class action with a California-resident plaintiff to
New York where defendant had its principal place of business and
drafted and developed the challenged policy from that office).
This is not a case where transfer will "merely 'shift the
inconvenience from one party to another.'"  *Wilson v. Conair
Corp.*, 2014 WL 4249514, at *5 (E.D. Cal. Aug. 27, 2014)(Shubb,
J.) (citation omitted).  As the Lennon Declaration indicates,
NCAA employee-witnesses would find it more convenient to testify
in the Midwest, and the net inconvenience borne by the
geographically dispersed Plaintiff-side witnesses would not
meaningfully change if transfer were granted.  *See id.* (denying
motion to transfer despite defendant's declaration that its

1  employee-witnesses would testify from the East Coast, where
2  entire plaintiff class resided in California).

3      The NCAA's employees work in Indianapolis.  Decl. ¶ 6.  This
4  makes the Southern District of Indiana a much more convenient
5  forum for them.  *See, e.g.*, *Agnew v. NCAA*, 2011 WL 13152860, at
6  *2 (N.D. Cal. Feb. 22, 2011) (granting transfer of nationwide
7  class action and recognizing that "the Southern District of
8  Indiana likely would be more convenient for defense witnesses
9  employed by NCAA").  In light of Plaintiffs' allegations of
10 anticompetitive conduct by the NCAA, the convenience of the
11 NCAA's employee witnesses should be given more weight than the
12 convenience of Plaintiffs or the putative class members.  *See*
13 *Skyriver Tech. Sols v. OCLC Online Comput. Libr. Ctr. Inc.*, 2010
14 WL 4366127, at *3 (N.D. Cal. Oct. 28, 2010) (granting motion to
15 transfer after finding convenience of defendant's employee
16 witnesses more important than convenience for plaintiff's
17 witnesses in litigation over anticompetitive business practices
18 where merit of allegations hinge on activity by defendant where
19 it operates its business).

20     Plaintiffs' alleged class consists of more than one *thousand*
21 current and former volunteer coaches from across the country who
22 coached at any NCAA Division I member institution.  Am. Compl.
23 ¶¶ 20, 21.  Only five Division I programs are located in this
24 District out of more than 350 nationwide.  *Id*. ¶¶ 13, 28;
25 Decl. ¶ 10.  Putative class members presumably reside all across
26 the country just like named Plaintiffs.  In the unlikely event
27 that a class is certified in this case, any members of that class
28 who provide testimony, or otherwise play an active role in this

-11-

case, are likely to find the centrally-located Southern District of Indiana a more convenient forum than this District.

If third-party colleges or universities who employed the volunteer coaches and/or non-volunteer coaches are witnesses in this case, they also could be from any or all fifty states, making the Southern District of Indiana more convenient given its central location in the nation.  "Importantly, while the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor." *Agnew*, 2011 WL 13152860, at * 3 (*quoting Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005)).  The *Agnew* court in granting transfer noted that the plaintiff there conceded (as he must) that "the members of NCAA's boards, councils and committees are 'located all over the country,' and 'their locations do not favor either forum.'"  *Id.*  The court further explained "that NCAA committees meet throughout the country and the location of non-party witnesses who are members of those committees would not favor one forum over another."  *Id.*  *Agnew* found that "convenience to non-party witnesses is a neutral factor."  *Id.*

Thus, transfer to Indiana would be much more convenient for NCAA party witnesses and at least as convenient for nationally-dispersed Plaintiff class and potential third-party witnesses.

### 3.   Ease of access to evidence favors transfer.

The NCAA's business records are stored primarily at its headquarters in Indianapolis.  Decl. ¶ 11.  This is not a document intensive case, but as discussed above, access to the evidence is facilitated by transferring the case because relevant documents and potential witnesses from the NCAA are much more

likely to be located in or near the Southern District of Indiana (or in one of the fifty states from which the putative nationwide class resides) than in or near this District.  As the Northern District of California recognized in transferring the *Agnew* antitrust litigation against the NCAA to Indiana, "[a]lthough 'modern technology has significantly reduced the costs associated with the transfer of documents' in the case of electronic records, *O'Bannon v. NCAA*, 2009 WL 4899217, at *2 (N.D. Cal. Dec. 11, 2009), litigation expenses will be minimized by adjudicating the action in the district where most of the documentary evidence is located."  *Agnew*, 2011 WL 13152860, at *3.  Here, that warrants transfer to Indiana.

The ease-of-access-to-evidence factor further weighs in favor of transfer due to the nature of the allegations. Plaintiffs are challenging the NCAA's bylaws, and their artful pleading cannot disguise the fact that the adoption and enforcement of the bylaws emanate from the NCAA's headquarters in Indianapolis.  *See* Am. Compl. ¶¶ 41 (detailing legislative process), 47 (detailing NCAA's enforcement staff).  As further set forth in the Lennon Declaration, the NCAA national office staff provides support for its member institutions from Indianapolis.  Decl. ¶ 8.  The NCAA national office staff works with those institutions to draft proposed legislation and disseminates that legislation.  They do the same thing when the membership adopts legislation repealing a bylaw.  *Id.*  Mr. Lennon testified that the NCAA national office staff followed this process for the all challenged bylaws, and this work was "all by

DEFENDANT NCAA'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

NCAA national office staff working from the Indianapolis, Indiana area." *Id*.

### 4. Familiarity with applicable law is a neutral consideration.

The familiarity with applicable law factor is neutral. This case is solely an antitrust case under federal law, and both this District and the Southern District of Indiana are equally well-suited to address federal antitrust issues. *See Agnew*, 2011 WL 13152860, at *3 (noting that the Northern District of California and the Southern District of Indiana were equally able to address plaintiff's Sherman Act claim).

### 5. Local interest in the controversy favors transfer.

There is stronger local interest in this litigation in Indiana because the NCAA is based in Indiana and is accused of adopting an unlawful bylaw through its membership, which was facilitated and enforced from Indiana. In *Agnew*, the Northern District of California granted a motion to transfer a putative class action against the NCAA to Indiana. In so doing, it found the "NCAA is headquartered in Indianapolis and most of its employees live and work there. Thus Indiana has a strong interest in this litigation." *Agnew*, 2011 WL 13152860, at *3. In explaining its reasoning, the court held that since the member institutions at which plaintiff athletes participated in sports "are dispersed throughout the United States," and because the NCAA was based in Indianapolis, the fact some member institutions are in California gives California "no greater interest in this litigation than other states." *Id.* at *3. *Agnew* is on all four corners with this case. The fact that one coach–Plaintiff Joseph

Colon—allegedly coached for three years at Fresno State in this District before moving to his current residence, Illinois, does not give California any greater interest in this litigation than any other state, given that Colon seeks to represent over 1,000 people "residing in various parts of the United States."  Am. Compl. ¶¶ 20, 21.  Further, there is no allegation that Plaintiff Colon continues to coach in California (the Complaint instead alleges he resides in Chicago).  Nor does Plaintiff Khala Taylor's alleged ongoing coaching and residence in California's Bay Area (in San Jose and Oakland, respectively, both outside this District) supplant Indiana's local interest.

The NCAA does not have significant contacts with this District.  The NCAA does not maintain any offices anywhere in California.  Decl. ¶ 4.  The Complaint's assertion that the NCAA has a "substantial presence" in California conflates member institutions—which exist in every state—with the presence and acts of the NCAA as an entity.  Am. Compl. ¶ 13; Decl. ¶ 5. California law expressly recognizes unincorporated associations as legal entities separate and apart from their members.  *See Barenborg v. Sigma Alpha Epsilon Fraternity*, 33 Cal. App. 5th 70, 77 (Cal. App. 2019) (finding local chapter of fraternity is a separate legal entity from respondent, the overarching national fraternal organization with over 200 chapters).

Analogous reasoning by courts in personal jurisdiction cases confirm that challenges to the NCAA's policies are best adjudicated where the NCAA is headquartered.  In two recent cases, putative plaintiff classes alleged that the NCAA had a duty to adopt bylaws related to sexual assault or harassment by

coaches.  *Aldrich v. NCAA*, 484 F. Supp. 3d 779, 795 (N.D. Cal. 2020); *Doe 1 v. NCAA*, 2023 WL 105096, at *8-11(N.D. Cal. Jan. 4, 2023).  In both of those cases, the court dismissed the case for lack of personal jurisdiction over the NCAA and both were refiled in the Southern District of Indiana.  Judge Davila explained in *Aldrich*, and Judge Beeler agreed in *Doe*, that the NCAA facilitates the implementation of nationwide legislation in Indiana, where it is headquartered, meaning that any alleged harm caused by the failure to enact legislation "arises out of Indiana," not California.  *Aldrich*, 484 F. Supp. 3d at 795; *see also Doe 1*, 2023 WL 105096, at *8-11.

The same logic applies here.  The challenged conduct relates to the legislative process of enacting bylaws.  The NCAA's role in that membership process occurs in Indiana, where its national staff works.  The fact that the bylaws are implemented nationally means only that coaches in this district have no greater interest in this forum that coaches in any other forum.  As Judge Seeborg recently held, where plaintiffs challenge a nationwide policy which "does not affect citizens of the Northern District of California any more significantly than it affects citizens of any other district," then the transferor forum's local interest in keeping the case within that forum in minimal.  *Ecological Rts. Found. v. U.S. E.P.A.*, 2019 WL 5295124, at *3 (N.D. Cal. Oct. 18, 2019) (granting motion to transfer to D.C. where plaintiffs "cannot and do not claim that the nationally applicable Rule, promulgated by the EPA in Washington, DC, has any special effect in this district; citizens in every district are equally affected

by it," and "neither party has any contacts with this district *related* to the facts underlying this case").

To the extent there are allegations about member schools "collectively employ[ing] significant numbers of coaches pursuant to the NCAA volunteer coach rule," Am. Compl. ¶ 13, the member school's individual employment decisions are not attributable to the NCAA, and the Complaint does not allege otherwise. The Complaint makes clear that four of the six named Plaintiffs have absolutely no contacts with this District or California; the contacts of the remaining two are minimal at best when compared to the aggregate interest of all potential class members.

Overall, this factor favors transfer to the Southern District of Indiana, which has stronger contacts with this litigation and a stronger interest in this litigation.

### 6. Relative court congestion and time to trial is a neutral factor.

This District is one of the busiest in the nation. Chief Judge Kimberly J. Mueller testified before the House Judiciary Committee on February 4, 2021 that this district has "qualified for judicial emergency status" for at least 20 years. *Hearing on The Need for New Lower Court Judgeships, 30 Years in the Making*, 117th Cong. 2-3 (2021) (statement of Chief Judge Mueller, E.D. Cal.), https://docs.house.gov/meetings/JU/JU03/20210224/111237 /HHRG-117-JU03-Wstate-MuellerK-20210224-U1.pdf (last visited May 22, 2023). The Southern District of Indiana is also a busy District. In fact, the Eastern District of California and the Southern District of Indiana were both in the top ten districts nationally with the highest number of pending cases per judge for

the year ending June 30, 2022.  And for that same time period, in looking at the number of months a civil case takes on average to get from filing to disposition, it is 10.4 months for the Eastern District of California and 10.1 months for the Southern District of Indiana.[2]  And, comparing weighted filings (which take into account the complexity of cases) for both Districts for the same time period, the two Districts are comparably burdened with this District having a rating of 674 and the Southern District of Indiana weighted at 689.[3]  Where both Districts face comparable burdens on their dockets as is the case here, this factor is neutral.  *See Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 83 (D.D.C. 2009) (granting motion to transfer and finding that the court congestion factor slightly favors transfer where the transferee court "has a lower median time from filing to disposition, but has a larger total case load"); *Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 336 (D.D.C. 2020) ("when statistics regarding relative congestion are mixed, this factor should be deemed as neutral").

**IV.   CONCLUSION**

Looking at the factors, no factor favors retaining the case in this District, and the convenience of witnesses, the location of evidence, and the Southern District of Indiana's stronger connection to this litigation all weigh in favor of transfer. The NCAA respectfully requests that this Court transfer this

---

[2] *See U.S. District Courts Federal Court Management Statistics*, Reporting Period Ending June 30, 2022, https://www.uscourts.gov/file/45245/download (last visited Feb. 23, 2023).

[3] *See id.*

1 | action, alongside with its related case in *Smart v. NCAA,* to the

2 | Southern District of Indiana.

3 |

4 | DATED:  May 23, 2023          MUNGER, TOLLES & OLSON LLP

5 |

6 |                                    By: _____
                                            */s/Carolyn Hoecker Luedtke*
7 |                                        CAROLYN HOECKER LUEDTKE
                                           Attorneys for Defendant National
8 |                                        Collegiate Athletic Association