CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
Carolyn.Luedtke@mto.com
JUSTIN P. RAPHAEL (State Bar No. 292380)
Justin.Raphael@mto.com
CHRISTOPHER CRUZ (State Bar No. 346128)
Christopher.Cruz@mto.com
JAVIER KORDI (State Bar No. 348358)
Javier.Kordi@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

*Attorneys for Defendant National Collegiate Athletic Association*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLOR SMART AND MICHAEL HACKER, Individually and on Behalf of All Those Similarly Situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, an unincorporated association,<br><br>    Defendant. | No. 2:22-cv-02125 WBS KJN<br><br>**DEFENDANT NCAA'S NOTICE OF MOTION AND MOTION FOR CLARIFICATION AND/OR RECONSIDERATION ON THIS COURT'S JULY 27, 2023 ORDER ON DEFENDANT'S MOTION TO DISMISS** |
| JOSEPH COLON, SHANNON RAY, KHALA TAYLOR, PETER ROBINSON, KATHERINE SEBBAME, and PATRICK MEHLER, individually and on behalf of all those similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, an unincorporated association,<br><br>    Defendant. | No. 1:23-cv-00425 WBS KJN |

## NOTICE OF MOTION AND MOTION FOR CLARIFICATION AND/OR RECONSIDERATION

PLEASE TAKE NOTICE that, on October 2, 2023, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5 of this Court, located at 501 I Street, Sacramento, California, Defendant National Collegiate Athletic Association ("NCAA") will, and hereby does, moves this Court for clarification of its statement in its July 27, 2023 Memorandum and Order Re: Defendant's Motion to Transfer and Motion to Dismiss (Smart ECF No. 29; Colon ECF No. 38) that "quick-look analysis is appropriate here." *Id.* at 17.

The NCAA respectfully requests that the Court clarify that its motion to dismiss decision referred only to whether plaintiffs had pled sufficient allegations to state a quick look claim at the pleadings stage, and that the NCAA may litigate the proper standard of scrutiny based on the factual record that develops in this action, which often includes expert testimony.

In the alternative, to the extent that the Court's order did decide the mode of analysis that applies in this case, the NCAA respectfully requests that the Court reconsider that decision and defer decision on the proper mode of scrutiny until the summary judgment stage.

This Motion is based upon Eastern District of California Local Rule 230(j), the following Memorandum of Points and Authorities, all other materials supporting this Motion, all pleadings on file, and any other matter submitted before or at the hearing on the Motion.

DATED: August 11, 2023          MUNGER, TOLLES & OLSON LLP

By: */s/CAROLYN HOECKER LUEDTKE*
       CAROLYN HOECKER LUEDTKE

*Attorneys for Defendant National Collegiate Athletic Association*

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant NCAA understands that this Court has denied the NCAA's motions to dismiss the antitrust claims in the *Smart* and *Colon* actions and this motion does *not* ask this Court to dismiss those claims. Rather, the NCAA moves this Court to clarify its statement that "quick-look analysis is appropriate here" (Smart ECF No. 29; Colon ECF No. 38). Neither party asked the Court to resolve on the pleadings the important issue of which standard of scrutiny applies to the NCAA bylaws that Plaintiffs contend were unlawful. To the contrary, both parties argued that the issue should be decided at a later stage of the case. The NCAA therefore respectfully requests that the Court clarify that its motion to dismiss decision referred only to whether plaintiffs had pled sufficient allegations to state a "quick look" claim at the pleading stage, and that the NCAA may litigate the proper standard of scrutiny based on the factual record that develops in discovery, which often includes expert testimony.

"The rule of reason is the presumptive or default standard" for evaluating alleged restraints of trade. *California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1133 (9th Cir. 2011). Under the rule of reason, "the plaintiff has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018). A "quick look" mode of analysis "shifts to a defendant the burden to show empirical evidence of procompetitive effects." *FTC v. Actavis, Inc.*, 570 U.S. 136, 159 (2013) (citation omitted).

The NCAA's motions to dismiss did not ask the Court to

1  decide what standard of antitrust scrutiny should apply.  As the
2  NCAA explained, "the proper mode of antitrust scrutiny that
3  should be applied to the challenged bylaws is not at issue on
4  this motion."  *Smart* ECF No. 22 at 2.  The NCAA's lead argument
5  that Plaintiffs had failed to plead causal antitrust injury did
6  not require determining which mode of analysis applies because
7  causal antitrust injury is a required element of a federal
8  antitrust claim regardless of what mode of scrutiny applies.  *See*
9  *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344
10 (1990).  The NCAA's alternative argument that Plaintiffs had
11 failed to state a claim under a rule of reason theory because
12 they had failed to plead a proper relevant market did not seek
13 dismissal of Plaintiffs' "quick look" theory.
14     Both the *Smart* and *Colon* plaintiffs agreed that the Court
15 should not decide the proper mode of antitrust scrutiny on the
16 pleadings.  The *Colon* plaintiffs argued that "courts need not
17 decide which framework to apply at the motion-to-dismiss stage"
18 because "that decision is more appropriate on a motion for
19 summary judgment."  *Colon* ECF No. 32 at 16 (citation omitted).
20 The *Smart* plaintiffs similarly argued that "deciding which
21 standard to apply 'is more appropriate on a motion for summary
22 judgment' than a motion to dismiss."  *Smart* ECF No. 18 at 18-19
23 (citation omitted).  The parties accordingly did not brief
24 whether a "quick look" standard should apply instead of a full
25 rule of reason standard.
26     There was good reason for the parties to ask the Court to
27 defer deciding that issue.  Courts regularly conclude that the
28 pleading stage is "simply too early to assess which standard of

-2-
DEFENDANT NCAA'S MOTION FOR CLARIFICATION OR RECONSIDERATION

review should be applied to Plaintiffs' allegations," *In re Blue Cross Blue Shield Antitrust Litig.*, 26 F. Supp. 3d 1172, 1186 (N.D. Ala. 2014), and "that decision is more appropriate on a motion for summary judgment" than a motion to dismiss. *In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1122 (N.D. Cal. 2012); *see Frame-Wilson v. Amazon.com, Inc.,* 591 F. Supp. 3d 975, 988 n.1 (W.D. Wash. 2022) ("a decision on the applicability of a quick look analysis is more appropriate on a motion for summary judgment"), reconsideration denied, No. 2:20-CV-00424-RAJ, 2022 WL 4240826 (W.D. Wash. Aug. 2, 2022).[1]  *Cf. Cont'l Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 511 (4th Cir. 2002) (noting that there is no "case in which the Supreme Court has approved a quick-look analysis in which the parties received less than a full evidentiary hearing, either before an administrative agency or in court").

This case law reflects that deciding whether to apply an abbreviated "quick look" analysis involves issues that require factual development.  Courts "take special care not to" depart from the default rule of reason "until [they] have amassed 'considerable experience with the type of restraint at issue' and

---

[1] *See also United States v. eBay, Inc.*, 968 F. Supp. 2d 1030, 1039–40 (N.D. Cal. 2013)(finding that "without the benefit of discovery, and thus without sufficient factual evidence to support their contentions," the "court simply cannot determine with certainty the nature of the restraint, and by extension, the level of analysis to apply"); *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, No. 17CV205-MMA (MDD), 2018 WL 3032552, at *18 (S.D. Cal. June 19, 2018) ("Because the Court cannot 'at this early stage make a determination as to which rule will apply,' the Court cannot find as a matter of law that the quick-look and/or rule of reason standards will not apply to the challenged restraints in this case." (citation omitted)).

1 'can predict with confidence that it would be invalidated in all
2 or almost all instances.'" *NCAA v. Alston*, 141 S. Ct. 2141, 2156
3 (2021) (citation omitted).  Indeed, "if an arrangement 'might
4 plausibly be thought to have a net procompetitive effect, or
5 possibly no effect at all on competition,' then a 'quick look'
6 form of analysis is inappropriate." *Safeway*, 651 F.3d at 1134
7 (citation omitted).  Thus, "before concluding that an alleged
8 restraint has the sorts of anticompetitive effects that justify
9 quick look analysis, courts must consider whether in the context
10 of the allegedly restrained market, the 'restrictions might
11 plausibly be thought to have a net procompetitive effect, or
12 possibly no effect at all on competition.'"  *Toscano v. PGA Tour,*
13 *Inc.*, 201 F. Supp. 2d 1106, 1121 (E.D. Cal. 2002) (citation
14 omitted).

15     As the Supreme Court has explained, before a court "can
16 justify shifting to a defendant the burden to show empirical
17 evidence of procompetitive effects, as quick-look analysis in
18 effect requires, there must be some indication that the court
19 making the decision has properly identified the theoretical basis
20 for the anticompetitive effects and considered whether the
21 effects actually are anticompetitive." *Cal. Dental Ass'n v. FTC*,
22 526 U.S. 756, 775 n.12 (1999).  Because a "quick look" is
23 appropriate only where "an observer with even a rudimentary
24 understanding of economics could conclude that the arrangements
25 in question would have an anticompetitive effect on customers and
26 markets," *Safeway*, 651 F.3d at 1134 (citation omitted), it is
27 common for parties to present testimony from expert economists on
28 that issue. *E.g.*, *Major League Baseball Props., Inc. v. Salvino,*

-4-
DEFENDANT NCAA'S MOTION FOR CLARIFICATION OR RECONSIDERATION

1 *Inc.*, 420 F. Supp. 2d 212, 220 (S.D.N.Y. 2005) (finding "the
2 quick look doctrine is inappropriate" based on testimony of
3 defendant's expert economist), *aff'd,* 542 F.3d 290 (2d Cir.
4 2008).

5     The rules challenged are not obviously anticompetitive, for
6 example, because bylaws prohibiting compensation to volunteer
7 coaches enhanced competition between Division I teams by
8 reinforcing bylaws limiting the number of paid coaches per team,
9 which ensure that top, highly-resourced programs would not
10 stockpile large numbers of coaches who otherwise could be head
11 coaches or other coaches at other programs.  *NCAA v. Bd. of*
12 *Regents of Univ. of Oklahoma*, 468 U.S. 85, 117 (1984) (noting
13 that "the interest in maintaining a competitive balance among
14 amateur athletic teams is legitimate and important").  Such
15 justifications cannot be dismissed on the pleadings, especially
16 where the proper mode of analysis was not an issue that the NCAA
17 asked the Court to decide in its motion to dismiss.

18     Indeed, as a practical matter, deciding whether "quick look"
19 applies at the pleading stage would put a defendant in a
20 difficult position.  A dismissal motion cannot go beyond the
21 pleadings.  Accordingly, unless the plaintiff made the tactical
22 error of pleading justifications for the conduct it contends is
23 unlawful, it would be challenging to show that "a 'quick look'
24 form of analysis is inappropriate" because the restraints could
25 have a "net procompetitive effect." *Safeway*, 651 F.3d at 1134.

26     In short, although the proper mode of antitrust scrutiny is
27 a question of law, "underpinning that purely legal decision are
28 numerous factual questions." *In re Wholesale Grocery Prods.*

1  *Antitrust Litig.*, 752 F.3d 728, 733-34 (8th Cir. 2014).
2  Consistent with these principles, the NCAA did not argue in its
3  motions to dismiss that the Court should decide that the rule of
4  reason rather than a "quick look" should apply and all Plaintiffs
5  argued that the Court should defer that decision until summary
6  judgment.  The NCAA therefore requests clarification that the
7  Court's motion to dismiss decision did not resolve whether a
8  "quick look" or full rule of reason mode of analysis should apply
9  but instead merely held that the Plaintiffs had plead sufficient
10 facts to proceed to discovery on a quick look theory.
11     In the alternative, to the extent that the Court's order did
12 decide the mode of analysis that applies in this case, the NCAA
13 respectfully requests that the Court reconsider that decision and
14 defer decision on the proper mode of scrutiny until the summary
15 judgment stage.

Respectfully submitted,

DATED:  August 11, 2023          MUNGER, TOLLES & OLSON LLP


                                 By:    */s/CAROLYN HOECKER LUEDTKE*
                                        CAROLYN HOECKER LUEDTKE

                                        *Attorneys for Defendant National*
                                        *Collegiate Athletic Association*