GARRETT R. BROSHUIS
(Bar No. 329924)
gbroshuis@koreintillery.com
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Attorneys for Plaintiffs Taylor
Smart and Michael Hacker,
Individually and on Behalf of All
Those Similarly Situated
[*additional attorneys listed on
signature page*]

DENNIS STEWART (State Bar No. 99152)
dstewart@gustafsongluek.com
GUSTAFSON GLUEK PLLC
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone: (612) 333-8844
Facsimile: (612) 339-6622

Attorneys for Plaintiffs Joseph
Colon, Shannon Ray, Khala Taylor,
Peter Robinson, Katherine Sebbane,
and Patrick Mehlert, Individually
and on Behalf of All Those
Similarly Situated [additional
attorneys listed on signature page]

CAROLYN H. LUEDTKE
(State Bar No. 207976)
carolyn.luedtke@mto.com
JUSTIN P. RAPHAEL
(State Bar No. 292380)
Justin.Raphael@mto.com
CHRISTOPHER CRUZ
(State Bar No. 346128)
Christopher.Cruz@mto.com
JAVIER KORDI
(State Bar No. 348358)
Javier.Kordi@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Flr.
San Francisco, CA 94105-2907
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077

Attorneys for Defendant
National Collegiate Athletic
Association, an
Unincorporated Association.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TAYLOR SMART AND MICHAEL HACKER, Individually and on Behalf of All Those Similarly Situated,<br>　　　　Plaintiffs,<br>　　　v.<br>NATIONAL COLLEGIATE ASSOCIATION, an unincorporated association,<br>　　　　Defendant. | No. 2:22-cv-02125 WBS KJN<br>Chief United States Magistrate Judge Kendall J. Newman (KJN)<br>*Assigned for non-dispositive matters*<br><br>**STIPULATION AND ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION ("ESI") AND HARD COPY DOCUMENTS** |
| JOSEPH COLON, SHANNON RAY, KHALA TAYLOR, PETER ROBINSON, KATHERINE SEBBAME, and PATRICK MEHLER, individually and on behalf of all those similarly situated,<br>　　　　Plaintiffs,<br>　　　v.<br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, an unincorporated association,<br>　　　　Defendant. | No. 1:23-cv-00425 WBS KJN<br>Chief United States Magistrate Judge Kendall J. Newman (KJN)<br>*Assigned for non-dispositive matters* |

## I.   GENERAL GUIDELINES

1.   **General.** The purpose of this Order is to facilitate the exchange of ESI and hard copy documents in accordance with the Federal Rules.

2.   **Scope.** Except as specifically set forth herein, this Order does not: (a) alter or affect the applicability of the Federal Rules of Civil Procedure ("Federal Rules") or any Local Rules of the Eastern District of California ("Local Rules"), as applicable; (b) address, limit, determine, or affect the relevance, discoverability, or admissibility as evidence of any document or ESI, regardless of whether the document or ESI is to be preserved, is preserved, or is produced; or (c) alter or affect the objections to discovery available under the Federal Rules.

3.   **Limitations and Non-Waiver.** By stipulating to this Order and agreeing to produce documents, generally, in a particular form or forms, no party waives any objections to producing any particular document or category of documents on any grounds whatsoever.

4.   **Variations.** If any Party[1] identifies a circumstance where application of this Order is not reasonably feasible, the Party will disclose to the Party requesting the ESI or hard copy documents ("Requesting Party") the reason(s) for, and

---

[1] "Party," "Receiving Party," and "Producing Party" shall have the same meaning as in the Protective Order entered by the Court in this case.

circumstances surrounding, the need to vary from this Order, and the Parties will meet and confer in an effort to reach agreement on an appropriate deviation from this Order. In the event the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

5.   **Cooperation.** The Parties are aware of the importance the Court places on cooperation, and commit to cooperate in good faith throughout the matter consistent with their obligations under the Federal Rules, in particular Rule 1.

## II.   IDENTIFICATION AND COLLECTION OF DOCUMENTS AND ESI

6.   **Custodians and Sources.** Prior to conducting a search for responsive ESI, regardless of the search methodologies to be employed, the Parties shall meet and confer and exchange information regarding the following: (a) the identity and role of custodians from which documents and ESI may be obtained for production; (b) the identity, scope, and format of custodial and non-custodial sources from which documents and ESI may be obtained for production; (c) the identity and scope of sources of documents and ESI that may be produced without the use of technology assisted review or search terms; (d) applicable timeframe(s) for collection and review of documents and ESI; and (e) prioritization of categories of documents and ESI that may be collected, reviewed, and produced. Where applicable, sources of Documents, on which the parties will meet and confer, include, but are not limited to, computers, laptops, local hard drives, file

servers, databases, SANs, NASs, email servers, web servers, network home or personal file shares, any shared drives, document management systems (DMS), record management systems (RMS), content management systems (CMS), departmental/project/collaborative/shared storage spaces, removable storage, on-line data storage (e.g., Dropbox or Google Drive), messaging applications and programs, phones, tablets, social media, and physical or hard copy files and documents.

7.    **Known Responsive ESI Must Be Produced.**  Reasonably accessible documents or ESI known to a custodian to be responsive to a discovery request or relevant to the subject matter of this action shall be produced without regard to whether it was responsive to any search methodology described herein or developed in accordance with this Order, unless Counsel specifically identifies the documents being withheld pursuant to a specific objection. If a Producing Party is aware of inaccessible data that is likely to contain unique, discoverable ESI, it will identify the source from which it claims the data is not reasonably accessible.

8.    **Search Methodology.** If the Producing Party is filtering documents to eliminate collected documents from review, the Parties will meet and confer about search and filtering methodologies and parameters. The Producing Party will disclose any list of search terms, and/or date filters, and the Receiving Party may propose additional parameters. The Parties shall participate in an iterative and cooperative approach, and agree

to meet and confer regarding the search protocol and to raise any disputes regarding the search protocol for resolution by the Court.

9.   **Use of Predictive Coding or Other Search Technologies.** If at any point a party intends to use predictive coding (including technology-assisted review or "TAR"[2]), the party will disclose such intent to the Receiving Party and the Parties will meet and confer regarding an appropriate protocol. If the Parties are unable to agree on the TAR protocol being proposed after meeting and conferring, the Parties shall notify the Court of their unresolved dispute(s) and seek resolution by the Court.

10.   **Unsearchable Documents.** Documents which are reasonably believed to be responsive to discovery requests and not subject to objections and for which text-based search technologies are fundamentally ineffective must be reviewed without culling by search terms, predictive coding, or other technologies that rely primarily on text.

11.   **Continuing Obligations.** The Parties will comply with their obligations to supplement disclosures and responses to the

---

[2] "Technology-assisted review" is defined as "A process for prioritizing or coding a collection of electronically stored information using a computerized system that harnesses human judgments of subject-matter experts on a smaller set of documents and then extrapolates those judgments to the remaining documents in the collection." *The Sedona Conference Glossary: eDiscovery and Digital Information Management, Fifth Edition*, 21 SEDONA CONFERENCE J. 263 (2020).

extent required by Rule 26(e) of the Federal Rules of Civil Procedure.

12.    **Reservation of Rights.** Upon reviewing any production made by another Party in this action or conducting other investigation and discovery, any Receiving Party may request that documents from additional non-custodial data sources and custodians be produced, or request to reassess or confer regarding the parameters used for document collection, search, review and validation process, and any Producing Party may object to such requests.

**III. Form of Productions**

13.    **ESI File Types and Formats.** All unredacted spreadsheet (e.g., Microsoft Excel, Corel Quattro,) files shall be produced as native files with TIFF placeholder images. All media files, such as audio and video files (e.g., .wav, .mpeg, and .avi), files shall also be produced as native files with TIFF placeholder images. A party may seek other document types in native format on a showing of good cause. The Producing Party shall not unreasonably deny such a request. Emails and all other documents shall be produced as TIFFs. If documents cannot be produced in a readable format in TIFF, the Producing Party will produce them in a reasonably useable format.

14.    **TIFF Images.** Documents produced with TIFF images shall be named according to the Bates number of the corresponding TIFF image. Each *.tiff file should be assigned a unique name matching

the Bates number of the corresponding image. All TIFF images should be provided in single-page, Group IV TIFF with a resolution of 300 DPI. Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff image. These *.tiff images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files. Original document orientation as displayed in the native file should be maintained in the TIFF image (i.e., portrait to portrait and landscape to landscape).

15. **Metadata.** The metadata fields detailed in Appendix A should be produced for each document to the extent that such information is available at the time of collection and processing, except that if a field contains privileged information, attorney work product, or information otherwise protected from disclosure, that information may be redacted and any redacted information must be noted in a corresponding privilege/redaction log, as described in Section V below. The Producing Party must populate, where possible, the (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) NativeFileLink, (g) TextPath, (h) Redaction status, and (i) Confidentiality designation fields. These fields should be populated for all produced ESI, as well as paper Documents converted to electronic form, regardless of whether the fields can be populated pursuant to an automated process. Other than paper Documents converted to electronic form, ESI shall be processed in a manner that preserves the source native file and

relevant metadata without modification, including their existing time and date metadata consistent with the requirements provided in this Order.

16.   **Native Files.** Any file produced in native file format shall be given a file name consisting of a unique Bates number. Each responsive document produced in native format will also have its confidentiality, if applicable, designation identified in the filename of the native file or in fielded metadata." For each native file produced for which a TIFF rendering of the document is not produced, the production will include a *.tiff image slipsheet indicating the production number of the native file and the confidentiality designation, and stating "File Provided Natively" To the extent that it is available, the original document text shall be provided in a document-level UTF-8 text file with a text path provided in the *.dat file Native files will be produced in a separate folder.

17.   **Production Format for Hard Copy Documents.** Documents that exist in hardcopy will be scanned to *.tiff image format and produced with a load file, single page TIFF images in the same format as electronic files, except the metadata fields provided will be limited to in accordance with the specifications set forth on <u>Appendix A</u>. Also, instead of extracted text, OCR text will be provided, if reasonably available, for scanned hard copy documents. In scanning paper documents, the parties will take

reasonable efforts to identify and logically unitize[3] obviously distinct documents. If OCR is not reasonably available, the parties shall meet and confer about the method of production.  If documents were scanned previous to this case, however, and are not logically unitized, they may be produced in the format in which they were maintained. In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately.  Where a Document or group of Documents has an identification spine, "post-it note," or any other label, the information on the label shall be scanned and, to the extent not privileged, produced.

18.   **Digital Photos.** Where reasonably possible, all digital photographs will be produced as full color image files in color TIFF, pdf, or native format (such as .jpg).

19.   **Databases, Structured, Aggregated, or Application Data.** The Parties will produce documents collected from databases or other structured databases in a reasonably useable format. The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured or aggregated data source if the Producing Party cannot produce the data in a reasonably useable format. If

---

[3] Logical Unitization is the process of human review of each individual page in an image collection using logical cues to determine pages that belong together as documents. Such cues can be consecutive page numbering, staples, clips, binders, report titles, similar headers and footers, and other logical indicators.

STIPULATED ESI PROTOCOL

the Producing Party produces responsive data prior to conferring with Receiving Party, then the Receiving Party may still request the production of responsive data in a different format subject to the Producing Party's objection.  To the extent available, the Producing Party will produce a data dictionary for the fields provided and will answer reasonable requests to explain any codes or abbreviations contained in the structured data through a meet-and-confer process.

20.   **Non-English Documents.** To the extent that documents are produced that contain languages other than English, in whole or in part, the Producing Party shall produce each such document in the original language or languages in which it was written when collected. The Producing Party has no obligation to create a translation of the documents or any portion thereof for the purposes of production in this litigation, but if one already exists, it must also be produced along with the original, with a notation identifying it as such.

21.   **Mobile and Handheld Device Documents and Data.** If non-duplicative responsive data contained on a mobile or handheld device that can reasonably be extracted is identified throughout the discovery process, that data shall be produced in accordance with this Order. To the extent that non-duplicative, responsive data identified on a mobile or handheld cannot be produced in a reasonably useable format, the Parties will meet and confer to address the identification, production, and production format of

any non-duplicative, responsive documents and data contained on any mobile or handheld device.

22. **Compressed and Encrypted Files.** Compressed file types (e.g., .CAB, .GZ, .TAR .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a compressed files are decompressed into the lowest possible compression resulting in individual files. Original compression files need not be produced, provided the responsive content files are produced in accordance with the specifications of this ESI Protocol. The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (e.g., password-protected) and that can be reasonably unencrypted.

23. **Printing Specifications for Excel PowerPoint and Adobe PDF Files.** For Excel PowerPoint and Adobe PDF type files that are printed to TIFF for redaction and redacted, the following printing options shall be enabled:

| **Excel Print to TIFF Options** |
| --- |
| • Unhide columns and rows |
| • Unhide worksheets |
| • Autofit columns and rows, settings to be over by columns first and, then down by rows |
| • Wrap text |
| • Print gridlines |
| • Display headings |
| • Display comments |
| **PowerPoint Print to TIFF Options** |
| • Print notes pages |
| • Print hidden slides |
| • Print comments |

STIPULATED ESI PROTOCOL

24. **De-NISTing.** The Producing Party shall take reasonable efforts to de-NIST ESI productions using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology. De-NISTED files need not be produced.

25. **Deduplication.** ESI produced by the Parties may be globally de-duplicated across all collected custodial and non-custodial sources using MD5 hash or SHA-1 hash. Documents are considered exact duplicates if a document family or stand-alone file has a matching MD5 or SHA-1 hash value as compared against the same document type (i.e., family or stand-alone file). Near-duplicate documents shall not be removed. De-duplication shall not break apart families and shall be performed at a family level. A document and all other documents in its attachment range, emails with attachments and files with extracted embedded OLE documents all constitute family groups. If any member of a family group is produced, all members of that group must be also be produced (or logged for privilege) and no such member shall be withheld from production as a duplicate. The names of all custodians and non-custodial sources who were in possession of a document prior to deduplication will be populated in the ALL CUSTODIANS metadata field. Should the ALL CUSTODIANS metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and folder paths for the affected documents will be produced prior to substantial completion of the document production. The Producing Party agrees

that the presence of a custodian's name contained in the "ALL CUSTODIANS" field in the metadata for a particular document is evidence that the custodian possessed that document in his/her custodial file.

26. **Email Threading.** Where multiple email messages are part of a single chain or "thread," a Party is only required to produce the most inclusive message(s) ("Last In Time Email(s)") and need not produce earlier, lesser inclusive email messages or "thread members," to the extent that they are fully contained, (including attachments and including identical senders and recipients), within the Last In Time Email(s). Only email messages for which the parent document and all attachments are contained in the Last In Time Email(s) will be considered lesser-inclusive email messages that need not be produced. If there is a concern about how documents are produced with threading, the Parties will meet and confer in good faith to attempt to resolve. The Parties are permitted – for specific, one-off requests that are infrequent and targeted – to make reasonably calculated particularized requests for metadata in suppressed email messages.

27. **Short Message Data.** Electronic messages exchanged between users on communication software such as Microsoft Teams and Slack shall be produced in a searchable format that preserves the conversational relationship and presentational features of the original messages, such as emojis, images, video files, and animations. Electronic messages must not be converted to unitized

files that contain less than a 24-hour period of conversation. Redactions may be applied to privileged or non-responsive portions of a conversation. To the extent electronic messages cannot be produced in a reasonably useable format, the Parties will meet and confer to address the identification, production, and production format of short message data.

28. **Embedded Files.** To the extent reasonably possible, embedded files are to be produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded. Non-substantive automatically-generated embedded files, such as logos, embedded, non-substantive formatting files such as .ole or .dll formats, zero-byte files, widgets, or confidentiality legends need not be produced as separate attachments.

29. **Collaboration Tools.** The Parties agree to produce the latest in time version of documents stored on a collaboration or document management tool. To the extent the Receiving Party desires to receive previous versions of documents, if any, the Receiving Party will identify the document(s) with specificity and the Parties will engage in a meet and confer process relating to the same.

30. **Parent-Child Relationships.** For email families, the parent-child relationships (e.g., the association between an attachment and its parent email, or a spreadsheet embedded within a word processing document) should be preserved. All nonprivileged email attachments should be, where reasonably

possible, consecutively produced with the parent email record. For example, if a party is producing an email with embedded attachments, the attachments must be processed and assigned Bates numbers in sequential order, following consecutively behind the parent email.

31.   **Bates Numbering.** Bates numbering should be consistent across the production, contain no special characters or blank spaces, be zero-padded, and be numerically sequential within a given document. The Producing Party will identify the Bates number range of each production in a cover letter or production log accompanying the production. If a Producing Party skips a Bates number or set of Bates numbers in a production, the Producing Party will identify and note the gap in the cover letter or production log accompanying the production. All attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. In addition, wherever possible, each *.tiff image will have its assigned Bates number electronically "burned" onto the image. If the Receiving Party believes that a Bates number obscures the content of a Document, then the Receiving Party may request that the Document be produced with the Bates number in a different position.

32.   **Excluded File Types.** Absent a particularized need and good cause showing, the Parties agree that there is no need to collect ESI from the following sources:

a.    Deleted, slack, fragmented, or other data only accessible by forensics;

b.    Random access memory (RAM), temporary files, or other data difficult to preserve without disabling the operating system;

c.    On-line access data such as temporary internet files, history, cache, cookies, and the like;

d.    Back-up data that is duplicative of data that can be collected elsewhere; and

e.    Server, system, or network logs.

33.    **Redactions.** No redactions for relevance may be made within a produced document or ESI item. Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction, and a metadata field shall indicate that the document contains redactions. (All redactions must be logged in a Privilege/Redaction Log, to be negotiated by the Parties separately. Where a responsive family of documents contains both redacted and non-redacted content, or both produced and withheld documents, the Parties shall produce the remainder of the non-redacted portions of the family of documents as TIFFs rather than natives, except for Excel spreadsheets which may be redacted in native form, and with the text/OCR corresponding to the non-redacted portions. Documents that sometimes do not render in a readable format to TIFF, such as Excel spreadsheets, may be redacted in native form as long as the Producing Party keeps a

pristine, unredacted copy of the native file and identifies the natively redacted documents to the Receiving Party in the production cover letter or by way of a native redaction field. A document's status as redacted does not relieve the producing party from providing all of the metadata required herein. If modification of a native file is required for redaction purposes, metadata information associated with that file should remain unchanged, unless it also requires redaction.

34. **Other Documents.** All TIFF images of redacted native files shall be processed to show and reveal all hidden text, including track changes, comments, and hidden content in Word documents and speaker notes and hidden content in PowerPoint files. Email header information (e.g. date, subject line.) should not be redacted unless it is independently privileged. The production of a document in a redacted form does not affect the Parties' obligation to timely assert and substantiate the assertion of privilege over the content in a privilege/redaction log.

35. **Color.** The requesting party may request the reproduction of documents in color TIFF format, JPEG format, or in native format where color facilitates understanding of the document.

36. **Load File Formats.** ESI will be produced with a standard Concordance (*.dat) load file format and an image load file that is in .OPT format. The Concordance (*.dat) load file shall

contain a relative path to the corresponding Native file, and be provided with UTF-8 encoding.

The data load file should use standard Concordance delimiters:

- Delimiter – ¶(ASCII 020);
- Quote – þ (ASCII 254);
- Newline – ® (ASCII174);
- Multi-value delimiter – ; (ASCII Code 059)
- The first line of the .DAT file should contain the field names arranged in the same order as the data is arranged in subsequent lines.
- All date fields should be produced in mm/dd/yyyy format, if possible.  Date fields may be combined date/time fields.
- All produced attachments should sequentially follow the parent Document/email.

The image load file must be in standard Option (.OPT) format and must reference each TIFF file in the corresponding production, and the total number of TIFF files referenced in the load file must match the total number of image files in the production. The total number of Documents referenced in a production's data load file should match the total number of designated Document breaks in the corresponding image load file for that production. In any deliverable volume, documents should be organized in such a way that each folder in the volume contains 1000 files (each TIFF page or native file is a single file) as one file per folder.

- Every image in the delivery volume should be cross-referenced in the image load file.

- The imageID key should be named the same as the Bates number of the page.

- Load files should not span across media (e.g., CDs, DVDs, hard drives), i.e., a separate volume should be created for each piece of media delivered.

37. **Extracted Text and OCR.** Each document, whether produced in Native or in TIFF format, and whether originally existing in electronic or in hard copy, shall be produced with extracted text or OCR (subject to paragraph 12, above), as described herein.

a.   Extracted Text (Emails, Unredacted Native ESI, and Natively Redacted Spreadsheets). All email, un-redacted ESI, and redacted spreadsheets produced as native files, should be provided with complete document-level extracted text files. Extracted text shall include all comments, track changes, and hidden content in Word documents and speaker's notes and hidden content in PowerPoint files. Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments.

       b.    <u>OCR (Redacted Native ESI, Hard Copy Documents)</u>. In the event a document, other than natively redacted spreadsheets, e.g., Excel files, contains text that is to be redacted, Optical Character Recognition ("OCR") text files should be provided for any un-redacted portions of the documents. Document-level OCR text files shall also be provided for all hard copy scanned documents subject to the caveat in paragraph 17, above.

       c.    <u>Format of Extracted Text and OCR.</u> The extracted full text and/or OCR text for all deliverables should be in separate document-level, UTF-8 TXT files provided in a separate folder. The number of TXT files per folder should be limited to 1,000 files.

38.  **Exception Files.** The Parties will use reasonable efforts and standard industry practices to address documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI where the document appears to contain relevant content).

**IV.  PROCESSING OF NON-PARTY DOCUMENTS**

39.  This ESI Protocol shall apply to any non-Party that produces documents in this action.

40.  A Party that issues a non-Party subpoena ("Issuing Party") must include a copy of this Order with the subpoena and request that the non-Party produce documents in accordance with the specifications set forth herein.

41.   The Issuing Party is responsible for producing to all other Parties any document(s) obtained pursuant to a subpoena to any non-Party in the form in which the document(s) was/were produced by the non-Party. To the extent practical given the data volume and load time, productions by a non-Party should be produced by the Issuing Party to all other Parties within twenty one (21) calendar days of the non-Party's production to the Issuing Party.

42.   For the avoidance of doubt, nothing in this Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-Parties to object to a subpoena.

**V.   PRIVILEGE/REDACTION LOGS**

43.   Should any documents be withheld by a Party on the basis of attorney/client privilege, work-product privilege, a joint-defense privilege, or any other applicable privilege, immunity, or protective doctrine, the Parties shall provide a privilege log within a time period and in a format to be agreed upon by the Parties (or, if the Parties are unable to reach such agreement, as directed by the Court). If a claim of privilege applies to only a portion of a document, the document shall be produced and the portion claimed to be privileged shall be obscured and stamped "Redacted."  Redacted documents need not be logged in the first instance. The Parties also agree that communications between the Parties and outside counsel of record

in this litigation occurring on or after November 29, 2022 need not be logged. The Parties shall meet and confer in good faith regarding the timing and format of privilege logs, including approaches, tools, and other workflows that may streamline and reduce the cost and burden associated with the privilege logging process.

44.   The inadvertent or mistaken disclosure of any material in this action is not a waiver of the attorney-client privilege, work product doctrine or any other asserted privilege in any other federal or state proceeding, pursuant to Federal Rule of Evidence 502(d).

45.   If any disputes arise concerning any privilege/redaction log, the Parties shall meet and confer to try to reach a mutually agreeable solution.

## VI.   MISCELLANEOUS PROVISIONS

46.   **Preservation.** The Parties shall have a continuing obligation pursuant to Fed. R. Civ. P. 26 to identify and preserve custodial and non-custodial data sources that existed prior to the filing of this action and that may contain information that is relevant to the claims and defenses in this litigation that are reasonably accessible and the preservation of which is reasonable and proportional to the needs of this case.

47.   **Third Party Data.** The Parties will meet and confer before serving any subpoenas in this matter on commercial e-mail

providers, such as Google or Yahoo, or any social media companies such as Meta Platforms, Inc. or X Corp.

48.   **Effect of Order.** The Parties' agreement to this Order is without prejudice to the right of any Party to seek an order from the Court to rescind or amend this Order for good cause shown. Nothing in this Order abridges the rights of any person to seek judicial review or to pursue other appropriate judicial action with respect to any discovery ruling made by the Court in this matter.

49.   **Good Faith Compliance and Conferral Obligation.** The Parties will make good faith efforts to comply with and resolve any differences concerning compliance with this Order. No Party may seek relief from the Court concerning compliance with this Order unless it has first conferred with the other Parties.

50.   **Encryption.** To maximize the security of information in transit, any media or file sharing electronic document repository on which documents are produced must be encrypted. Production deliverables provided via File Transfer Protocol ("FTP") shall be made available on a secured FTP connection. In such cases, the Parties shall transmit the encryption key or password to a requesting Party, under separate cover, contemporaneously with sending the encrypted media, or correspondence indicating the availability of the encrypted FTP deliverables.

51.   **Modifications.** This Order may be modified by a stipulation of the Parties or by the Court for good cause shown.

## VII. ESI LIAISONS

52.  To promote transparency, communications, and cooperation between the Parties, the Parties shall designate e-discovery liaisons for purposes of meeting and conferring on ESI topics. As proposed by the Parties, the ESI liaison for Plaintiffs shall be Robert Gralewski and Anthony Maneiro of Kirby McInerney and Garrett Broshuis and Steve Berezney of Korein Tillery, or their designee(s), and the ESI liaisons for the NCAA shall be Carolyn Luedtke, Justin Raphael, Chris Cruz, and Javier Kordi at Munger, Tolles & Olson LLP, or their designees.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD:

DATED:  September 29, 2023

MUNGER, TOLLES & OLSON LLP


By: ___*/s/CAROLYN HOECKER LUEDTKE*___
CAROLYN HOECKER LUEDTKE
CAROLYN H. LUEDTKE
(State Bar No. 207976)
carolyn.luedtke@mto.com
JUSTIN P. RAPHAEL
(State Bar No. 292380)
Justin.Raphael@mto.com
CHRISTOPHER CRUZ
(State Bar No. 346128)
Christopher.Cruz@mto.com
JAVIER KORDI
(State Bar No. 348358)
Javier.Kordi@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street,
Twenty-Seventh Floor
San Francisco, California
94105-2907
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

*Attorneys for Defendant National*
*Collegiate Athletic Association*

Case Nos. 2:22-cv-02125 and 1:23-cv-00425 WBS KJN
STIPULATED ESI PROTOCOL

KOREIN TILLERY, LLC

1

2          By: _____*/s/GARRETT R. BROSHUIS*_____

3                  GARRETT R. BROSHUIS
                STEPHEN M. TILLERY *(pro hac vice)*
4               stillery@koreintillery.com
                STEVEN M. BEREZNEY (Bar No.
5               329923)
                sberezney@koreintillery.com
6               GARRETT R. BROSHUIS (Bar No.
                329924)
7               gbroshuis@koreintillery.com
                KOREIN TILLERY, LLC
8               505 North 7th Street, Suite 3600
                St. Louis, MO 63101
9               Telephone: (314) 241-4844
                Facsimile: (314) 241-3525
10

11              *Attorneys for Plaintiffs Taylor*
                *Smart and Michael Hacker,*
12              *Individually and on Behalf of All*
                *Those Similarly Situated*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GUSTAFSON GLUEK PLLC

By: _____*/s/JAMIE CROOKS*_____
        JAMIE CROOKS
        DENNIS STEWART
        (State Bar No. 99152)
        dstewart@gustafsongluek.com
        DANIEL E. GUSTAFSON
        (#202241 pro hac)
        dgustafson@gustafsongluek.com
        JOSHUA J. RISSMAN
        (#391500 pro hac)
        jrissman@gustafsongluek.com
        NOAH L. COZAD (#402643 pro hac)
        ncozad@gustafsongluek.com
        GUSTAFSON GLUEK PLLC
        Canadian Pacific Plaza
        120 South 6th Street, Suite 2600
        Minneapolis, MN 55402
        Telephone: (612) 333-8844
        Facsimile: (612) 339-6622

        *Attorneys for Plaintiffs Joseph
        Colon, Shannon Ray, Khala Taylor,
        Peter Robinson, Katherine Sebbane,
        and Patrick Mehlert, Individually
        and on Behalf of All Those
        Similarly Situated*

COLEMAN & HOROWITT, LLP

        DARRYL J. HOROWITT
        (State Bar No. 100898)
        dhorowitt@ch-law.com
        COLEMAN & HOROWITT, LLP
        499 West Shaw, Suite 116
        Fresno, CA 93704
        Telephone: (559) 248-4820
        Facsimile: (559) 248-4830

        *Attorneys for Plaintiffs Joseph
        Colon, Shannon Ray, Khala Taylor,
        Peter Robinson, Katherine Sebbane,
        and Patrick Mehlert, Individually
        and on Behalf of All Those
        Similarly Situated*

                    KIRBY McINERNEY LLP

                          ROBERT J. GRALEWSKI, JR.
                          (State Bar No. 196410)
                          bgralewski@kmllp.com
                          MARKO RADISAVLJEVIC,
                          (State Bar No. 306552)
                          mradisavljevic@kmllp.com
                          KIRBY McINERNEY LLP
                          600 B Street, Suite 2110
                          San Diego, California 92101
                          Telephone: (619) 784-1442

                          *Attorneys for Plaintiffs Joseph
                          Colon, Shannon Ray, Khala Taylor,
                          Peter Robinson, Katherine Sebbane,
                          and Patrick Mehlert, Individually
                          and on Behalf of All Those
                          Similarly Situated*

                    THE LAW OFFICES OF LEONARD B.
                    SIMON P.C.

                          LEONARD B. SIMON
                          (State Bar No. 58310)
                          lens@rgrdlaw.com
                          THE LAW OFFICES OF LEONARD B.
                          SIMON P.C.
                          655 West Broadway, Suite 1900
                          San Diego, CA 92101
                          Telephone: (619) 818-0644
                          Facsimile: (619) 231-7423

                          *Attorneys for Plaintiffs Joseph
                          Colon, Shannon Ray, Khala Taylor,
                          Peter Robinson, Katherine Sebbane,
                          and Patrick Mehlert, Individually
                          and on Behalf of All Those
                          Similarly Situated*

FAIRMARK PARTNERS, LLP

JAMIE CROOKS
(State Bar No. 310447)
(pro hac forthcoming)
jamie@fairmarklaw.com
MICHAEL LIEBERMAN,
DC Bar No. 1033827
(pro hac forthcoming)
michael@fairmarklaw.com
FAIRMARK PARTNERS, LLP
1825 7th Street, NW, #821
Washington, DC 20001
Telephone: (619) 507-4182

*Attorneys for Plaintiffs Joseph
Colon, Shannon Ray, Khala Taylor,
Peter Robinson, Katherine Sebbane,
and Patrick Mehlert*

1

2

## **ORDER**

3      Subject to the Federal Rules of Civil Procedure, the Court's Local Rules, and the district

4  judge's rules for civil cases, the parties' stipulation is SO ORDERED.

5      Dated:  October 16, 2023

6

7

8  KENDALL J. NEWMAN
   UNITED STATES MAGISTRATE JUDGE

9  smar.2125

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Appendix A**

1

**Fields to Exchange (where reasonably available)**

2

| FIELD NAME[4] | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| BEGBATES | Beginning production number for a given file/document | Email, E-Doc and Other[5] |
| ENDBATES | Ending production number for a given file/document | Email, E-Doc and Other |
| BEGATTACH | Production number of first page of parent | Email, E-Doc and Other |
| ENDATTACH | Production number of last page of last attachment | Email, E-Doc and Other |
| CUSTODIAN | If the Producing Party's vendor maintains separate Custodian and Duplicate Custodian fields, this field will be populated with the person, shared file or other source from whom the original file was collected | Email, E-Doc and Other |
| All CUSTODIAN | If the Producing Party's vendor maintains separate Custodian and Duplicate Custodian fields, this field will be populated with the name of other custodians the Producing Party agreed to produce who had the file but where the file was eliminated through deduplication. If the Producing Party's vendor does not maintain separate Custodian and Duplicate Custodian fields, this field will be populated with the names of all custodians the Producing Party agreed to produce who had the file | Email and E-Doc |
| FILEEXT | File extension | Email and E-Doc |
| HASH | MD5 Hash Value | E-mail and E-Doc |

25

[4] Date fields may be combined date/time fields or produced as separate fields.

[5] "Other" is defined as documents maintained in image file format or that were scanned from hard copy.

| FIELD NAME[4] | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| SUBJECT | E-mail subject | E-mail |
| DOCTITLE | Title field for documents | E-doc |
| FROM | Sender | E-mail |
| TO | Recipient | E-mail |
| CC | Copyee | E-mail |
| BCC | Blind Copyee | E-mail |
| DATESENT | Date Sent & Time (MM/DD/YYYY HH:MM) | E-mail |
| DATERECEIVED | Date Received & Time (MM/DD/YYYY HH:MM) | E-mail |
| MESSAGE ID | Message ID field | E-mail |
| EMAIL CONVERSATION INDEX | Field identifies e-mails within the same thread | E-mail |
| AUTHOR | Author | E-Doc |
| DATELASTMOD | Date modified & Time (MM/DD/YYYY HH:MM | E-Doc |
| DATECREATED | Date created & Time (MM/DD/YYYY HH:MM) | E-Doc |
| FILENAME | Original file name | E-Doc |
| PAGE COUNT | Number of pages in document | E-mail and E-doc |
| ATTACHMENT COUNT | Number of attachments to, or documents embedded in, an email or edoc | E-mail and E-doc |
| APPLICATION | Type of application used to generate the document | E-mail and E-doc |
| DOCUMENT CATEGORY | The category of document (Email, E-doc) | E-mail and E-doc |
| FILE SIZE | The size of the file. | E-mail and E-doc |
| ORIGINAL FOLDER PATH | The folder path from which the document was collected if it is feasible to collect for a particular set of data | E-mail and E-doc |
| DOC EXTENSION | The file extension of the document | E-mail and E-doc |
| REDACTED | Identifies whether the document is redacted | E-mail, E-doc and Other |
| NATIVEFILE | Path to native file as produced for Excel spreadsheets and any other native files produced | Native |
| TEXTPATH | Path to OCR or extracted text file | E-mail, E-Doc and Other[6] |

---

[6] A Producing Party may not OCR documents originally maintained in hard copy or in imaged file format if the expense is not justified and may produce them as they are kept in the ordinary course of business. In that circumstance, the Producing Party will identify the Bates numbers of the documents that have not had OCR applied

STIPULATED ESI PROTOCOL

| FIELD NAME[4] | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| TIMEZONE | The time zone in which the documents were processed (i.e. UTC) | E-mail and E-Doc |
| CONFIDENTIALITY LEVEL | Level of confidentiality assigned pursuant to the Protective Order entered | E-mail, E-Doc and Other |
| HASHIDDENDATA | Identification of hidden fields in the documents | E-Doc |
| HASHIDDENSLIDES | Identification of hidden fields in the documents | E-Doc |
| HASSPEAKERNOTES | Identification of hidden fields in the documents | E-Doc |
| HASHIDDENROWS | Identification of hidden fields in the documents | E-Doc |
| HASHIDDENCOLUMNS | Identification of hidden fields in the documents | E-Doc |
| HASHIDDENWORKSHEETS | Identification of hidden fields in the documents | E-Doc |

_____

and for which extracted text is not available in the production cover letter.

-33-