CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
Carolyn.Luedtke@mto.com
JUSTIN P. RAPHAEL (State Bar No. 292380)
Justin.Raphael@mto.com
CHRISTOPHER CRUZ (State Bar No. 346128)
Christopher.Cruz@mto.com
JAVIER KORDI (State Bar No. 348358)
Javier.Kordi@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

Attorneys for *Defendant National
Collegiate Athletic Association*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TAYLOR SMART AND MICHAEL HACKER, Individually and on Behalf of All Those Similarly Situated,<br><br>          Plaintiffs,<br>     v.<br>NATIONAL COLLEGIATE ASSOCIATION, an unincorporated association,<br>          Defendant. | No. 2:22-cv-02125 WBS KJN<br><br>Hon. William B. Shubb<br>*Assigned to Hon. Judge Kendall J. Newman for Non-Dispositive Issues*<br><br>**DECLARATION OF KEVIN LENNON IN SUPPORT OF DEFENDANT NCAA'S POSITION IN THE PARTIES' JOINT MOTION TO COMPEL** |
| JOSEPH COLON, SHANNON RAY, KHALA TAYLOR, PETER ROBINSON, KATHERINE SEBBAME, and PATRICK MEHLER, individually and on behalf of all those similarly situated,<br><br>          Plaintiffs,<br>     v.<br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, an unincorporated association,<br>          Defendant. | No. 1:23-cv-00425 WBS KJN |

1    I, Kevin Lennon, declare as follows:

2    1.   I am currently the Senior Vice President of Policy and

3 Governance for the National Athletic Collegiate Athletic

4 Association (the "NCAA").  I have worked for the NCAA for more

5 than twenty years, and, prior to beginning my current role in

6 September 2023, I was Vice President of Division I Governance

7 since 2015.  I have personal knowledge of the following

8 information and could testify to it in court.

9    2.   Based on my experience at the NCAA, I am familiar with

10 the NCAA's governance, operations, and voting procedures.

11   **The NCAA**

12   3.   The NCAA is an unincorporated association of more than

13 1,000 colleges and universities across the country. The NCAA's

14 governing documents refer to them as "member institutions."

15   4.   Division I (or sometimes called "DI") of the NCAA

16 includes more than 300 colleges and universities, many of which

17 are state-run entities.

18   5.   The NCAA has approximately 500 employees (often

19 referred to as "national office staff") who work from its

20 headquarters in Indianapolis, Indiana to provide professional

21 support and resources for member institutions.

22   6.   The NCAA has limited powers and can only act as

23 permitted by the NCAA Constitution or as authorized by its member

24 schools.

25   7.   The NCAA and its national office staff do not have the

26 ability to unilaterally impose new requirements on student-

27 athletes or member institutions.

28

8.   NCAA legislation adopted by member institutions typically sets forth the requirements and expectations of member schools and conferences.  Changes to NCAA legislation can only be made pursuant to the NCAA legislative process, which is set forth in Article 9 of the NCAA's Operating Bylaws.  The relevant excerpt of the NCAA's Operating Bylaws is attached as Exhibit A.  Creating new legislation or amending existing legislation requires the support and approval of the NCAA membership.

9.   The NCAA national office staff communicates with member institutions about legislation proposed by the membership, works with the membership and governance committees to draft the proposed legislation, disseminates the draft legislation among member institutions, and schedules meetings for the membership to vote on specific legislation.  The NCAA uses this same process to repeal existing legislation.  These activities are conducted by the national office staff from the NCAA's headquarters in Indianapolis, Indiana.  The work is done by national office staff using NCAA email addresses and NCAA computers.

10.   The NCAA national office staff worked as described above in supporting the membership in drafting, considering and adopting the bylaw capping the number of paid coaching staff, the bylaw allowing a volunteer coach in certain sports, and the recent vote in January to change both of those bylaws and instead allow an additional paid assistant coach per sport.

11.   NCAA national office staff do not hire, fire, or compensate coaches.

12.   I understand that the Plaintiffs in the *Smart* and *Colon* litigations have asked the NCAA to order its member institutions

to produce documents to it or provide it with information about assistant and volunteer coaches at the member institutions. The NCAA cannot order its members to disclose this information. Member institutions can pass legislation that requires certain actions or disclosures, and if a member fails to comply, there can be consequences as determined by the membership.

13.   The NCAA's member institutions have adopted some NCAA legislation that calls for members to make certain documents or information available to the NCAA, and examples of those are discussed below.  There is no legislative provision requiring member institutions to provide the NCAA with information on volunteer coaches, the identity of assistant coaches, specific assistant coach salaries, or information about whether a school hired an additional assistant coach after the repeal of the volunteer coach bylaw and the modification of the cap on assistant coaches.  Accordingly, the NCAA would not be authorized or have the power to impose penalties or other consequences if an NCAA institution did not provide the NCAA with any of this information.

14.   NCAA member institutions organize their own athletic teams, make their own decisions about who to hire and how much to compensate them, and maintain their own records regarding those decisions.

**Volunteer Coach Information**

15.   Based on my inquiry and my own knowledge, the NCAA does not maintain information about which member institutions utilized volunteer coaches and in what sports and for what years, the identities of those volunteer coaches, or whether after the

1  repeal of the volunteer coach bylaw, if member institutions hired

2  any volunteer coaches as an assistant coach or hired an

3  additional assistant coach at all, and if so, who.

4      16.  Outside of an investigation into individual violations

5  of NCAA bylaws, not applicable here, the NCAA has no power under

6  the NCAA Constitution, NCAA bylaws, or any contractual right to

7  demand that member institutions provide information on the

8  existence or identity of volunteer coaches, whether they hired

9  former volunteer coaches as assistant coaches after the repeal of

10 the volunteer coach bylaw, or whether they hired more assistant

11 coaches when permitted to do so.

12      17.  Prior to the repeal of the volunteer coach bylaw,

13 Division I Bylaw 11.7.1 asked member schools to designate

14 coaching staff "as a head coach, assistant coach, volunteer

15 coach, graduate assistant coach or student assistant coach by

16 certification of the institution."

17      18.  Bylaw 11.7.1 asks each member school to designate for

18 each person on the coaching staff what category of coach that

19 coach was meant to be.

20      19.  Where Bylaw 11.7.1 says "by certification of the

21 institution," this means that the member school should certify to

22 itself that it has done this designation.

23      20.  There is no provision in Bylaw 11.7.1 that instructs

24 the school to report this certification to the NCAA, and based on

25 my inquiry, I understand that schools did not report this

26 certification to the NCAA.

27

28

21.   This is consistent with other Bylaws like 13.14.5, 14.01.1, and 14.4.3.1.4.1 that ask for certifications but do not instruct member schools to report those certifications.

22.   And, Bylaw 11.7.1 is in contrast to bylaws like Bylaw 12.1.1.1.2.2 that define how information related to amateur certifications will be handled when there is reporting and to whom the reporting should be transmitted.  There was no such reporting requirement in Bylaw 11.7.1.  In my experience, when the NCAA asks for certifications to be reported or transmitted outside the member institution, the Bylaw or other legislation generally describes details of the reporting or transmission requirement.

**Assistant Coach Compensation Information and Identification**

23.   Based on my inquiry and my own knowledge, the NCAA does not maintain information about how much member institutions compensated individual assistant coaches or the identity of assistant coaches by sport.

24.   The NCAA Division I membership has adopted legislation calling for member institutions to report head coach compensation information, head coach identity, aggregate assistant coach compensation information, and assistant coach head count. That information is kept in databases on which queries can be run.  I understand that the NCAA is producing this information in this litigation.

25.   Specifically, Bylaw 20.2.4.17, asks member institutions to submit to the NCAA "financial data detailing operating revenues, expenses and capital related to its intercollegiate

1  athletics program to the NCAA on an annual basis in accordance

2  with the financial reporting policies and procedures."

3      26.   Those "reporting policies and procedures" are spelled

4  out in annual "Agreed-Upon Procedures."  The Agreed-Upon

5  Procedures are publicly available at

6  https://ncaaorg.s3.amazonaws.com/ncaa/finance/NCAAFIN_AgreedUponP

7  rocedures.pdf and relevant excerpts are attached as Exhibit B.

8  The Agreed-Upon Procedures are adopted by the NCAA Board of

9  Directors Finance Committee.

10     27.   For 2023, the Agreed-Upon Procedures provide a list of

11  expense categories, with the preface that: "Expenses for the

12  athletics program will vary among institutions; however, typical

13  sources of intercollegiate athletics expenses are outlined (each

14  followed by a comprehensive definition) below."

15     28.   For the expense category of "Coaching Salaries,

16  Benefits and Bonuses paid by the University and Related

17  Entities," the Agreed-Upon Procedures define this category as:

18          Input compensation, bonuses and benefits paid to all
           coaches reportable on the university or related
19          entities W-2 and 1099 forms, as well as non-taxable
           benefits (1098T), inclusive of:
20
               • Gross wages and bonuses.
21
               • Taxable and non-taxable benefits include:
22          allowances, speaking fees, retirement, stipends,
           memberships, media income, tuition reimbursement/
23          exemptions (for self or a dependent) and earned
           deferred compensation, including those funded by the
24          state.

25  *See* Ex. B.

26     29.   There is no other governing document of the NCAA which

27  would interpret "compensation, bonuses and benefits paid to all

28

1  coaches" differently than what appears in the text of the Agreed-
2  Upon Procedures.

3       30.   Pursuant to Bylaw 20.2.4.17 and the Agreed-Upon
4  Procedures, Division I member schools submit to the NCAA
5  aggregate compensation expenses for all personnel working in the
6  assistant coach position by sport.

7       **General Bylaws Regarding Investigations and Infractions**
8       **Process**

9       31.   I understand that the Plaintiffs have referenced Bylaws
10 19.2.3 and 8.01.3 as alleged authority for the NCAA to seek
11 volunteer coach identities, individual assistant coach
12 compensation information, and assistant coach identities.  These
13 bylaws do not provide authority for the NCAA to seek that
14 information.  Instead, they apply to NCAA investigations and its
15 infractions process.

16      32.   These bylaws allow the NCAA to seek information to
17 enforce its rules.  There is no NCAA investigation or infractions
18 process regarding the volunteer coach bylaw at all Division I
19 member institutions nationwide over a period of years so there is
20 no basis to invoke those bylaws to collect any information.

21      33.   I understand that Plaintiffs have also referenced Bylaw
22 20.10.1.5 as alleged authority for the NCAA to seek volunteer
23 coach identities, individual assistant coach compensation
24 information, and assistant coach identities.  This bylaw states,
25 among other things, that it is the "responsibility of each member
26 institution to monitor and control its athletics program, staff
27 members, representatives and student-athletes to ensure
28 compliance with the constitution and bylaws of the Association."

1   It further states that it is the responsibility of the member

2   institution to report breaches of conduct established by the

3   bylaws and to cooperate with the infractions process.  Nothing in

4   this bylaw provides for member institutions to do something

5   different from what the NCAA constitution and bylaws direct, and

6   the directive to cooperate to the infractions process is not

7   applicable to the information Plaintiffs request here.

8       34.  Nothing in Bylaws 19.2.3, 8.01.3, and 20.10.1.5 gives

9   the NCAA the right to obtain information about volunteer coaches

10  or individual salaries and identities of assistant coaches

11  outside the context of an enforcement proceeding.

12      **NCAA Governing Boards and Committees**

13      35.  I understand that Plaintiffs seek to require the NCAA

14  to collect emails and documents from governing board members' and

15  committee members' files held by athletic conferences and

16  membership institutions.  I do not know how the NCAA would do

17  this as it does not have access to those files.

18      36.  The NCAA's governing boards and committees are

19  comprised of representatives from member institutions and from

20  athletic conferences, who are often University Presidents,

21  Conference Commissioners, and other employees of athletic

22  conferences and member schools.  There are also occasionally

23  other outside third parties on NCAA boards and committees.

24      37.  NCAA board and committee members are not employed by

25  the NCAA.  Instead, they are employed by athletic conferences and

26  member schools and serve on NCAA boards and committees as

27  representatives from those conferences and schools.  NCAA board

28  and committee members are not agents of the NCAA.  Except in rare

situations not applicable to this case, they use their email accounts from their member institutions or conferences when conducting NCAA board or committee work, not NCAA emails accounts.  Some board and committee members do get access to certain shared drives and sites maintained by the NCAA for information relevant to their board and committee work, and I understand the NCAA has no objection to reviewing and producing documents from those shared NCAA drives and sites.

38.  The NCAA has no ability to access emails within board and committee members' conference or school accounts.

39.  Board and committee members are selected to serve on NCAA boards and committees by other member institution representatives.  Similarly, the removal process for board and committee members is governed by representatives from other member institutions, not the NCAA.

40.  The NCAA does not control how board and committee members vote on matters or who is selected for, or removed from, boards or committees.

41.  The only employees or agents of the NCAA associated with NCAA boards and committees are the NCAA's national staff members who serve as liaisons to the boards and committees, who provide support for the boards and committees, who have NCAA email accounts, and who keep documents on NCAA servers.

42.  NCAA staff liaisons are not given voting power when it comes to adding or removing members from boards or committees, nor can they vote on legislation.

1

2

3

4

5  I declare under penalty of perjury under the laws of the United

6  States of America that the foregoing is true and correct.

7     Executed on October 17, 2023 at Indianapolis, Indiana.

8

9

10                        By: _____
                                      Kevin Lennon

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S EXHIBIT A

# Legislative Authority and Process

## 9.02 Definitions and Applications.

### 9.02.1 Legislative Provisions.

**9.02.1.1 Area of Autonomy.** An area of autonomy is a legislative provision that provides legislative flexibility to the Atlantic Coast Conference, Big Ten Conference, Big 12 Conference, Pac-12 Conference and Southeastern Conference and their member institutions. The abovementioned conferences are granted autonomy in these areas to permit the use of resources to advance the legitimate educational or athletics-related needs of student-athletes and for legislative changes that will otherwise enhance student-athlete well-being. The requirements for adoption, amendment and expansion of the areas of autonomy are set forth in Bylaw 9.2.2.1. A legislative provision that is an area of autonomy is identified by a capital letter A. *(Revised: 1/20/22)*

**9.02.1.2 Division Dominant.** A division dominant provision is a regulation that applies to all members of a division and is of sufficient importance to the division that it requires a two-thirds majority vote of all delegates present and voting at a division's annual or special Convention. Division dominant provisions are identified by the diamond symbol (♦). *(Revised: 1/9/96 effective 8/1/97, 1/20/22)*

**9.02.1.3 Common.** A common provision is a regulation that applies to more than one of the divisions of the Association. A common provision shall be adopted by each of the applicable divisions, acting separately pursuant to the divisional legislative process described in Bylaw 9.2, and must be approved by all applicable divisions to be effective. Common provisions are identified by the pound sign (#). *(Adopted: 1/14/97 effective 8/1/97, Revised: 1/20/22)*

**9.02.1.4 Federated.** A federated provision is a regulation adopted by the division acting pursuant to the divisional legislative process. Such a provision applies only to the division or subdivision that adopts it. *(Revised: 1/9/96 effective 8/1/97, 1/20/22)*

**9.02.1.5 Football Championship Subdivision Dominant.** A Football Championship Subdivision dominant provision is a regulation that applies only to the Football Championship Subdivision and is of sufficient importance to the subdivision that it requires a two-thirds majority vote for adoption or to be amended pursuant to the legislative process set forth in Bylaw 9.2. Football Championship Subdivision dominant provisions are identified by the initialization FCSD. *(Revised: 1/15/11, 1/20/22)*

## 9.1 Conventions and Meetings.

### 9.1.1 Operational Procedures.

**9.1.1.1 Quorum.** For purposes of voting on division dominant legislation, 40 members of the division shall constitute a quorum. *(Revised: 1/20/22)*

**9.1.1.2 Parliamentary Rules.** The rules contained in the current edition of Robert's Rules of Order, Newly Revised, shall be the parliamentary authority for the conduct of all meetings of the division. Additionally, they shall be the deciding reference used in case of parliamentary challenge in all instances to which they apply and in which they are not superseded by the NCAA constitution, bylaws or any special rule of order adopted by the Association in accordance with Bylaw 9.3.3.1. *(Revised: 1/20/22)*

**9.1.1.3 Football Classification, Voting.** A member institution shall be entitled to vote on legislative issues pertaining only to football in the subdivision in which it is classified. *(Revised: 1/20/22)*

**9.1.1.3.1 Restriction.** An active member or member conference with no football program shall not be permitted to vote on issues affecting only football. *(Revised: 1/20/22)*

**9.1.1.3.2 Football Championship Subdivision Member Applying Bowl Subdivision Football Legislation.** A Football Championship Subdivision member that elects to be governed by the legislation pertaining to the Football Bowl Subdivision in accordance with Bylaw 20.8.1.1.1 shall be eligible to vote on issues pertaining to championship subdivision football. *(Revised: 12/15/06, 1/20/22)*

**9.1.1.3.3 Conference of Football Bowl Subdivision and Football Championship Subdivision Members.** A conference whose members are divided between the Football Bowl Subdivision and the Football Championship Subdivision shall vote in the subdivision in which the majority of its members are classified; or if the membership is

divided equally between the two subdivisions, the subdivision in which it shall vote shall be determined by the Council Coordination Committee. *(Revised: 11/1/07, 8/7/14 effective 8/1/15, 12/15/16 effective 8/1/08, 1/20/22)*

## 9.2 Amendment Process.

### 9.2.1 Authorizing Legislation.

**9.2.1.1 Amendment -- Division Dominant Provisions.** The division dominant provisions may be amended only at an annual or special Convention. Federated provisions may be amended as specified in Bylaw 9.2.2. *(Revised: 1/9/96 effective 8/1/97, 1/14/97 effective 8/1/97, 1/20/22)*

**9.2.1.2 Amendment-to-Amendment -- Division Dominant Provisions.** A proposed amendment to a division dominant provision may be amended at any annual or special Convention. From July 15 through September 15, sponsors of proposed legislation may refine and change proposals in any manner that is germane to the original proposal. After September 15, proposed amendments may be amended only if the amendment to the proposed amendment does not increase the modification of the provision to be amended. *(Revised: 1/9/96 effective 8/1/97, 1/20/22)*

### 9.2.2 Division I Legislative Process.

#### 9.2.2.1 Process for Areas of Autonomy.

**9.2.2.1.1 Authority to Adopt or Amend Legislation.** The Atlantic Coast Conference, Big Ten Conference, Big 12 Conference, Pac-12 Conference and Southeastern Conference and their member institutions shall have the authority to adopt or amend legislation that is identified as an area of autonomy. *(Adopted: 8/7/14, Revised: 1/20/22)*

**9.2.2.1.2 Areas of Autonomy.** The Atlantic Coast Conference, Big Ten Conference, Big 12 Conference, Pac-12 Conference and Southeastern Conference and their member institutions are granted autonomy in the following areas to permit the use of resources to advance the legitimate educational or athletics-related needs of student-athletes and for legislative changes that will otherwise enhance student-athlete well-being: *(Adopted: 8/7/14, Revised: 1/20/22)*

(a) **Athletics Personnel.** Definitions and limitations on athletics personnel and legislation to meet the support needs of student-athletes while properly managing the number of personnel directly or indirectly associated with a sport in a manner consistent with the need for competitive balance.

(b) **Insurance and Career Transition.** Legislation related to student-athletes securing loans to purchase career-related insurance products (e.g., disability, loss-of-value), institutions providing insurance-related expenses for student-athletes and the role of agents and advisors in assisting student-athletes with career planning and decision making.

(c) **Promotional Activities Unrelated to Athletics Participation.** Legislation related to promotional activities for careers and pursuits unrelated athletics participation.

(d) **Recruiting Restrictions.** Legislation designed to reduce the infringement on a prospective student-athlete's academic preparation.

(e) **Preenrollment Expenses and Support.** Legislation related to expenses and support provided in the recruiting process and the transition to college enrollment, including assistance to families to visit campus, medical expenses and academic support during the summer prior to enrollment, and transportation to enroll.

(f) **Financial Aid.** Legislation related to a student-athlete's individual limit on athletically related financial aid, terms and conditions of awarding institutional financial aid, and the eligibility of former student-athletes to receive undergraduate financial aid.

(g) **Awards, Benefits and Expenses.** Legislation related to awards, benefits and expenses for enrolled student-athletes and their families and friends.

(h) **Academic Support.** Legislation related to the academic support of student-athletes.

(i) **Health and Wellness.** Legislation related to the health and wellness of student-athletes, including insurance and other items to permit appropriate and sufficient care.

(j) **Meals and Nutrition.** Legislation related to meals and nutritional demands for student-athletes.

(k) **Time Demands.** Legislation that establishes an appropriate balance between athletics and other student-athlete activities and fosters participation in educational opportunities outside intercollegiate athletics.

**9.2.2.1.2.1 Additions to the Areas of Autonomy.** Additions to the areas of autonomy may be recommended to the Board of Directors on support of three of the five conferences named in Bylaw 9.2.2.1.1. An addition shall require a 60 percent majority vote of the president or chancellor members of the Board of Directors present and voting. *(Adopted: 8/7/14, Revised: 1/20/22)*

**9.2.2.1.2.1.1 Standard of Review.** An addition to the areas of autonomy shall be subject to the standard that it must permit the use of resources to advance the legitimate educational or athletics-related needs of student-athletes, support legislative changes that will otherwise enhance student-athlete well-being, or complement and align with the values of higher education. *(Adopted: 8/7/14, Revised: 1/20/22)*

**9.2.2.1.2.2 Application to Other Conferences/Institutions.** Legislation set forth as an area of autonomy may be applied by other member institutions at each conference's discretion, which may include delegation of such discretion to its member institutions. *(Adopted: 8/7/14, Revised: 1/20/22)*

### 9.2.2.1.3 Sponsorship.

**9.2.2.1.3.1 Amendment.** An amendment to an area of autonomy may be sponsored by any conference listed in Bylaw 9.2.2.1.1, subject to review by the other conferences listed in Bylaw 9.2.2.1.1 and approval by a presidential review group that includes at least one representative from each conference listed in Bylaw 9.2.2.1.1. *(Adopted: 8/7/14, Revised: 1/20/22)*

**9.2.2.1.3.2 Amendment-to-Amendment.** An amendment to an amendment of an area of autonomy may be sponsored by one of the conferences named in Bylaw 9.2.2.1.1. *(Adopted: 8/7/14, Revised: 1/20/22)*

### 9.2.2.1.4 Submission Deadlines.

**9.2.2.1.4.1 Concept.** A concept under consideration for sponsorship as an amendment to an area of autonomy must be submitted to the national office by 5 p.m. Eastern time September 15. *(Adopted: 8/4/16, Revised: 1/20/22)*

**9.2.2.1.4.2 Amendment.** An amendment to an area of autonomy must be submitted to the national office by 5 p.m. Eastern time November 1. The sponsor may refine and change its proposal in any manner that is germane to the original proposal until 5 p.m. Eastern time December 1. *(Adopted: 8/7/14, Revised: 8/4/16, 8/8/18, 1/20/22)*

**9.2.2.1.4.3 Amendment-to-Amendment.** An amendment to an amendment of an area of autonomy may be submitted to the national office until 5 p.m. Eastern time December 1. Any such amendment shall not increase the modification of the provision to be amended in the original proposal. *(Adopted: 8/7/14, Revised: 8/4/16, 8/8/18, 1/20/22)*

### 9.2.2.1.5 Notification to Membership.

**9.2.2.1.5.1 Notice of Autonomy Concepts.** Proposed autonomy concepts shall be posted on the NCAA website for membership review and comment after September 15. *(Adopted: 8/4/16, Revised: 1/20/22)*

**9.2.2.1.5.2 Initial Notification.** Proposed amendments shall be available on the NCAA website for membership review and comment not later than November 15. *(Adopted: 8/7/14, Revised: 8/4/16, 8/8/18, 1/20/22)*

**9.2.2.1.5.3 Official Notice.** Proposed amendments and amendments-to-amendments shall be available on the NCAA website for membership review and comment not later than December 15. *(Adopted: 8/7/14, Revised: 8/4/16, 8/8/18, 1/20/22)*

### 9.2.2.1.6 Membership and Council Review.

**9.2.2.1.6.1 Membership Review.** All Division I members may provide comments related to proposed amendments and amendments-to-amendments via the NCAA website from the date of the initial notification to the membership through December 15 (5 p.m. Eastern time). *(Adopted: 8/7/14, Revised: 8/4/16, 1/20/22)*

**9.2.2.1.6.2 Council Review.** The Council shall review proposed amendments. The review may include a position of support or opposition. *(Adopted: 8/7/14, Revised: 1/20/22)*

**9.2.2.1.6.3 Forum Review.** The conferences named in Bylaw 9.2.2.1.1 shall review proposed amendments and amendments-to-amendments during a forum that is conducted before a business session during which voting on the proposed amendments and amendments-to-amendments occurs. *(Adopted: 8/7/14, Revised: 1/20/22)*

### 9.2.2.1.7 Voting Process.

**9.2.2.1.7.1 Business Session.** Consideration of proposed amendments and amendments-to-amendments shall occur during a business session involving the member institutions of the conferences named in Bylaw 9.2.2.1.1. The president or chancellor of each institution shall appoint one representative and each of the five conferences shall appoint three student-athlete representatives to cast votes on proposed amendments and amendments-to-amendments. *(Adopted: 8/7/14, Revised: 1/20/22)*

**9.2.2.1.7.2 Adoption of Amendments and Amendments-to-Amendments.** Adoption of proposed amendments and amendments-to-amendments shall require: *(Adopted: 8/7/14, Revised: 1/20/22)*

(a) Approval of three of the five conferences based on a simple majority vote of the institutions within each conference and a 60 percent majority vote of the eligible institutions and student-athlete representatives; or

(b) Approval of four of the five conferences based on a simple majority vote of the institutions within each conference and a simple majority vote of the eligible institutions and student-athlete representatives.

**9.2.2.1.7.3 Finality of Action.** An amendment adopted during a business session shall be final upon adjournment of the business session. The concept of a defeated amendment may not be resubmitted as a new amendment for a two-year period. *(Adopted: 8/7/14, Revised: 1/20/22)*

## 9.2.2.2 Process for Areas of Council-Governance and Football-Specific Legislation.

**9.2.2.2.1 Authority to Adopt or Amend Legislation.** Federated legislation applicable to Division I may be adopted or amended at any meeting of the Council. *(Adopted: 8/7/14 effective 8/1/15, Revised: 1/20/22)*

**9.2.2.2.1.1 Emergency or Noncontroversial Legislation.** The Council may adopt emergency or noncontroversial legislation during any meeting by at least a three-fourths majority vote of its members present and voting. *(Adopted: 8/7/14 effective 8/1/15, Revised: 1/20/22)*

### 9.2.2.2.2 Sponsorship.

**9.2.2.2.2.1 Amendments and Amendments-to-Amendments.** An amendment or an amendment-to-amendment in an area of Council governance may be sponsored by the Board of Directors, the Council or a conference listed in Bylaw 21.1.1-(a), 21.1.1-(b) or 21.1.1-(c). A football-specific amendment or amendment-to-amendment may be sponsored by a Football Bowl Subdivision conference or a Football Championship Subdivision conference. *(Adopted: 8/7/14 effective 8/1/15, Revised: 1/20/22)*

### 9.2.2.2.3 Submission Deadlines.

**9.2.2.2.3.1 Concept.** A conference must submit a concept under consideration for sponsorship as an amendment to the national office by 5 p.m. Eastern time July 15. *(Adopted: 1/24/19, Revised: 1/20/22)*

**9.2.2.2.3.2 Amendment.** An amendment sponsored by the Council or a conference listed in Bylaw 21.1.1-(a), 21.1.1-(b) or 21.1.1-(c) or a football-only conference as described in Bylaw 21.2.5 must be submitted to the national office by 5 p.m. Eastern time November 1. A conference may sponsor an amendment only if it submitted a concept of the amendment by the preceding July 15 deadline. From the submission deadline until 5 p.m. Eastern time February 1, the sponsoring conference or Council may refine and change its proposal in any manner that is germane to the original proposal. *(Adopted: 8/7/14 effective 8/1/15, Revised: 8/4/16, 4/8/18, 1/24/19, 1/20/22)*

**9.2.2.2.3.3 Amendment-to-Amendment.** An amendment to an amendment identified for a vote in January may be submitted to the national office until 5 p.m. Eastern time December 15. An amendment to an amendment identified for a vote in April may be submitted to the national office until 5 p.m. Eastern time February 1. Any such amendment shall not increase the modification of the provision to be amended in the original proposal. *(Adopted: 8/7/14 effective 8/1/15, Revised: 1/20/22)*

### 9.2.2.2.4 Notification to Membership.

**9.2.2.2.4.1 Initial Notification.** Proposed amendments shall be available on the NCAA website for membership review and comment not later than November 15. *(Adopted: 8/7/14 effective 8/1/15, Revised: 1/24/19, 1/20/22)*

**9.2.2.2.4.2 Official Notice.** Proposed amendments and amendments-to-amendments shall be available on the NCAA website for membership review and comment not later than February 8. *(Adopted: 8/7/14 effective 8/1/15, Revised: 8/4/16, 1/20/22)*

### 9.2.2.2.5 Membership and Council Review.

**9.2.2.2.5.1 Membership Review.** All Division I members may provide comments related to proposed amendments and amendments-to-amendments via the NCAA website until March 1 (5 p.m. Eastern time). *(Adopted: 8/7/14 effective 8/1/15, Revised: 8/4/16, 1/20/22)*

**9.2.2.2.5.2 Council Review.** The Council shall review proposed amendments. The review may include a position of support or opposition. The Council may sponsor an amendment-to-amendment by majority vote of its members present and voting through February 8. *(Adopted: 8/7/14 effective 8/1/15, Revised: 8/4/16, 1/20/22)*

### 9.2.2.2.6 Voting Process.

**9.2.2.2.6.1 Adoption of Amendments and Amendments-to-Amendments.** Adoption of proposed amendments and amendments-to-amendments submitted by the applicable deadline shall require a majority vote of representatives of the Council present and voting. An amendment-to-amendment that is proposed outside of the legislated submission deadline and that does not increase the modification of the provision to be amended in the original proposal may be adopted by a three-fourths majority vote of the Council members present and voting. *(Adopted: 8/7/14 effective 8/1/15, Revised: 8/4/16, 10/4/17, 1/20/22)*

**9.2.2.2.6.1.1 Bowl Subdivision and Championship Subdivision Football.** Members of the Council who are representatives of conferences that are members of the Football Bowl Subdivision and the Football Championship Subdivision shall vote separately in their respective subdivisions on legislative issues that pertain only to football. *(Adopted: 8/7/14 effective 8/1/15, Revised: 1/20/22)*

**9.2.2.2.6.1.1.1 Geographical Representation of Independents.** An institution classified as a Football Bowl Subdivision independent or a Football Championship Subdivision independent shall have its views expressed on football issues by a predetermined Football Bowl Subdivision or Football Championship Subdivision conference representative, respectively, within the institution's geographical region. *(Adopted: 8/7/14 effective 8/1/15, Revised: 1/20/22)*

**9.2.2.2.6.2 Finality of Action.** Legislation adopted by the Council, other than emergency or noncontroversial legislation, shall be considered final at the conclusion of the next Board of Directors meeting, subject to review by the Board of Directors as described in Bylaw 21.1.2. Emergency or noncontroversial legislation adopted by the Council shall be considered final at the conclusion of the Council meeting during which it was adopted. If a proposal does not receive a majority vote of Council members present and voting, it shall be considered defeated. The concept of a defeated amendment may not be resubmitted as a new amendment for a two-year period. *(Adopted: 8/7/14 effective 8/1/15, Revised: 10/4/17, 1/20/22)*

**9.2.2.2.7 Rescission Process.** An amendment adopted with less than an 85 percent majority vote of Council members present and voting shall be subject to a 60-day rescission period. An amendment adopted with an 85 percent majority vote or greater of Council members present and voting shall not be subject to a rescission process. The concept of a rescinded amendment may not be resubmitted as a new amendment for a two-year period. *(Adopted: 8/7/14 effective 8/1/15, Revised: 1/20/22)*

**9.2.2.2.7.1 Notification to Membership.** Notification of the adoption of legislation by the Council shall be provided to the membership within 15 days of the date of the Board of Directors meeting on which the adoption becomes final. *(Adopted: 8/7/14 effective 8/1/15, Revised: 1/20/22)*

**9.2.2.2.7.2 Submission of Rescission Requests.** A rescission request may be submitted through the NCAA website by an active member institution with voting privileges. A request must be received in the national office not later than 5 p.m. Eastern time within 60 days of the date of the Board of Directors meeting on which the adoption becomes final. A request must be approved by the institution's chancellor or president. The institution's chancellor or president or a designated representative may submit the rescission request to the national office. *(Adopted: 8/7/14 effective 8/1/15, Revised: 1/20/22)*

**9.2.2.2.7.3 Threshold for Rescission.** An amendment shall be rescinded upon submission of rescission requests from at least two-thirds of all active Division I institutions that are eligible to submit a request. An amendment that pertains only to football shall be rescinded in the applicable subdivision upon submission of rescission requests from at least two-thirds of all active Football Bowl Subdivision or Football Championship Subdivision institutions that are eligible to submit a request. *(Adopted: 8/7/14 effective 8/1/15, Revised: 1/20/22)*

**9.2.2.2.8 Other Rules and Procedures.** The Board of Directors or the Council may approve such additional rules and procedures governing the legislative process consistent with the provisions of this section (Bylaw 9.2.2) as it determines are necessary to ensure an efficient process to meet the legislative needs of the membership. *(Adopted: 1/9/96 effective 8/1/97, Revised: 10/4/17, 1/20/22)*

**9.2.2.2.8.1 Sunset Provision.** If the Council takes no action on a proposal within one year of its initial or subsequent consideration, the proposal shall be considered defeated. *(Adopted: 10/4/17, Revised: 1/20/22)*

## 9.2.3 Sponsorship -- Amendments to Division Dominant Provisions.

**9.2.3.1 Amendment.** An amendment to a division dominant provision may be sponsored only by the Board of Directors. *(Adopted: 1/9/96 effective 8/1/97, Revised: 1/14/97, 1/20/22)*

**9.2.3.2 Amendment-to-Amendment.** An amendment-to-amendment to a division dominant provision may be sponsored only by the Board of Directors. *(Adopted: 1/9/96 effective 8/1/97, Revised: 1/14/97, 1/20/22)*

**9.2.3.3 Editorial Changes.** The presiding officer may permit changes in the wording of a proposed amendment of a purely editorial nature or to correct typographical errors. *(Adopted: 1/9/96 effective 8/1/97, Revised: 1/14/97, 1/20/22)*

## 9.2.4 Submission Deadline.

### 9.2.4.1 Division Dominant Provisions.

**9.2.4.1.1 Amendments.** Amendments to division dominant provisions shall be sponsored by the Board of Directors in accordance with the following deadlines: *(Adopted: 1/9/96 effective 8/1/97, Revised: 1/20/22)*

(a) Annual Convention -- September 1.

(b) Special Convention -- Ninety days before a special Convention.

**9.2.4.1.1.1 Exception.** The Board of Directors, by a two-thirds majority of its members present and voting, may establish a later date for the submission of amendments for an annual Convention when a special Convention is held after September 1. *(Adopted: 1/9/96 effective 8/1/97, Revised: 1/20/22)*

**9.2.4.1.2 Amendments-to-Amendments.** The Board of Directors must submit amendments to its original proposals in writing and such amendments must be submitted not later than 5 p.m. Eastern time September 15, unless the amendment-to-amendment does not increase the modification specified in the original proposal. Any amendment to a proposed amendment submitted after September 15 shall not increase the modification of the original proposal and must be submitted in writing not later than 5 p.m. Eastern time November 1 before an annual Convention or 60 days before a special Convention. The Board of Directors may propose amendments-to-amendments at the time of the Convention without meeting these procedural requirements, provided the proposed amendment-to-amendment has been approved by two-thirds of the Board of Directors and copies are distributed before or during the Division I Business Session. *(Adopted: 1/9/96 effective 8/1/97, Revised: 3/1/06, 1/20/22)*

## 9.2.5 Notification to Membership.

### 9.2.5.1 Amendments to Division Dominant Provisions.

**9.2.5.1.1 Initial Publication.** Amendments to division dominant provisions shall be published for the information of the membership as follows: *(Adopted: 1/19/96 effective 8/1/97, Revised: 1/20/22)*

(a) Not later than September 22 for an annual Convention.

(b) Not later than 75 days before a special Convention.

**9.2.5.1.2 Official Notice.** A copy of the proposed amendments shall be made available not later than November 15 before an annual Convention or 45 days preceding a special Convention. *(Adopted: 1/9/96 effective 8/1/97, Revised: 1/20/22)*

**9.2.5.1.3 Delayed Date.** If the Board of Directors establishes a date later than July 15 or September 1 for the submission of amendments to division dominant provisions for an annual Convention, it, by a two-thirds majority of its members present and voting, may establish a later date for publishing copies of the proposed amendments for information of the membership. *(Revised: 1/9/96 effective 8/1/97, 1/20/22)*

**9.2.5.1.4 Amendments-to-Amendments.** Copies of all amendments-to-amendments to division dominant provisions submitted by the September 15 deadline shall be published by September 22. Copies of all other amendments-to-amendments submitted by the November 1 deadline shall be published in the Official Notice of the Convention. *(Adopted: 1/9/96 effective 8/1/97, Revised: 1/20/22)*

## 9.2.6 Adoption of Amendment, Voting Requirements.

**9.2.6.1 Division Dominant Provision.** Adoption of an amendment to a division dominant provision shall require a two-thirds majority vote of all delegates of the affected division present and voting at a division's annual or special Convention. *(Adopted: 1/9/96 effective 8/1/97, Revised: 12/5/06, 1/20/22)*

## 9.2.7 Adoption of Amendment-to-Amendment, Voting Requirements.

**9.2.7.1 Division Dominant Provision.** A proposed amendment to an amendment of a division dominant provision shall be approved by a majority vote of the delegates of the affected division present and voting. *(Adopted: 1/9/96 effective 8/1/97, Revised: 1/20/22)*

## 9.2.8 Special Voting Requirements. The following topics are subject to special voting requirements. *(Revised: 1/20/22)*

**9.2.8.1 Division Championship.** A division championship per Bylaw 18.02.1.2 may be established by a majority vote of the Board of Directors subject to all requirements, standards and conditions prescribed in Bylaw 18.2. *(Adopted: 1/14/97 effective 8/1/97, Revised: 1/20/22)*

**9.2.8.2 Voting on Football Issues.** An active member or voting member conference with no football program shall not be permitted to vote on issues affecting only football. *(Adopted: 1/9/96 effective 8/1/97, Revised: 1/20/22)*

## 9.2.9 Intent and Rationale.

**9.2.9.1 Amendments to Division Dominant Provisions.** All amendments to division dominant provisions shall include a statement of intent and a separate statement of rationale. The statement of rationale shall not exceed 200 words in length. All amendments-to-amendments shall include a statement of intent and, if applicable, a cost estimate. An amendment-to-amendment also may include a statement of rationale that shall not exceed 50 words in length. *(Adopted: 1/9/96 effective 8/1/97, Revised: 1/20/22)*

## 9.2.10 Effective Date.

**9.2.10.1 Division Dominant Provisions.** All amendments to division dominant provisions shall become effective not earlier than the first day of August following adoption by the Convention. *(Adopted: 1/9/96 effective 8/1/97, Revised: 1/20/22)*

**9.2.10.1.1 Alternative to August 1 Effective Date.** If a voting delegate wishes to propose an immediate effective date, or to propose any other effective date prior to the first day of August, a two-thirds majority of all delegates present and eligible to vote on the amendment is required to approve the immediate or alternative effective date. Those amendments specified as being effective immediately shall become effective upon adjournment of the Convention. *(Revised: 1/10/95 effective 8/1/95, 1/9/96, 1/20/22)*

## 9.2.11 Reconsideration.

**9.2.11.1 Vote on Division Dominant Provisions.** Prior to adjournment of any Convention, an affirmative or negative vote on an amendment to a division dominant provision may be subjected to one motion for reconsideration of that action by any member who voted on the prevailing side in the original consideration. Reconsideration of the vote must occur in the appropriate division business session. *(Adopted: 1/9/96 effective 8/1/97, Revised: 1/20/22)*

# 9.3 Other Legislative and Amendment Procedures.

## 9.3.1 Interpretations of Bylaws.

**9.3.1.1 Authorization.** The Board of Directors and the Council (or the Legislative Committee on behalf of the Council), and the Interpretations Committee in the interim between meetings of the Board of Directors and Council (or Legislative Committee), are empowered to make interpretations of the bylaws. *(Revised: 1/9/96 effective 8/1/97, 11/1/07 effective 8/1/08, 8/7/14, 4/16/15, 10/4/17, 1/20/22)*

**9.3.1.1.1 Modification of Wording.** In addition to its general authority to make binding interpretations of NCAA legislation, the Council, by a two-thirds majority of its members present and voting, may interpret legislation consistent with the intent of the membership in adopting the legislation if sufficient documentation and testimony are available to establish clearly that the wording of the legislation is inconsistent with that intent. The Council shall initiate the legislative process to confirm any such interpretations. *(Revised: 1/9/96 effective 8/1/97, 11/1/07 effective 8/1/08, 8/7/14, 1/20/22)*

## 9.3.1.2 Interpretation Process.

**9.3.1.2.1 Staff Interpretation (Determination).** The academic and membership affairs staff shall respond to a request from a member institution for an interpretation of NCAA rules. *(Revised: 1/14/97 effective 8/1/97, 8/5/04, 4/24/08, 1/20/22)*

**9.3.1.2.1.1 Appeal of Staff Interpretation.** An institution may appeal a staff interpretation to the Interpretations Committee. Such a request must be submitted in writing by the institution's conference or by one of the five individuals who are authorized to request interpretations on behalf of the institution (president or chancellor, faculty athletics representative, athletics director, senior woman administrator, senior compliance administrator, or a designated substitute for the president or chancellor and/or athletics director, as specified in writing to the national office). *(Revised: 1/10/91, 1/11/94, 1/14/97 effective 8/1/97, 3/8/06, 4/24/08, 4/16/15, 1/20/22)*

**9.3.1.2.1.1.1 Institutional Participation.** An institution may participate by teleconference in the appeal of an interpretation if the activity at issue already has occurred and the interpretative decision could result in an individual or institutional violation. The Interpretations Committee shall establish policies and procedures relating to an institution's participation. *(Adopted: 4/25/02, Revised: 8/5/04, 4/24/08, 4/16/15, 1/20/22)*

**9.3.1.2.1.2 Review of Staff Interpretations.** The Interpretations Committee shall review all staff interpretations. *(Adopted: 4/24/08, Revised: 4/16/15, 1/20/22)*

**9.3.1.2.1.3 Publication and Notification.** A staff interpretation shall be binding on the requesting institution on notification of the response to its interpretation request, unless the interpretation is modified or reversed on appeal or review by the Interpretations Committee. A staff interpretation that has been reviewed and approved by the Interpretations Committee shall be binding on all other institutions on publication to the membership (e.g., announced on the NCAA website or Legislative Services Database for the Internet). *(Adopted: 4/24/08, Revised: 4/16/15, 1/20/22)*

**9.3.1.2.2 Review of Interpretations Committee's Decision.** The Legislative Committee shall review all interpretations issued by the Interpretations Committee and may approve, reverse or modify such interpretations. A member institution may appeal a decision of the Interpretations Committee to the Legislative Committee. The appeal must be submitted in writing by the institution's president or chancellor, faculty athletics representative or director of athletics. The Legislative Committee shall establish the procedures for such an appeal. A decision of the Legislative Committee is final and no additional appeal opportunity shall exist for a member institution. *(Adopted: 1/11/94, Revised: 1/9/96 effective 8/1/97, 1/14/97 effective 8/1/97, 8/5/04, 3/8/06, 11/1/07 effective 8/1/08, 10/28/10, 8/7/14, 4/16/15, 10/4/17, 1/20/22)*

**9.3.1.2.2.1 Areas of Autonomy.** The members of the Legislative Committee who are representatives from the five conferences named in Bylaw 9.2.2.1.1 shall act on behalf of the committee on matters that relate to the areas of autonomy listed in Bylaw 9.2.2.1.2. *(Adopted: 10/4/17, Revised: 1/20/22)*

**9.3.1.2.3 Publication and Notification.** Interpretations issued by the Interpretations Committee shall be binding on notification to affected institutions and on all member institutions after publication and notification to the membership. *(Revised: 1/9/96 effective 8/1/97, 1/14/97 effective 8/1/97, 8/5/04, 4/16/15, 1/20/22)*

**9.3.1.2.4 Revision.** Interpretations approved by the Legislative Committee may not be revised by the Interpretations Committee. The Interpretations Committee may only recommend to the Legislative Committee revisions of such interpretations. *(Revised: 1/15/97 effective 8/1/97, 1/9/96 effective 8/1/97, 11/1/97 effective 8/1/08, 8/7/14, 4/16/15, 10/14/17, 1/20/22)*

**9.3.1.3 Committee for Legislative Relief.** An institution may appeal a decision of the NCAA staff regarding the application of NCAA legislation to a particular situation to the Committee for Legislative Relief when no other entity (other than the Board of Directors) has the authority to act. In reaching its decision, the committee shall review the complete record in order to determine whether there is sufficient basis to grant relief from the application of the legislation. The committee shall establish the process for such a review, subject to the review of the Legislative Committee. A decision of the Committee for Legislative Relief shall be final, binding and conclusive and shall not be subject to further review by any other authority. *(Revised: 1/16/93, 8/1/96 effective 8/1/97, 11/1/00, 11/1/07 effective 8/1/08, 8/7/14, 10/29/15, 10/4/17, 1/20/22)*

**9.3.2 Resolutions.**

**9.3.2.1 Authorization.** Legislation may be enacted through resolutions not inconsistent with the constitution, bylaws (including administrative bylaws) and special rules of order. *(Revised: 1/20/22)*

**9.3.2.2 Scope and Application.** Legislation enacted through resolutions shall be of a temporary nature, effective only for a limited time as specified in the resolution itself. *(Revised: 1/20/22)*

**9.3.2.3 Division Dominant Provisions.**

**9.3.2.3.1 Sponsorship.** A resolution related to a division dominant provision may be sponsored by the Board of Directors. *(Adopted: 1/9/96 effective 8/1/97, Revised: 1/20/22)*

**9.3.2.3.2 Submission Deadline.** A proposed resolution related to a division dominant provision must be submitted prior to November 1. The Board of Directors may sponsor resolutions at the time of the Convention without meeting this deadline provided the proposed resolution has been approved by a two-thirds majority vote of the Board of Directors and copies are distributed during the Division I Business Session. *(Adopted: 1/9/96 effective 8/1/97, Revised: 1/20/22)*

**9.3.2.3.3 Voting Requirements.**

**9.3.2.3.3.1 Adoption -- Annual/Special Convention.** Adoption of a resolution shall require a majority vote of the delegates of the division present and voting at an annual or special Convention. *(Adopted: 1/9/96 effective 8/1/97, Revised: 1/20/22)*

**9.3.2.3.3.2 Mail Ballot.** If a majority of the delegates of the division present and voting so direct, a resolution shall be referred to the entire membership of the division for a mail vote conducted under conditions approved by the Board of Directors Administrative Committee. A two-thirds majority of members of the division voting in any

such mail vote shall be required for the enactment of the legislation proposed in the resolution. *(Adopted: 1/9/96 effective 8/1/97, Revised: 1/20/22)*

### 9.3.3 Special Rules of Order.

**9.3.3.1 Division Business Session.** The division may adopt special rules of order not inconsistent with the bylaws by a two-thirds majority of the delegates of the applicable division present and voting at any annual or special Convention. *(Revised: 1/9/96 effective 8/1/97, 1/20/22)*

### 9.3.4 Statements of Division Philosophy.

**9.3.4.1 Authorization.** The division or a subdivision, through appropriate deliberative processes, may prepare a statement of division philosophy relating to the development and operation of an intercollegiate athletics program in the division or subdivision. *(Revised: 1/20/22)*

**9.3.4.2 Scope and Application.** Such a statement is not binding on member institutions but shall serve as a guide for the preparation of legislation by the division or subdivision and for planning and implementation of programs by institutions and conferences. *(Adopted: 1/20/22)*

**9.3.4.3 Adoption Process.** A statement of division philosophy may be adopted through the legislative process set forth in Bylaw 9.2.2. If a statement of division philosophy is adopted, it shall be published in the NCAA Manual. *(Revised: 1/9/96 effective 8/1/97, 1/20/22)*

DEFENDANT'S EXHIBIT B

## 2023 Agreed-Upon Procedures



## BACKGROUND INFORMATION

1. **NCAA LEGISLATION**

   The NCAA agreed-upon procedure reporting legislation for each of the three membership divisions are contained in each division's manual:

   a. **Division I**

   Bylaw 20.2.4.17.  "An institution shall submit financial data detailing operating revenues, expenses and capital related to its intercollegiate athletics program to the NCAA on an annual basis in accordance with the financial reporting policies and procedures.   The required data shall include, but is not limited to, the following:

   (a) All expenses and revenues for or on behalf of an institution's intercollegiate athletics program, including those by any affiliated or outside organization, agency or group of individuals;

   (b) Salary and benefits data for all athletics positions.  The data shall include base salary, bonuses, endorsements, media fees, camp or clinic income, deferred income and other income contractually guaranteed by the institution;

   (c) Capital expenditures (to be reported in aggregate for athletics facilities), including capitalized additions and deletions to facilities during the reporting period, total estimated book value of athletically related plant and equipment net of depreciation, total annual debt service on athletics and university facilities and total debt outstanding on athletics and university facilities;

   (d) Value of endowments at fiscal year-end that are dedicated to the sole support of athletics;

   (e) Value of all pledges at fiscal year-end that support athletics; and

   (f) The athletics department fiscal year-end fund balance."

   Bylaw 20.2.4.17.1. "The report shall be subject to annual agreed-on verification procedures approved by the membership (in addition to any regular financial reporting policies and procedures of the institution) and conducted by a qualified independent accountant who is not a staff member of the institution and who is selected by the institution's chancellor or president or by an institutional administrator from outside the athletics department designated by the chancellor or president. The independent accountant shall verify the accuracy and completeness of the data prior to submission to the institution's chancellor or president and the NCAA. The institution's chancellor or president shall certify the financial report prior to submission to the NCAA. "

## APPENDIX B | 2023 Expense Categories

Expenses for the athletics program will vary among institutions; however, typical sources of intercollegiate athletics expenses are outlined (each followed by a comprehensive definition) below:

| ID | Category | Definition |
|----|----------|-----------|
| 20 | Athletic Student Aid | Input the total dollar amount of athletic student aid for the reporting year including:<br>• Summer school.<br>• Tuition discounts and waivers (unless it is a discount or waiver available to the general student body).<br>• Aid given to student-athletes who are inactive (medical reasons) or no longer eligible (exhausted eligibility).<br>• Other expenses related to attendance (e.g., stipend).<br><br>Note: Division I Grants-in-aid equivalencies are calculated by using the revenue distribution equivalencies by sport and in aggregate. (Athletic grant amount divided by the full grant amount).<br>Other expenses related to attendance (also known as cost of attendance) should not be included in the grants-in-aid revenue distribution equivalencies.  Only tuition, fees, room, board, and course related books are countable for grants-in-aid revenue distribution per Bylaw 20.02.10.<br><br>Athletics aid awarded to non-athletes (student- managers, graduate assistants, trainers) should be reported as Expenses Not Related to Specific Teams. It is permissible to report only dollars in the Expenses Not Related to Specific Teams row as long as you have reported non-zero entries for Equivalencies, Number of Students, and Dollars (all 3 required for at least one sport).<br><br>Note: Pell grants are provided by the government, not the institution or athletics department, and therefore should be excluded from reporting in this category.<br><br>Note: This information can be managed within the NCAA's Compliance Assistance (CA) software. The equivalencies entered into CA will automatically populate to the athletic student aid section within the NCAA Financial Reporting System when the CA import feature is selected. |
| 21 | Guarantees | Input amounts paid to visiting participating institutions, including per diems and/or travel and meal expenses. This includes payments made due to game cancellations. |

| ID | Category | Definition |
|---|---|---|
| 22 | Coaching Salaries, Benefits and Bonuses paid by the University and Related Entities | Input compensation, bonuses and benefits paid to all coaches reportable on the university or related entities W-2 and 1099 forms, as well as non-taxable benefits (1098T), inclusive of:<br>• Gross wages and bonuses.<br>• Taxable and non-taxable benefits include: allowances, speaking fees, retirement, stipends, memberships, media income, tuition reimbursement/exemptions (for self or a dependent) and earned deferred compensation, including those funded by the state.<br><br>Place any severance payments in Category 26.<br><br>Note: Bonuses related to participation in a post-season football bowl game should be included in Category 41A. |
| 23 | Coaching Salaries, Benefits and Bonuses paid by a Third Party | Input compensation, bonuses and benefits paid to all coaches by a third party and contractually guaranteed by the institution, but not included on the institutions W-2, as well as any non-taxable benefits, including:<br>• Car stipend.<br>• Country club membership.<br>• Allowances for clothing, housing, and entertainment.<br>• Speaking fees.<br>• Camps compensation.<br>• Media income.<br>• Shoe and apparel income.<br><br>Expense Category 23 and 25 should equal Category 10.<br><br>Note: Bonuses related to participation in a post-season football bowl game should be included in Category 41A. |
| 24 | Support Staff/ Administrative Compensation, Benefits and Bonuses paid by the University and Related Entities | Input compensation, bonuses and benefits paid to all administrative and support staff reportable on the university or related entities (e.g., foundations or booster clubs) W-2 and 1099 forms, as well as any non-taxable benefits, inclusive of:<br>• Gross wages and bonuses.<br>• Benefits including allowances, speaking fees, retirement, stipends, memberships, media income, tuition reimbursement/exemptions and earned deferred compensation, including those funded by the state.<br><br>Staff members responsible for the gender-specific athletics department, but not a specific sport (e.g., athletic director, assistant athletic director, compliance coordinator), will have their compensation figures reported as Expenses Not Related to Specific Teams fields. Athletics department staff members who assist both men's and women's teams (e.g., sports information director, academic advisor) will be reported as Not Allocated by Gender column. |

| ID | Category | Definition |
|----|----------|------------|
| 25 | Support Staff/ Administrative Compensation, Benefits and Bonuses paid by Third Party | Input compensation, bonuses and benefits paid to administrative and support staff by a third party and contractually guaranteed by the institution, but not included on the institutions W-2, as well as non-taxable benefits, including:<br>• Car stipend.<br>• Country club membership.<br>• Allowances for clothing, housing, and entertainment.<br>• Speaking fees.<br>• Camps compensation.<br>• Media income.<br>• Shoe and apparel income.<br><br>Expense Category 23 and 25 should equal Category 10. |
| 26 | Severance Payments | Input severance payments and applicable benefits recognized for past coaching and administrative personnel. |
| 27 | Recruiting | Input transportation, lodging and meals for prospective student-athletes and institutional personnel on official and unofficial visits, telephone call charges, postage, and such. Include value of use of institution's own vehicles or airplanes as well as in-kind value of loaned or contributed transportation. |
| 28 | Team Travel | Input air travel, ground travel, lodging, meals, and incidentals (including housing costs incurred during school break period) for competition related to preseason, regular season and non-football bowl postseason. Amounts incurred for food and lodging for housing the team before a home game also should be included.  Use of the institution's own vehicles or airplanes as well as in-kind value of donor-provided transportation.<br><br>Note:  Expenses related to post-season football bowls should be included in Category 41. |
| 29 | Sports Equipment, Uniforms and Supplies | Input items that are provided to the teams only. Equipment amounts are those expended from current or operating funds. Include value of in-kind equipment provided.<br><br>Note:  Expenses related to post-season football bowls should be included in Category 41. |
| 30 | Game Expenses | Input game-day expenses other than travel which are necessary for intercollegiate athletics competition, including officials, security, event staff, ambulance, etc. Input any payments back to the NCAA for hosting a championship or conference for hosting a tournament.<br><br>Note:  Expenses related to post-season football bowls should be included in Category 41. |

| ID | Category | Definition |
|---|---|---|
| 31 | Fund Raising, Marketing and Promotion | Input costs associated with fund raising, marketing and promotion for media guides, brochures, recruiting publications and such. |
| 32 | Sports Camp Expenses | Input all expenses paid by the athletics department, including non-athletics personnel salaries and benefits, from hosting sports camps and clinics. Athletics personnel salaries and benefits should be reported in Categories 22-25. |
| 33 | Spirit Groups | Include support for spirit groups including bands, cheerleaders, mascots, dancers, etc.<br><br>Note:  Expenses related to post-season football bowls should be included in Category 41. |
| 34 | Athletic Facilities Debt Service, Leases and Rental Fees | Input debt service payments (principal and interest, including internal loan programs), leases and rental fees for athletics facilities for the reporting year regardless of entity paying (athletics, institution or other).<br><br>Do not report depreciation.<br><br>Note: If the institution is paying for all debt service, leases, or rental fees for athletic facilities but not charging to athletics, this category should equal Category 6A.  If athletics or other entities are paying these expenses or the institution is charging directly to athletics, this category will not equal Category 6A. |
| 35 | Direct Overhead and Administrative Expenses | Input overhead and administrative expenses paid by or charged directly to athletics including:<br>• Administrative/Overhead fees charged by the institution to athletics.<br>• Facilities maintenance.<br>• Security.<br>• Risk Management.<br>• Utilities.<br>• Equipment Repair.<br>• Telephone.<br>• Other Administrative Expenses. |
| 36 | Indirect Institutional Support | Input overhead and administrative expenses NOT paid by or charged directly to athletics including:<br>• Administrative/Overhead fees not charged by the institution to athletics.<br>• Facilities maintenance.<br>• Security.<br>• Risk Management.<br>• Utilities.<br>• Equipment Repair.<br>• Telephone.<br>• Other Administrative Expenses.<br><br>Do not report depreciation.<br>Note: This category should equal Category 6. |

| ID | Category | Definition |
|---|---|---|
| 37 | Medical Expenses and Insurance | Input medical expenses and medical insurance premiums for student-athletes. |
| 38 | Memberships and Dues | Input memberships, conference, and association dues. |
| 39 | Student-Athlete Meals (non-travel) | Include meal allowance and food/snacks provided to student-athletes. Note: Meals provided during team travel should be reported in Category 28. |
| 40 | Other Operating Expenses | Input any operating expenses paid by athletics in the report year which cannot be classified into one of the stated categories, including:<br>• Non-team travel (conferences, etc.).<br>• Team banquets and awards.<br><br>If the figure is greater than 10% of total expenses, please report the top three activities included in this category in the comments section. |
| 41 | Football Bowl Expenses | Input all expenditures related to participation in a post-season football bowl game, including:<br>• Team travel, lodging and meal expenses.<br>• Bonuses related to football bowl participation.<br>• Spirit groups.<br>• Uniforms.<br><br>Note: All post-season football bowl related coaching compensation/bonuses should be reported in Category 41A, Football Bowl Expenses – Coaching Compensation/Bonuses. |
| 41A | Football Bowl Expenses – Coaching Compensation/ Bonuses | Input all coaching bonuses related to participation in a post-season football bowl game. Note: All other post-season football bowl related expenses should be reported in Category 41, Football Bowl Expenses. |
|  | Total Operating Expenses | Total of Categories 20-41A. |

- All equivalency calculations should be rounded to two decimal places.

- If a selected student received a Pell Grant, ensure the value of the grant is not included in the calculation of equivalencies or the total dollar amount of student athletic aid expense for the institution.

- If a selected student received a Pell Grant, ensure the student's grant was included in the total number and total dollar value of Pell Grants reported for Revenue Distribution purposes in the NCAA Membership Financial Reporting System.

**d.** Recalculate totals for each sport and overall.

## 21.  Guarantees

**a.** Obtain and inspect visiting institution's away-game settlement reports received by the institution during the reporting period and agree related expenses to the institution's general ledger and/or the statement and recalculate totals.

**b.** Obtain and inspect contractual agreements pertaining to expenses recorded by the institution from guaranteed contests during the reporting period.  Compare and agree related amounts expensed by the institution during to the institution's general ledger and/or the statement and recalculate totals.

## 22.   Coaching Salaries, Benefits, and Bonuses Paid by the University and Related Entities

**a.** Obtain and inspect a listing of coaches employed by the institution and related entities during the reporting period.  Select a sample of coaches' contracts that must include football, and men's and women's basketball from the listing.

**b.** Compare and agree the financial terms and conditions of each selection to the related coaching salaries, benefits, and bonuses recorded by the institution and related entities in the statement during the reporting period.

**c.** Obtain and inspect payroll summary registers for the reporting year for each selection. Compare and agree payroll summary registers from the reporting period to the related coaching salaries, benefits and bonuses paid by the institution and related entities expense recorded by the institution in the statement during the reporting period.

**d.** Compare and agree the totals recorded to any employment contracts executed for the sample selected and recalculate totals.

## 23.  Coaching Salaries, Benefits, and Bonuses Paid by a Third-Party

**a.** Obtain and inspect a listing of coaches employed by third parties during the reporting