UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON RAY, KHALA TAYLOR, PETER ROBINSON, KATHERINE SEBBANE, and RUDY BARAJAS, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,<br><br>Defendant. | Case No. 1:23-cv-00425 WBS CSK<br><br>ORDER RE: PLAINTIFFS' MOTION TO COMPEL<br><br>(ECF No. 129) |

Pending before the Court is a motion to compel filed by Plaintiffs Shannon Ray, Khala Taylor, Peter Robinson, Katherine Sebbane, and Rudy Barajas.[1] (ECF No. 129.) Plaintiffs seek to compel Defendant National Collegiate Athletic Association (NCAA) to disclose one sentence redacted in a document and compel further responses to Plaintiffs' Requests for Admission (RFA) numbers 3, 5, and 6. A hearing was held on April 8, 2025, with counsel Dennis Stewart appearing for Plaintiffs and counsel Justin

---

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c). Joseph Colon is no longer a named plaintiff in this action (see Second Am. Compl. (ECF No. 84)), and the Clerk's Office is directed to update the short case title in the docket to *Ray, et al. v. NCAA*.

1

Raphael appearing for Defendant. For the reasons that follow, the Court DENIES Plaintiffs' motion to compel.

## I. BACKGROUND

In this antitrust action, Plaintiffs allege violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, based on NCAA Division I Bylaw 11.01.06 regarding compensation for assistant coaches, which the parties refer to as the "Volunteer Coach Rule." *See* Second Am. Compl. The district court recently certified the class of "[a]ll persons who, from March 17, 2019, to June 30, 2023, worked for an NCAA Division I sports program other than baseball in the position of 'volunteer coach,' as designated by NCAA Bylaws." 3/10/2025 Order (ECF No. 128). Plaintiffs were appointed as class representatives. *Id*. The relevant background for the discovery dispute currently at issue is provided in the discussion below.

## II. DISCUSSION

### A. Legal Standards

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "[B]road discretion is vested in the trial court to permit or deny discovery." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

A party may serve requests for admission on any matters within the scope of Rule 26(b)(1) relating to "facts, the application of law to fact, or opinions about either"; and "the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). A matter is deemed admitted unless a written answer or objection is served within thirty (30) days, unless otherwise agreed upon or ordered, after the requests were served. Fed. R. Civ. P. 36(a)(3).

A party may move to compel discovery if the movant has in good faith conferred with the party opposing discovery to obtain the requested discovery without the court's intervention. *See* Fed. R. Civ. P. 37(a)(1). The moving party bears the burden to "inform the Court which discovery requests are the subject of the motion to compel, and, for

each disputed response, why the information sought is relevant and why the responding party's objections are not meritorious." *Adams v. Yates*, 2013 WL 5924983, at *1 (E.D. Cal. Nov. 1, 2013). Local Rule 251 governs motions to compel and requires the parties to confer and attempt to resolve their discovery differences.

### B.    January 12, 2023 Talking Points Document

In discovery, the NCAA produced a January 12, 2023 Talking Points document. The NCAA initially produced this document unredacted, then clawed it back based on attorney-client privilege and produced a redacted version with one sentence redacted.[2] This document was prepared by Jenn Fraser, NCAA's Vice President of Division I Governance, for Lynda Tealer, then chair of the NCAA Division I Council and representative for the University of Florida, a Division I school. Ms. Fraser and Ms. Tealer are not attorneys. At Ms. Fraser's deposition, she testified that the document was prepared for Ms. Tealer's use in Ms. Tealer's report to the NCAA board of directors. Jenn Fraser Dep. 220:24-221:23, Joint Disco. Stmt, Exh. 4 (ECF No. 129-6). She further testified that the redacted sentence summarized legal advice the NCAA received from outside counsel at Cleary Gottlieb. *Id*. at 265:9-266:9. Based on Ms. Fraser's unrebutted testimony, this sentence represents privileged attorney-client communications. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The fact that Ms. Fraser also testified that she did not consult with an attorney when drafting the Talking Points document and that she did not intend Ms. Tealer to use the document to convey or provide legal opinions or advice, does not alter the Court's finding.[3] Therefore, this sentence was properly redacted. In addition, Plaintiffs' evidentiary arguments regarding Ms. Fraser's personal knowledge and foundation fail here as they go towards

---

[2] As stated at the hearing, the Court declines to address other documents referenced by Plaintiffs in the Joint Discovery Statement that are not the subject of this motion to compel. *See* Joint Disco. Stmt at 4-5.

[3] At the hearing, Plaintiffs' counsel requested an in-camera review of the Talking Points document. Given that this issue was not raised in the Joint Discovery Statement as required and was raised for the first time at the hearing, the Court declined this request.

admissibility, not the determination of whether the material is privileged and if so, whether the privilege has been waived.

Plaintiffs do not contend that the NCAA expressly waived its privilege. *See* Joint Disco. Stmt. Instead, Plaintiffs argue that if the redacted sentence is privileged, the NCAA has implicitly waived its privilege. The Court addresses Plaintiffs' argument regarding implied waiver of the attorney-client privilege below.

### C. Plaintiffs' Requests for Admission Nos. 3, 5, and 6

Plaintiffs served seven RFAs on the NCAA, and move to compel further responses as to RFA Nos. 3, 5, and 6, which are reproduced below.

#### 1. RFA No. 3

Plaintiffs' RFA Nos. 3 asks whether the NCAA considered outside legal counsel's advice "regarding the legality of the Volunteer Coach Rule under antitrust laws" in recommending the repeal of the rule. After raising objections, the NCAA admitted RFA No. 3 in part. In addition, the NCAA admitted Plaintiffs' RFA No. 2, which asks whether outside counsel communicated legal advice "regarding the legality of that rule under the antitrust laws." Though RFA No. 2 is not at issue, it is also reproduced below as relevant.

**PLAINTIFFS' REQUEST NO. 2:**

Prior to the repeal of the Volunteer Coach Rule, legal advice from outside counsel to the NCAA was communicated directly or indirectly to one or more NCAA Committees and some Division I member schools regarding the legality of that rule under the antitrust laws.

**DEFENDANT'S RESPONSE TO REQUEST NO. 2:**

*The NCAA admits the request for admission No. 2.*

**PLAINTIFFS' REQUEST NO. 3:**

One of the factors one or more NCAA Committees considered in 2022-23 when recommending the repeal of the Volunteer Coach Rule was the advice of outside legal counsel regarding the legality of the Volunteer Coach Rule under antitrust laws.

**DEFENDANT'S RESPONSE TO REQUEST NO. 3:**

> The NCAA objects to this request to the extent it seeks protected attorney client privileged communications. The NCAA objects to this request for admission as vague and ambiguous. The NCAA Committees and Division I Council considered a number of proposals in 2022-23 that came from the Modernization of Rules Subcommittee, among other sources, including the Volunteer Coach Rule. Given these objections, including that the request seeks information regarding the content of attorney client privileged communications by and with the NCAA's counsel, the NCAA cannot admit or deny the request as framed. *The NCAA does admit that one or more NCAA Committees that ultimately voted in favor of, or recommended, a package of legislative reforms that included the repeal of the volunteer coach designation bylaw, received advice of outside legal counsel regarding antitrust law*.

Def. RFA (Set One) Responses, Joint Disco. Stmt, Exh. 5 (ECF No. 129-7) (emphasis added).

At the hearing, the Court asked Plaintiffs why a further response was needed for RFA No. 3 given the NCAA's partial admission to RFA No. 3 and its admission to RFA No. 2. Plaintiffs agreed that a further response from the NCAA to RFA No. 3 was not necessary. Therefore, this issue is now moot, and the motion to compel is denied as to RFA No. 3 as moot.

    2.    <u>RFA Nos 5 and 6</u>

Plaintiffs' RFA Nos. 5 and 6 ask whether the Volunteer Coach Rule was repealed in part because of the NCAA's "concern[] that the Volunteer Coach Rule may violate antitrust laws." Unlike RFA Nos. 2 and 3, the NCAA did not admit any portion of RFA No. 5 or No. 6. Instead, the NCAA denied both RFAs as seeking the content of privileged attorney-client communication.

**PLAINTIFFS' REQUEST NO. 5:**

> The NCAA's Division I Transformation Committee recommended the repeal of the Volunteer Coach Rule, at least in part, because it was concerned that the Volunteer Coach Rule may violate antitrust laws.

**DEFENDANT'S RESPONSE TO REQUEST NO. 5:**

The NCAA objects to this request for admission as vague and ambiguous in that it does not define what it means by the "Volunteer Coach Rule." The NCAA objects to this request to the extent it seeks protected attorney client privileged communications. The NCAA cannot respond to this request because it seeks information regarding the content of attorney client privileged communications by and with the NCAA's counsel and for that reason, denies request for admission no. 5.

**PLAINTIFFS' REQUEST NO. 6:**

One of the reason why the Volunteer Coach Rule was repealed in 2023 was because of the concern that the Volunteer Coach Rule may violate antitrust laws.

**RESPONSE TO REQUEST NO. 6:**

The NCAA objects to this request for admission as vague and ambiguous in that it does not define what it means by the "Volunteer Coach Rule." The NCAA objects to this request to the extent it seeks protected attorney client privileged communications. The NCAA cannot respond to this request because it seeks information regarding the content of attorney client privileged communications by and with the NCAA's counsel and for that reason, denies request for admission no. 6.

Def. RFA (Set One) Responses, Joint Disco. Stmt, Exh. 5.

At the outset, the Court rejects the NCAA's vague and ambiguous objection. The NCAA clearly understands what the "Volunteer Coach Rule" is referring to given its admission to RFA No. 2, which uses the same phrase and to which the NCAA did not object. The Court focuses its analysis, as do the parties, on the attorney-client privilege issue.

Plaintiffs first argue that it is not seeking privileged information because its RFAs seek the business rationale for the NCAA's repeal of the Volunteer Coach Rule. This argument fails, however, because RFAs Nos. 5 and 6 do not ask about business reasons. In addition, it is important to note the context of RFAs Nos. 5 and 6, which

follow RFA No. 2 (whether outside counsel communicated legal advice to the NCAA "regarding the legality of that rule under the antitrust laws") and RFA Nos. 3 (whether the NCAA considered outside legal counsel's advice "regarding the legality of the Volunteer Coach Rule under antitrust laws" in recommending the repeal of the rule). The Court concludes that RFA Nos. 5 and 6 seek the content of privileged attorney-client communications.

Plaintiffs next argue that the NCAA should be compelled to further respond because even if such information is privileged, the NCAA implicitly waived its privilege by putting its state of mind at issue when it asserted pro-competitive reasons.[4] The NCAA responds that it has not put its privileged communications at issue, which is a required element for implied waiver of the attorney-client privilege. The Court agrees with the NCAA.

In the Ninth Circuit, implied waiver of the attorney-client privilege "is based on the rule that 'a litigant waives the attorney-client privilege by putting the lawyer's performance at issue during the course of litigation.'" *United States v. Sanmina Corp.*, 968 F.3d 1107, 1117 (9th Cir. 2020) (quoting *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (citation omitted)). Some courts analyze implied waiver through a three-element test as presented by the parties here, *see* Joint Disco. Stmt at 12: (1) "whether the party is asserting the privilege as the result of some affirmative act, such as filing suit"; (2) "whether through this affirmative act, the asserting party puts the privileged information at issue"; and (3) "whether allowing the privilege would deny the opposing party access to information vital to its defense." *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (internal quotation marks and citations omitted). Because the attorney-client privilege is typically used as a shield to protect against disclosure, implied waiver prevents a party from using attorney-client privilege as both a shield and a sword (by taking an affirmative act). *See Sanmina Corp.*, 968 F.3d at 1117.

---

[4] There is no argument that the NCAA expressly waived the attorney-client privilege.

The Court's analysis first focuses on whether the NCAA has affirmatively put its attorney-client communications or lawyer's performance at issue, before turning to whether permitting assertion of the privilege would be fair. Here, the NCAA did not take an affirmative act to put <u>its privileged attorney-client communications at issue</u>, or, in other words, put <u>its lawyer's performance</u> at issue. *See Sanmina Corp.*, 968 F.3d at 1117; *Amlani*, 169 F.3d at 1195. The NCAA's assertion of pro-competitive reasons for the Volunteer Coach Rule (or its repeal) does not put its counsel's legal advice or its privileged communications with counsel at issue. The fact that pro-competitive reasons necessarily implicate the NCAA's state or mind or its intent, does not equate to the NCAA putting its attorney-client privilege or its outside counsel's performance at issue. The cases upon which Plaintiffs rely are distinguishable on this basis. *See* Joint Disco. Stmt at 12-14 (citing, e.g., *Olvera v. County of Sacramento*, 2012 WL 273158, at *4 (E.D. Cal. Jan. 30, 2012) (finding implied waiver where defendants asserted good faith defense based on their "subjective and allegedly reasonable evaluation of the relevant facts and the law")).

Another problem with Plaintiffs' argument is that under a logical application of Plaintiffs' rationale, an implied waiver of the attorney-client privilege occurs when an antitrust defendant in a Sherman Act § 1 case asserts pro-competitive reasons for the challenged restraint, which occurs in almost every Section 1 case as part of the rule of reason analysis.[5] Plaintiffs were not able to identify, and neither was the Court, any cases where an implied waiver of the attorney-client privilege occurred in a similar context from the defendant's assertion of a pro-competitive rationale. *See* Joint Disco. Stmt. While there very well may be a situation where an implied waiver of the attorney-client privilege by an antitrust defendant asserting a pro-competitive rationale occurs, it has not occurred here. The Court therefore concludes that the NCAA has not implicitly

---

[5] At this stage of the litigation, the Court recognizes that neither side concedes the level of analysis applicable for this Section 1 claim (i.e., per se, quick look, or full rule of reason), and the Court's analysis here does not presume or apply a specific type of analysis.

8

waived its attorney-client privilege.

### III. CONCLUSION

In conclusion, IT IS HEREBY ORDERED that:

1. Plaintiffs' motion to compel (ECF No. 129) is DENIED; and
2. The Clerk of the Court is directed to update the short case title in the docket to *Ray, et al. v. NCAA*.

Dated: April 14, 2025

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE