Dennis Stewart, CA Bar No. 99152
**GUSTAFSON GLUEK PLLC**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 595-3299

Daniel E. Gustafson, MN Bar No. 202241
Joshua J. Rissman, MN Bar No. 391500
Anthony J. Stauber, MN Bar No. 401093
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844

Darryl J. Horowitt, CA Bar No. 100898
**COLEMAN & HOROWITT, LLP**
499 West Shaw, Suite 116
Fresno, CA 93704
Telephone: (559) 248-4820

Robert J. Gralewski, Jr., CA Bar No. 196410
Marko Radisavljevic, CA Bar No. 306552
**KIRBY McINERNEY LLP**
600 B Street, Suite 2110
San Diego, California 92101
Telephone: (619) 784-1442

Leonard B. Simon, CA Bar No. 58310
**THE LAW OFFICES OF LEONARD B. SIMON P.C.**
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 818-0644

Michael Lieberman, DC Bar No. 1033827
Jamie Crooks, CA Bar No. 310447
Yinka Onayemi, NY Bar No. 5940614
Michael Goldberg, MA Bar No. 709203
**FAIRMARK PARTNERS, LLP**
400 7th Street NW, Suite 304
Washington, DC 20004
Telephone: (818) 585-2903

*Attorneys for Plaintiffs Shannon Ray, Khala Taylor,*
*Peter Robinson, Katherine Sebbane, and Rudy Barajas*
*Individually and on Behalf of All Those Similarly Situated*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON RAY, KHALA TAYLOR, PETER ROBINSON, KATHERINE SEBBANE, and RUDY BARAJAS Individually and on Behalf of All Those Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, an unincorporated association,<br><br>Defendant. | Case No. 1:23-cv-00425<br><br>**PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT THAT DEFENDANT VIOLATED THE SHERMAN ACT**<br><br>Judge: Hon. William B. Shubb<br>Courtroom: 5<br>Date: September 15, 2025<br>Time: 1:30 PM |

Plaintiffs respectfully submit this Statement of Undisputed Facts in support of their Motion for Summary Judgment That Defendant Violated The Sherman Act, as required by Rule 56 of the Federal Rules of Civil Procedure and Local Rule 260(a). All "Ex. __" citations refer to exhibits to the contemporaneously filed Declaration of Michael Lieberman.

**FACTS NOT IN DISPUTE**

| No. | Fact | Evidence |
|---|---|---|
| 1 | NCAA is an unincorporated association whose members are colleges and universities that compete in intercollegiate athletics. | Ex. 1 |
| 2 | NCAA's members are organized into three Divisions—Divisions I, II, and III—based on the strength of competition chosen by the school. | Ex. 1 |
| 3 | Vice President of Division I Governance Jennifer Fraser testified: "[T]here is no other entity in the world like Division I." | Ex. 2 at 30:8-10; 102:21-22 |
| 4 | More than 390 schools compete in Division I, and they compete in 45 sports (though not every school competes in every sport). | Ex. 3 at Bylaw 11.7.6 |
| 5 | Through their membership in NCAA Division I, each institution agrees with NCAA and every other institution to uphold and enforce NCAA Division I bylaws. | Ex. 3 at Constitution Articles 3.2.1.2, 3.3.4.1; *id.* at Bylaw 19.01.2. |
| 6 | The final report of the Special Committee on Cost Reduction states that the Committee "was established by resolution of the 1989 NCAA Convention, with the specific charge of recommending means by which to reduce costs in intercollegiate athletics, without denying students access to | Ex. 4 at _0141889 |

1

PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS

| | | | |
|---|---|---|---|
| | | higher education or significantly altering the competitive balance among NCAA member institutions." | |
| | 7 | At the 1990 NCAA Convention, the Chair of the Special Committee on Cost Reduction stated: "From the beginning, the committee felt it was important that we look at every conceivable way to cut costs and save money. The practical solution is always in our minds, recognizing that practicality and competitive balance cannot always be in intercollegiate athletics." | Ex. 5 at _0284310 |
| | 8 | The final report of the Special Committee on Cost Reduction states: "The largest expense item in the athletics budget is personnel." | Ex. 4 at _0141893 |
| | 9 | The final report of the Special Committee on Cost Reduction states: "Therefore, the committee recommends a number of changes designed to reduce costs by modifying practices governed by competitive policies." | Ex. 4 at _0141893 |
| | 10 | At the 1991 NCAA Convention, NCAA's members voted to limit the number of coaches that each school could hire in each sport, including one "restricted earnings coach" whose compensation could not exceed $12,000 for the academic year and $4,000 during the summer. | Ex. 6 at _0143196-99 |
| | 11 | After the 1991 Convention, NCAA and its member schools created a new subcommittee called the NCAA Council Subcommittee to Review 1991 Reform Proposals to review and "fine-tune" the 1991 reform proposals adopted by the membership. | Ex. 9 at _0270047 |
| | 12 | At the meeting of the NCAA Presidents Commission on June 25-26, 1991, David B. Keilitz, the chair of the NCAA Council | Ex. 8 at _0270033 |

2

PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS

| | | | |
|---|---|---|---|
| | | Subcommittee to Review 1991 Reform Proposals, "emphasized that the subcommittee's recommendations were intended neither to compromise nor to change the basic intent of the 1991 reform legislation as adopted." | |
| | 13 | At the meeting of the NCAA Presidents Commission on June 25-26, 1991, the Presidents Commission voted to "reemphasize its continuing commitment to oppose any proposals that would compromise the basic intent of the Commission's reform legislation." | Ex. 8 at _0270033 |
| | 14 | The Report of the NCAA Council Subcommittee to Review 1991 Reform Proposals, dated July 16, 1991, recommended: "In sports other than football and basketball, Division I member institutions should be permitted to utilize the services of one volunteer coach….  A volunteer coach would be defined as a coach who is prohibited from contacting and evaluating prospective student-athletes off campus or from scouting opponents off campus and who does not receive compensation or remuneration from the institution's athletics department except for a maximum of two complimentary tickets to home athletics contests." | Ex. 9 at _0270047 |
| | 15 | At the 1992 NCAA Convention, Craig Thompson of the Sun Belt Conference formally moved for adoption of Proposal No. 60. | Ex. 10 at _0143420 |
| | 16 | While moving for adoption of Proposal No. 60, Craig Thompson stated: "This proposal would permit each sport, other than football and basketball, to utilize one volunteer coach who is restricted to campus activities and may not travel with the | Ex. 10 at _0143420 |

3

PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS

| | | | |
|---|---|---|---|
| | | team. Thus, the adoption of this proposal would not result in any significant additional cost to the institution." | |
| | 17 | While speaking in favor of Proposal No. 60, Marcia Saneholtz stated: "At a time when there is increasing concern about the declining number of women in the coaching profession, this legislation would permit our former student-athletes and other interested women to test the coaching waters and to help determine if this is a career path of interest to them. Secondly, in light of the attending staff reductions, this legislation allows improvement of the coach/student-athlete ratio in several sports with large numbers of participants, for example, track and field, thus enhancing the student-athlete experience. There is no cost attached to this legislation." | Ex. 10 at _0143420 |
| | 18 | The Division I Membership approved Proposal No. 60. | Ex. 10 at _0143510 |
| | 19 | Proposal No. 60's official rationale stated: "At the 1991 Convention, the membership established coaching limits in Division I sports other than football and basketball for the first time. In response to the new limitations, many institutions expressed concern that a group of unpaid volunteers, such as former student-athletes and local club coaches, would be precluded from coaching and providing assistance to student-athletes. This proposal would permit each sport other than football and basketball the use of one volunteer coach who is restricted to on-campus activities and may not travel with the team. The establishment of a volunteer coach also would not result in any significant additional costs to the institution." | Ex. 10 at _0143510 |

4

PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS

| 20 | Proposal No. 60 used the term "Volunteer Coach" to refer to the coach that NCAA members agreed could not "receive compensation or remuneration from the institution's athletics department except for a maximum of two complimentary tickets to home athletic contests." | Ex. 10 at _0143510 |
|---|---|---|
| 21 | Division I Bylaws are enacted by Division I member institutions. | Ex. 3 at Bylaw 3.2.1.2; *id.* at Bylaw 3.2.4.1 |
| 22 | Compliance with the Division I Bylaws is a condition of participation in Division I. | Ex. 3 at Bylaw 3.2.1.2; *id.* at Bylaw 3.2.4.1 |
| 23 | During the class period, the Division I Bylaws authorized schools to fill a specific number of unrestricted coaching positions in each sport. | Ex. 3 at Bylaw 11.7.6 |
| 24 | During the class period, the Division I Bylaws authorized schools to hire one or more "volunteer coach" in most sports. | Ex. 3 at Bylaw 11.7.6.2.3 |
| 25 | During the class period, the Division I Bylaws prohibited schools from compensating a "volunteer coach" beyond minor incidental benefits. | Ex. 3 at Bylaw 11.01.6 |
| 26 | NCAA strictly enforced the compensation limits on volunteer coaches throughout the class period. | *E.g.*, Exs. 11-17 |
| 27 | Data from the NCAA's Membership Financial Reporting System ("MFRS") show that other than a decrease during the first year of the Covid-19 pandemic, the average compensation of unrestricted assistant coaches (*i.e.*, assistant coaches not designated as volunteers) in sports other than FBS football, basketball, and baseball increased each year from 2015-16 through 2022-23. | Report of Orley Ashenfelter in Support of Colon Plaintiffs' Motion for Class Certification, as Corrected |

5

PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS

| | | | November 26, 2024 ("Ashenfelter Report") Ex. 26 at ¶ 21 and Figure 2 |
|---|---|---|---|
| | 28 | MFRS data show that the average compensation of unrestricted assistant coaches (*i.e.*, assistant coaches not designated as volunteers) in sports other than FBS football, basketball, and baseball during academic years 2019-2020 through 2022-2023 was approximately $78,000. | Ashenfelter Report, Ex. 26 at ¶ 21 |
| | 29 | In January 2023, NCAA and its member schools voted to adopt Proposal No. 2022-28, effective July 1, 2023. | Ex. 18 at _0019556-57 |
| | 30 | Proposal No. 2022-28 eliminated the "volunteer coach" designation and offset the elimination of the volunteer coach designation by increasing the number of individuals who may serve as countable coaches. | Ex. 18 at _0019556 |
| | 31 | In 2021, the Division I Board of Directors appointed a 21-member NCAA Division I Transformation Committee. | Ex. 19 at _0000026 |
| | 32 | The Transformation Committee was charged with making recommendations that would "elevate the experience of today's student-athletes and ensure the continued excellence of intercollegiate athletics." | Ex. 19 at _0000026-27 |
| | 33 | The NCAA Division I Transformation Committee requested the NCAA Division I Legislative Committee Modernization of the Rules Subcommittee "review existing rules to determine whether modification is necessary and whether NCAA rules are regulated at the appropriate level (national, division, subdivision, conference or campus). The Transformation | Ex. 20 at _0149568 |

6

PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS

| | | | |
|---|---|---|---|
| | | Committee requested specific recommendations pertaining to the areas of review….” | |
| | 34 | The NCAA Division I Legislative Committee Modernization of the Rules Subcommittee conducted a "Review of Regulations in Division I Bylaw 11." | Ex. 20 at __0149571 |
| | 35 | The NCAA Division I Legislative Committee Modernization of the Rules Subcommittee stated: "During the 1991 NCAA Convention, coaching limitations were established in all sports and the rationale for these new personnel regulations noted the 'largest expense item in the athletics budget is personnel.' The rationale further noted that the designation of volunteer coach and graduate assistant which had been previously established were not effective in limiting the number of full-time coaches in a given sport. Since 1991, additional regulation in Bylaw 11 has been primarily motivated by either cost containment (e.g., creation of additional personnel designations, permitting additional volunteer coaches in specified sports) or recruiting concerns…." | Ex. 20 at __0149571 |
| | 36 | The NCAA Division I Transformation Committee Final Report stated: "In an effort to create fairer and more equitable Division I athletics competition, the Transformation Committee charged the NCAA Division I Legislative Committee Modernization of the Rules Subcommittee to review existing rules to determine whether modification is necessary and whether NCAA rules are regulated at the appropriate level (national, division, subdivision, conference or campus). The Modernization of the Rules Subcommittee developed and the NCAA Division I | Ex. 21 at _0000048 |

7

PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS

|  | | |
|---|---|---|
|  | Council introduced proposals into the legislative process, which will be considered in January, to: Eliminate the volunteer coach designation, increase the number of countable coaches permitted in applicable sports and eliminate the recruiting coordination functions legislation…." | |
| 37 | The Official Rationale for Proposal 2022-28 stated: "Elimination of the volunteer coach designation and the graduate assistant coach position will help provide better support to student-athletes and simplify the personnel legislation. This proposal offsets the proposed elimination of the volunteer coach designation … by increasing the number of individuals who may serve as countable coaches." | Ex. 18 at _0019556 |
| 38 | The Official Rationale for Proposal 2022-28 stated: "Division I Commitment: The Commitment to Student-Athlete Well-Being." | Ex. 18 at _0019559 |
| 39 | The NCAA Division I Bylaws during the class period did not include any caps on head coach compensation, assistant coach compensation (other than volunteer coaches, graduate assistants, and student assistants), non-coach staff compensation, expenditures on facilities, expenditures on travel, or expenditures on equipment. | Ex. 3 |
| 40 | MFRS data show that NCAA Division I schools spent between approximately $2.403 and $3.564 billion on coach compensation each year between 2015-16 and 2022-23. | Ashenfelter Report, Ex. 26 at ¶ 19 and Table 2 |
| 41 | Plaintiffs' Interrogatory Two stated: "Identify all pro-competitive benefits the Volunteer Coach Rule provided and the names of any individuals with knowledge of the same." | Ex. 22 at 7 |

PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS

| 42 | Defendant's Response to Interrogatory Two stated: "The Volunteer Coach position enhanced equitable competition between NCAA Division I member institutions, increased resources available to student-athletes, and expanded opportunities for individuals interested in gaining experience and pursuing careers in coaching sports. NCAA bylaws limit the number of paid coaches that each Division I member institution may hire to coach each sport. Those bylaws enhance competitive balance among Division I member institutions. Without limits on the number of paid coaches that each Division I member institution could hire, member institutions with significant resources could hire many more coaches than institutions with more limited resources, depriving less-resourced institutions of the opportunity to provide their student-athletes with coaches who could make the program competitive and participate in on-campus and off-campus recruiting efforts. This would give highly-resourced institutions an unfair competitive advantage. The Volunteer Coach position enabled member institutions to provide additional coaching resources for their student-athletes without undermining the benefits for fair competition created by the bylaws limiting the number of paid coaches that each member institution can hire in each sport." | Ex. 22 at 7-8 |
| 43 | The Report of the NCAA Council Subcommittee To Review 1991 Reform Proposals, dated July 16, 1991, does not identify enhancing equitable competition, increasing resources available to student-athletes, or expanding opportunities for individuals interested in gaining experience and pursuing careers in | Ex. 9 at _0270047 |

9

PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS

| | | | |
|---|---|---|---|
| | | coaching sports as a reason for recommending that the coach in the new "volunteer coach" position be prohibited from "receiv[ing] compensation or remuneration from the institution's athletics department except for a maximum of two complimentary tickets to home athletics contests." | |
| | 44 | SEC Commissioner Greg Sankey sent a letter dated March 1, 2019 to NCAA Division I Council Chair Blake James, in which Mr. Sankey stated that a proposal to "transition the volunteer coach position to a countable coach position and thereby eliminate the volunteer coach position under NCAA legislation" in the sports of baseball and softball "will better support the well-being and development of current student-athletes" and "will also provide increased opportunities for individuals to pursue entry into legitimate and sustainable coaching positions, including notably recent former student-athletes seeking to identify an off-the-field career path." | Ex. 23 at _0132854-55 |
| | 45 | At the 1994 NCAA Convention, the membership adopted a proposal that, as amended, specified that "a restricted-earnings coach in the sport of Division I basketball shall not have been employed previously as a head or assistant basketball coach in Division I and shall complete his or her period of employment as a restricted-earnings coach within [five] calendar years of the date of initial employment in such a position." | Ex. 24 at _0146533 |
| | 46 | The NCAA Division I Bylaws include several "Commitments to the Division I Collegiate Model" that "members of Division I support." One of these is "The Commitment to Fair Competition," which states: "The commitment to fair competition acknowledges that variability will exist among | Ex. 3 at _0000416-17 |

10

PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS

| | | | |
|---|---|---|---|
| | | members, including facilities, geographic locations and resources, and that such variability should not be justification for future legislation." | |
| | 47 | The NCAA recorded nearly $1.4 billion in revenue for its 2024 fiscal year and ran a surplus of nearly $166 million, both of which are NCAA's highest since at least 2005. | Ex. 25, Ex. 7 |

DATED: June 30, 2025

Respectfully submitted,

**GUSTAFSON GLUEK PLLC**

By: */s/ Dennis Stewart*
Dennis Stewart, CA Bar No. 99152
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 595-3299
dstewart@gustafsongluek.com

Daniel E. Gustafson, MN Bar No. 202241
(*pro hac vice*)
Joshua J. Rissman, MN Bar No. 391500
(*pro hac vice*)
Anthony J. Stauber, MN Bar No. 401093
(*pro hac vice*)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
jrissman@gustafsongluek.com
tstauber@gustafsongluek.com

**FAIRMARK PARTNERS, LLP**

By: */s/ Michael Lieberman*
Michael Lieberman, DC Bar No. 1033827
(*pro hac vice*)
Jamie Crooks, CA Bar No. 310447
(*pro hac vice*)
Yinka Onayemi, NY Bar No. 5940614
(*pro hac vice*)
Michael Goldberg, MA Bar No. 709203

11

PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS

(*pro hac vice*)
**FAIRMARK PARTNERS, LLP**
400 7th Street NW, Suite 304
Washington, DC 20004
Telephone: (818) 585-2903
michael@fairmarklaw.com
jamie@fairmarklaw.com
yinka@fairmarklaw.com
mgoldberg@fairmarklaw.com

**KIRBY McINERNEY LLP**

By: */s/ Robert J. Gralewski*
Robert J. Gralewski, Jr., CA Bar No. 196410
Marko Radisavljevic, CA Bar No. 306552
**KIRBY McINERNEY LLP**
600 B Street, Suite 2110
San Diego, California 92101
Telephone: (619) 784-1442
bgralewski@kmllp.com
mradisavljevic@kmllp.com

Darryl J. Horowitt, CA Bar No. 100898
**COLEMAN & HOROWITT, LLP**
499 West Shaw, Suite 116
Fresno, CA 93704
Telephone:     (559) 248-4820
dhorowitt@ch-law.com

Leonard B. Simon, CA Bar No. 58310
**THE LAW OFFICES OF LEONARD B. SIMON P.C.**
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 818-0644
lens@rgrdlaw.com

*Attorneys for Plaintiffs and the Class*

PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS