# EXHIBIT A

<u>Joint Declaration of Dennis Stewart, Robert Gralewski, and Michael Lieberman
in Support of Plaintiffs' Motion for Preliminary Approval</u>

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

SHANNON RAY, KHALA TAYLOR, PETER
ROBINSON, KATHERINE SEBBANE, and
RUDY BARAJAS Individually and on Behalf of
All Those Similarly Situated,

                Plaintiffs,

     v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION, an unincorporated association,

                Defendant.

Case No. 1:23-cv-00425

**JOINT DECLARATION OF DENNIS STEWART, ROBERT GRALEWSKI, AND MICHAEL LIEBERMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL**

Judge: Hon. William B. Shubb
Courtroom: 5
Date: December 22, 2025
Time: 1:30 PM

We, the undersigned, declare as follows:

1.      This joint Declaration is submitted by the appointed co-lead counsel firms for the Plaintiffs and the Class through, respectively, Dennis Stewart on behalf of Gustafson Gluek PLLC, Robert Gralewski, Jr. on behalf of Kirby McInerney LLP, and Michael Lieberman on behalf of Fairmark Partners, LLP. We are the attorneys at our respective firms who have been principally responsible for the litigation of this case from its outset through the present and have personal knowledge of the facts stated in this Declaration and could and would testify competently to the matters stated herein.

2.      Dennis Stewart is an attorney duly licensed to practice before the Courts of the State of California and various federal courts including this Court.

3.      Robert Gralewski is an attorney duly licensed to practice before the Courts of the State of California and various federal courts including this Court.

4.      Michael Lieberman is an attorney duly licensed to practice law before this Court. He is a member of the Bar of the District of Columbia and has been admitted to this Court *pro hac vice*.

5.      We submit this Declaration in support of Plaintiffs' Motion for Preliminary Approval of a proposed settlement of this action on behalf of the Class previously certified by the Court.

6.      Attached as Exhibit 1 to this Declaration is a true and correct copy of the signed Settlement Agreement in this case. Pursuant to the Settlement Agreement, the NCAA will pay, for the benefit of the certified class of NCAA Division I assistant coaches designated as "volunteer coaches," a total of $303 million dollars in three equal payments over 24 months. Attached as Exhibit 2 to this Declaration is a true and correct copy of the Proposed Plan of Allocation.

7.      We believe that the settlement provides outstanding relief to the approximately 7,718 current and former college sports coaches in the certified class (the "Class" or "Class Members").[1]

8.      As set out in further detail in this Declaration, the proposed settlement was reached after arms-length negotiations and ultimately with the assistance of a mediator. The $303 million settlement amount represents over 100% of the Class's single damages as estimated by Dr. Orley Ashenfelter, the expert economist retained by the Plaintiffs to, among other things, estimate damages to the Class.

9.      In considering whether to recommend approval of the Proposed Settlement, which we wholeheartedly do, our perspectives are informed by our collective experience with antitrust and class action cases and our day-to-day involvement in litigating this case from the outset, as well as the experience of members of the counsel team who litigated the very similar Restricted Earnings Coach case, *Law v. NCAA* and its related cases. *See Law v. NCAA*, 134 F.3d 1010 (10th Cir. 1998). We have carefully considered the risks and benefits of the proposed settlement against the alternative risks and potential benefits of continuing to litigate. Before agreeing to this settlement, we also consulted with the Class Representatives, who enthusiastically support it.

10.     After careful consideration, for the reasons more fully set forth in this Declaration and the memorandum of law in support of preliminary approval, the undersigned counsel strongly

---

[1] The Certified Class is defined as "[a]ll persons who, from March 17, 2019, to June 30, 2023, worked for an NCAA Division I sports program other than baseball in the position of 'volunteer coach,' as designated by NCAA Bylaws." ECF No. 128 at 11.

JOINT DECLARATION OF CLASS COUNSEL

believe that the proposed settlement is in the best interests of the Class and easily meets the approval standard of "fair, reasonable and adequate." For that reason, we recommend that the Court preliminarily approve the proposed Settlement, order that notice be given to the Class to afford class members their rights to either opt out or object, and to put in place all other procedures contemplated by Rule 23 of the Federal Rules of Civil Procedure relative to consideration of a proposed class action settlement.

11.    We provide this brief summary of the case that preceded the Proposed Settlement which informs our approval recommendation.

12.    This case has been pending since March 2023. It began with the investigation and then the filing of the Plaintiffs' class action complaint against the NCAA.  The complaint alleged that NCAA bylaws, in particular, Bylaws 11.7.6 and 11.01.6, which prohibited any compensation to an entire category of coaches labeled as "volunteer coaches," constituted an illegal agreement in restraint of trade under Section 1 of the Sherman Act, 15 U.S.C. § 1. This restraint is referred to herein as the "Wage Fix".

13.    The case was prosecuted by Class Representatives Shannon Ray, Khala Taylor, Peter Robinson, Katherine Sebbane, and Rudolph Barajas, who are all former college sports coaches who were designated as "volunteer" coaches under NCAA bylaws, were subject to the alleged Wage Fix, and were paid $0 for their work in that role. These five Class Representatives prosecuted this lawsuit on behalf of a class of all similarly situated coaches in NCAA Division I sports other than baseball; a separate case (*Smart v. NCAA*) was filed on behalf of Division I baseball coaches.

14.    Each of the Class Representatives has significantly aided the prosecution of this litigation. Each Class Representative has consulted with counsel on numerous occasions and whenever called upon about their experience as college coaches, case strategy, and discovery. Each Class Representative also responded to interrogatories from Defendant, searched for documents responsive to Defendant's requests for production, and prepared for and sat for a deposition. Each of the Class Representatives has proven to be an engaged, thoughtful, and committed standard

bearer for the Class. Each of the Class Representatives exhibited significant courage and risked reputational and economic harm in prosecuting this case on behalf of the Class.

15. The NCAA aggressively defended the case. In May 2023, NCAA moved to transfer the case or, alternatively, to dismiss Plaintiffs' claims on the merits. In a Memorandum and Order issued in July 2023, this Court denied both motions, ruling that "transfer of these cases is not appropriate" and that "plaintiffs have alleged facts sufficient to show a violation of § 1 of the Sherman Act." Mem. and Order re: Def.'s Mot. to Transfer and Mot. to Dismiss, ECF 38 at 10, 20. The Court later denied NCAA's motion for reconsideration of this ruling. *See* Order Re: Def.'s Motion for Clarification, ECF 50 at 2. NCAA then filed its Answer, raising seven affirmative defenses. Answer, ECF 47 at 18-19.

16. Class Counsel litigated equally aggressively in discovery to develop facts, legal theories, economic theories, and models for class-wide damages. Class Counsel negotiated discovery protocols and issued discovery to NCAA, including six sets of requests for production, five sets of interrogatories, and two sets of requests for admission. Class Counsel also engaged in numerous meet-and-confers with NCAA's counsel to resolve NCAA's various objections to this discovery, and were largely able to resolve disagreements without court intervention. NCAA ultimately produced over 330,000 pages of documents in response to Plaintiffs' requests, which Class Counsel reviewed, coded, and categorized for use in developing case strategy, in briefing, in discovery, in consideration by their experts, and in preparation for trial. In the course of discovery, Plaintiffs also deposed various persons employed by or otherwise associated with NCAA, NCAA committees, NCAA conferences, and NCAA member schools.

17. In order to gather the data necessary to quantify the impact of the Wage Fix and to construct a rigorous estimate of classwide damages for class certification and trial, it was necessary to gather data that identified the volunteer coaches who worked during the class period and the school, sport, and year(s) worked by those coaches. It was also necessary to gather compensation data on the paid coaches at each school, sport, and year. While NCAA was in possession of certain aggregated data, it asserted that it did not have any coach-specific data about either volunteer or paid coaches in its custody, possession, or control. The NCAA declined to voluntarily assist in the

gathering of that data from its member schools, and Plaintiffs' motion to compel NCAA to do so was denied. At the suggestion of the Magistrate Judge, Plaintiffs attempted to negotiate an agreement to utilize a sample of salary information from fewer than all 390 schools with Division I sports, but NCAA declined to agree to such a method. That strategic decision by NCAA significantly multiplied the data gathering, processing, and analysis Plaintiffs were required to perform.

18.    Thus, over the first few months of 2024, Plaintiffs served nearly 400 third-party subpoenas to NCAA schools nationwide who fielded teams and employed coaches (including volunteer coaches) in the Division I sports covered by the class. This was an enormous undertaking in itself. Class Counsel spent thousands of hours drafting, serving, and enforcing these subpoenas, corresponding with schools about the subpoenas, and performing quality control checks on the documents and data produced in response to the subpoenas. Almost invariably, submissions from individual schools required follow-up to correct omissions, clarify entries, convert formats, and more. This work also included scouring publicly available information and evidence about schools' use of volunteer coaches during the class period, and then conferring with schools to resolve any discrepancies between those public sources and the information provided in response to the subpoenas.

19.    This effort yielded data current as of the issuance of the subpoenas.  Because the evolution of the market after the elimination of the challenged bylaws in 2023 was dynamic, it was necessary to gather another round of the same information for the succeeding year to determine whether and to what extent hiring had increased and pay for the former volunteer position had evolved. In lieu of formally serving nearly 400 additional subpoenas to obtain data about coach compensation for the 2024-25 academic year, Class Counsel re-engaged with all schools that had previously received subpoenas to seek their voluntary production of the requested data for the following year. Several dozen schools declined to produce the data voluntarily, and Class Counsel issued additional subpoenas to those schools. Most schools complied with the request, allowing Class Counsel and the schools to avoid the formal subpoena process, though still requiring Class Counsel to extensively confer with the schools and to conduct quality control and follow-up on

the produced data. Through this time-intensive process, Class Counsel and their economic experts were able to identify the overwhelming majority of class members and obtain salary data to use in the damages methodology, with virtually no assistance from NCAA.

20.     For the relatively small number of class members who could not be identified through subpoena data, Class Counsel and Plaintiffs' experts used other sources of information to identify class members, including data provided in discovery by NCAA and public sources like the websites of NCAA member schools, which often list their teams' coaching staffs. By reviewing these sources—also a time-consuming endeavor—Class Counsel identified a substantial number of additional class members.

21.     Class Counsel also worked very extensively with Dr. Orley Ashenfelter from Princeton University, one of the world's leading labor economists, and his team to ensure the quality and accuracy of the data obtained from Defendant and its member schools, to identify class members, and to develop a model capable of calculating reliable damages estimates for the class. This extensive ground-up data work also involved obtaining and utilizing two additional relevant data sources, the NCAA Membership Financial Reporting System and the Department of Education's Equity in Athletics Data.

22.     Class Counsel also deposed multiple key fact witnesses, including officials from NCAA (Jenn Fraser, Lynda Tealer, Mario Morris), its conferences (Greg Sankey, Matthew Boyer), and its member schools (Jacqueline Blackett, Jeremiah Carter, Christina Wombacher).

23.     Class Counsel collected, reviewed, and produced print and electronic documents, including e-mails and text messages, from the Class Representatives, and also prepared the Class Representatives for their depositions and defended those depositions. Class Counsel also attended the depositions of the two named plaintiffs in the related *Smart v. NCAA* case.

24.     Class certification was intensively litigated. Plaintiffs moved for class certification in November 2024. Their motion was supported by a detailed expert report from Dr. Ashenfelter. ECF 85. In December 2024, Defendant deposed Dr. Ashenfelter and filed an extensive opposition to class certification. It included hundreds of pages of evidence in the form of expert and percipient witness declarations with extensive exhibits, along with a 97-page brief. In conjunction with its

opposition to the motion for class certification, Defendant also filed a separate motion to exclude Dr. Ashenfelter's testimony. ECF 94, 95. Class Counsel deposed Defendant's expert economist, who had submitted a detailed 105-page report opposing class certification. Plaintiffs filed their reply in support of class certification and opposition to Defendants' *Daubert* motion, along with a detailed declaration from Dr. Ashenfelter, in January 2025. ECF 102, 103. Defendant deposed Dr. Ashenfelter for a second time, with Class Counsel preparing Dr. Ashenfelter for and attending that deposition. Plaintiffs successfully opposed Defendant's motions for leave to file a sur-reply and for a continuance of the class certification hearing. ECF 105, 116. Class Counsel then appeared at a March 2025 hearing on the motion for class certification and motion to exclude Dr. Ashenfelter's testimony. ECF 125.

25.     In the interim, prior to the *Smart* motion for class certification being heard on the merits (which was scheduled to occur contemporaneously with the class certification motion in this case), NCAA and the *Smart* plaintiffs engaged in private bilateral negotiations, which did not include the Plaintiffs in this case, and agreed to a class settlement.[2] This allowed the NCAA to narrow its focus to defeating class certification in this case.

26.     The Court granted Plaintiffs' motion for class certification and denied NCAA's motion to exclude Dr. Ashenfelter's testimony. NCAA then petitioned the U.S. Court of Appeals for the Ninth Circuit for permission to appeal the class-certification order, which Plaintiffs successfully opposed.

27.     Following additional discovery, Plaintiffs filed a Motion for Summary Judgment That Defendant Violated the Sherman Act. NCAA opposed that motion and Plaintiffs filed their reply. In the interim, with the discovery period coming to a close, Plaintiffs engaged in multiple actions to prepare the case for trial, including identifying and formally disclosing several former head coaches, "volunteer" coaches, and student-athletes to serve as potential trial witnesses,

---

[2] That settlement has since been approved by the Court. In support of that settlement, the *Smart* Plaintiffs stated that the settlement provided members of the *Smart* class with "over 90%" of their damages as originally calculated by their expert and "approximately 99%" of a later, revised damages estimate. *Smart*, ECF 85 at 8, 10.

JOINT DECLARATION OF CLASS COUNSEL

conducting additional discovery, preparing expert reports on liability (if needed) and damages, and building an order of proof for use at trial.

28.     After the briefing on summary judgment, serious settlement discussions began in earnest for the first time in the case. These discussions were informed by the substantial litigation progress since an initial mediation in summer 2024, which had been unsuccessful. The litigation progress provided the parties with more clarity and certainty about the strength and risks of Plaintiffs' claims and the potential damages in the case. The settlement negotiations were hard-fought and always done at arms-length, with both sides zealously representing the interests of their clients. After near-daily, arms-length negotiations produced substantial progress toward a settlement, the parties agreed to retain a mediator to assist in continuing their negotiations. To give the parties time to mediate, the parties requested and received a continuance from the Court of the September 29, 2025 hearing date for Plaintiffs' motion for summary judgment.

29.     The parties engaged in a full-day mediation on October 10, 2025, with professional mediator Miles N. Ruthberg of Phillips ADR. Before the mediation, Class Counsel spoke to all five Class Representatives to inform them of the mediation and obtain their views. The mediation was preceded by the submission and exchange of extensive confidential statements. During the all-day mediation, the parties reached a settlement in principle and signed a Term Sheet. All five Class Representatives were consulted about the settlement offer that was ultimately accepted, and all five Class Representatives approved. The parties have since formalized the Term Sheet into a Settlement Agreement.

30.     The Settlement Agreement calls for a payment of $303 million by the NCAA to a common settlement fund. If approved, the settlement will fairly compensate class members when taking into consideration the legal issues in this case and the uncertainties and delay of trial and appeal. The settlement fund is non-reversionary.

31.     More detailed information regarding the hours worked, hourly rates, and tasks performed will be provided in the formal motion for an award of attorneys' fees, which will be filed if preliminary approval is granted. In that petition, Plaintiffs intend to request no more than 30% of the common fund for their attorneys' fees. More detailed information to support the amount

of litigation costs, along with information supporting the petition for service awards, will be provided at that time as well. As of now, though, Plaintiffs have expended approximately $3.8 million on costs, most of which stems from expert costs. Plaintiffs will petition for reimbursement of their actual costs, and will also petition for service payments of $25,000 for each of the five Class Representatives for the unfailing and very significant assistance they provided throughout the case on behalf of the Class.

32.    Class Counsel worked on a contingent basis in this case. All counsel fully self-funded their shares of the costs of this case. Class Counsel thus took on considerable risk in litigating this case.

33.    While we are confident that Plaintiffs would have prevailed and strongly believe in the positions asserted, NCAA is a well-funded opposing party represented by highly skilled and experienced counsel, and it had raised several defenses to the claims in this case. NCAA's experts were expected to vigorously challenge numerous issues, including market definition, market power, liability, common impact, and the damages methodologies and results advanced by the Plaintiffs. The defense, through their experts, were sure to argue, as they had at Class, that classwide damages, if any, could not be reliably estimated and/or were vastly overstated.  There was no guarantee of success and certainly no guarantee of obtaining a favorable verdict and judgment at trial equaling the benefits provided by the Settlement. Any win at trial would still have been subject to appeal, which presents another layer of risk and also delay.

34.    For these reasons, Class Counsel has a highly favorable view of the Settlement Agreement and believe it merits the Court's approval. The Settlement creates a settlement fund that is approximately 119% of the of the Class's actual damages from lost wages as estimated by Dr. Ashenfelter and 101% of the Class's actual damages from lost wages and lost health benefits. To our knowledge, this settlement, if approved, would be one of the largest awards ever achieved in an antitrust case on behalf of workers seeking recovery of lost wages.

1    I declare under penalty of perjury under the laws of the United States that the foregoing is

2  true and correct. Executed on November 10, 2025.

3

4                                                    By: */s/ Dennis Stewart*

5                                                    Dennis Stewart
                                                     Gustafson Gluek PLLC
6                                                    600 W. Broadway, Suite 3300
                                                     San Diego, CA 92101
7
8    I declare under penalty of perjury under the laws of the United States that the foregoing is

   true and correct. Executed on November 10, 2025.
9

10                                                   By: */s/ Robert J. Gralewski*

11                                                   Robert J. Gralewski, Jr.
                                                     Kirby McInerney LLP
12                                                   1420 Kettner Blvd., Suite 100
                                                     San Diego, California 92101
13

14   I declare under penalty of perjury under the laws of the United States that the foregoing is

15  true and correct. Executed on November 10, 2025.

16
                                                     By: */s/ Michael Lieberman*
17
                                                     Michael Lieberman
18                                                   Fairmark Partners, LLP
                                                     400 7th Street NW, Suite 304
19                                                   Washington, DC 20004

20

21

22

23

24

25

26

27

28

# Exhibit 1 to Joint Declaration

Settlement Agreement

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON RAY, KHALA TAYLOR, PETER ROBINSON, KATHERINE SEBBANE, and RUDY BARAJAS, Individually and on Behalf of All Those Similarly Situated, | No. 23-cv-00425 WBS CKS<br><br>Hon. William B. Shubb |
| Plaintiffs, | |
| vs. | |
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, an unincorporated association; | |
| Defendant. | |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into as of the Execution Date, by and between National Collegiate Athletic Association ("NCAA"), on one hand, and Class Representatives Shannon Ray, Khala Taylor, Peter Robinson, Katherine Sebbane, and Rudy Barajas (the "Class Representatives" or "Plaintiffs"), individually and on behalf of the Certified Class (collectively, the "Certified Class") on the other hand, which Agreement is subject to court approval in the above-captioned litigation (the "Litigation").[1]  The Plaintiffs and the Defendant are referred to herein as the "Parties."  The Agreement is intended to fully, finally, and forever resolve, discharge, and settle the Litigation and the Releasing Plaintiffs Parties' Claims, subject to the approval of the Court and the terms and conditions set forth in this Agreement.

1.1.    WHEREAS, this Litigation is currently pending before Judge William B. Shubb in the United States District Court for the Eastern District of California (the "Court");

1.2.    WHEREAS, the Settlement has been reached, subject to Final Approval as provided herein, after extensive, arm's-length negotiations between the respective counsel for the Certified Class and Defendant;

1.3.    WHEREAS, the Parties initially participated in mediation before professional mediator Fouad Kurdi, Esq. (Resolutions LLC) that did not result in a settlement;

1.4.    WHEREAS, subsequent to the mediation with Mr. Kurdi, the Class Representatives moved for class certification and the Court granted the motion to certify and denied NCAA's motion to exclude expert testimony;

1.5.    WHEREAS, NCAA's Rule 23(f) petition to the U.S. Court of Appeals for the Ninth Circuit was denied;

1.6.    WHEREAS, Plaintiffs moved for partial summary judgment;

1.7.    WHEREAS, after the Parties completed all briefing on Plaintiffs' summary judgment motion, the Parties engaged in bilateral negotiations and then participated in mediation before professional mediator Miles Ruthberg, Esq. (Phillips ADR Enterprises), which resulted in a settlement;

1.8.    WHEREAS, the Class Representatives and Class Counsel have concluded, after a thorough investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted, the legal and factual defenses thereto, and the applicable law, the burdens, risks, uncertainties, and expense of litigation, as well as the fair, cost-effective, and assured method of resolving the claims, that it would be in the best interests of the Certified Class to enter into this Settlement Agreement to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the Certified Class, and further, that Class Representatives and their Counsel consider the Settlement set forth herein to be fair, reasonable, and adequate and in the best interests of the Certified Class;

---

[1] Unless otherwise indicated, all capitalized terms in this Agreement shall have the meaning ascribed in the Definitions in Paragraphs 2.1 through 2.37.

**1.9.**    WHEREAS, Plaintiffs have pursued this matter through discovery, class certification, dispositive motions, and settlement, and their decision to settle their claims against the NCAA was reasonable and consistent with principles of judicial economy, given the NCAA membership's role in adopting, implementing, and enforcing the Bylaws at issue.

**1.10.**    WHEREAS, Defendant, while continuing to deny any violation, wrongdoing, or liability with respect to any and all claims asserted in the Litigation, either on its part or on the part of any of the Released Defendant Parties, has nevertheless concluded that it will enter into this Settlement Agreement in order, among other things, to avoid the expense, inconvenience, and uncertainty of further litigation;

**1.11.**    WHEREAS, the conduct forming the basis of Plaintiffs' claims in the Litigation involved bylaws that were jointly developed, adopted, implemented, and enforced by the NCAA's Division I membership, the NCAA's Division I membership has been on notice of the Litigation since at least March 2023, and each NCAA Division I member will benefit from the execution of this Agreement as Released Parties;

**NOW, THEREFORE,** the undersigned agree, on behalf of the Certified Class and the Defendant, that subject to the Final Approval of the Court, the Litigation be settled, compromised, and dismissed with prejudice in accordance with the terms of this Settlement Agreement, and without costs against the Certified Class or Defendant (except as provided below), on the following terms and conditions:

## 2.    Definitions

**2.1.**    **Agreement.** "Agreement" shall mean and refer to this document evidencing a mutual settlement and release of disputed claims, and it shall also incorporate those other documents exhibited to, contemplated by, and/or identified in this Agreement including, but not limited to, the Notice.

**2.2.**    **Authorized Claimant** shall mean a Class Member whose claim is accepted by the Claims Administrator for payment from the Net Settlement Fund.

**2.3.**    **Claims Administrator.** "Claims Administrator" means the firm retained by Plaintiffs and Class Counsel, subject to approval of the Court, to provide all notices approved by the Court to Class Members and to administer the Settlement.

**2.4.**    **Class.** "Class" or "Certified Class" shall mean and refer to the Class certified by the Court in its March 10, 2025 Memorandum and Order (ECF No. 128) namely:

All persons who, from March 17, 2019 to June 30, 2023, worked for an NCAA Division I sports program other than baseball in the position of "volunteer coach," as designated by NCAA Bylaws.

**2.5.**    **Class Counsel.** "Class Counsel" shall mean and refer to the court-appointed Plaintiffs' Co-Lead Class Counsel, Gustafson Gluek PLLC, Kirby McInerney, LLP, and Fairmark Partners LLP.

Docusign Envelope ID: 23FC1302-756E-4F2C-B0D8-C2A268A55C96

**2.6.    Class Member.** "Class Member" or "Member of the Class" means a Person who falls within the definition of the Class as set forth above in Paragraph 2.4.

**2.7.    Class Period.** "Class Period" shall mean March 17, 2019, through June 30, 2023.

**2.8.    Court.** "Court" shall mean and refer to the United States District Court for the Eastern District of California.

**2.9.    Defendant.** "Defendant" shall mean and refer to the National Collegiate Athletic Association ("NCAA").

**2.10.    Defendant's Counsel.** "Defendant's Counsel" shall mean and refer to Carolyn Hoecker Luedtke, Justin P. Raphael, Megan McCreadie, and the law firm of Munger Tolles & Olson LLP, 560 Mission Street, 27th Floor, San Francisco, CA 94105.

**2.11.    Effective Date.** "Effective Date" shall mean and refer to the calendar day after the judgment becomes final, as defined *infra*, Paragraph 2.15.

**2.12.    Escrow Account.** "Escrow Account" means an interest-bearing account established by Class Counsel and approved by the Court. The Escrow Account shall be managed by the Escrow Agent, subject to the Court's supervisory authority, for the benefit of Plaintiffs and the Class in accordance with the terms of this Agreement and any order of the Court.

**2.13.    Escrow Agent.** "Escrow Agent" means Huntington Bank, subject to Court approval.

**2.14.    Escrow Agreement.** "Escrow Agreement" means the agreement(s) between Class Counsel and the Escrow Agent setting forth the terms under which the Escrow Agent shall maintain the Escrow Account.

**2.15.    Final.** "Final" means, with respect to any order or Judgment of the Court, that such order or Judgment represents a final and binding determination of all issues within its scope and has not been reversed, vacated, or modified in any way and is no longer subject to appellate review, either because of disposition on appeal and conclusion of the appellate process or because of passage, without action, of time for seeking appellate review. Without limitation, an order or Judgment becomes Final when either: (a) no appeal therefrom has been filed and the time has passed for any notice of appeal to be timely filed therefrom; or (b) an appeal from the Judgment or order has been filed and either: (i) the court of appeals has either affirmed the order or Judgment or dismissed that appeal and the time for any reconsideration or further appellate review has passed; or (ii) a higher court has granted further appellate review and that court has either affirmed the underlying order or Judgment or affirmed the court of appeals' decision affirming the Judgment or dismissing the appeal. For purposes of this paragraph, an "appeal" shall include any motion for reconsideration or petition for a writ of certiorari or other writ that may be filed in connection with approval or

4

disapproval of this Settlement. Any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to: (a) attorneys' fees, costs, or expenses; (b) the Plan of Allocation (as submitted or subsequently modified); or (c) the procedures for determining Class Members' recognized Claims, shall not in any way delay, affect, or preclude the time set forth above for the Judgment to become Final, or otherwise preclude the Judgment from becoming Final.

2.16. **Final Approval.** Notwithstanding Paragraph 2.15, "Final Approval" shall mean the entry by the Court of the Order Granting Final Approval of the Settlement.

2.17. **Final Fairness Hearing.** The "Final Fairness Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement where, among other things, the Court, in its discretion, will provide an opportunity for any Class Member who wishes to object to the fairness, reasonableness, or adequacy of the Settlement an opportunity to be heard, provided that the Class Member complies with the requirements for objecting to the Settlement as established by the Court. The date of the Final Fairness Hearing shall be set by the Court and communicated to the Class in a Court-approved Settlement Notice.

2.18. **Judgment.** "Judgment" means the Judgment and Order of Dismissal with Prejudice to be rendered by the Court, substantially in the form attached hereto as Exhibit 2, as well as any form of final judgment that may be entered by the Court in a form other than the form attached hereto as Exhibit 2.

2.19. **Litigation.** "Litigation" shall mean *Ray, et al., v. Nat'l Collegiate Athletic Ass'n,* (originally filed as *Colon, et al., v. Nat'l Collegiate Athletic Ass'n*), Case No. 23-cv-00425 in the U.S. District Court for the Eastern District of California.

2.20. **Net Settlement Fund.** "Net Settlement Fund" means the Settlement Fund less: (a) any Court-awarded attorneys' fees, expenses, and interest thereon; (b) Notice and Administration Expenses; (c) Escrow Agent costs; (d) Taxes and Tax Expenses; and (e) other Court-approved deductions.

2.21. **Notice Plan.** As set forth in Paragraph 6.1, at the time of Preliminary Approval, Class Counsel shall submit to the Court for approval a "Notice Plan" for purposes of advising Class Members, among other things, of the "Plan of Allocation," their right to object to the Settlement Agreement, any right to exclude themselves from the Class, the procedure for submitting any such request for exclusion, the time, date, and location of the Fairness Hearing, and their right to appear at the Fairness Hearing. A proposed Preliminary Approval Order, which includes approval of the Notice Plan, is attached as Exhibit 1.

2.22. **Notice and Administration Expenses.** "Notice and Administration Expenses" means notice and administration expenses, including reasonable costs and expenses actually incurred with providing notice of the Settlement to the Class by mail, email, publication, and other means, locating potential Class Members, assisting with the

5

submission of Claims, processing Proofs of Claim, administering the Settlement, and paying taxes and escrow fees and costs, if any.

**2.23.** **Order Granting Final Approval.** Notwithstanding Paragraph 2.15, "Order Granting Final Approval" shall mean and refer to the order entered by the Court finally approving the Agreement.

**2.24.** **Order Granting Preliminary Approval.** "Order Granting Preliminary Approval" shall mean and refer to the order entered by the Court conditionally approving the terms and conditions of this Agreement, including among other things, the manner and timing of providing Notice, the time period for opting out and filing objections, and the date of the Final Fairness Hearing. A proposed Preliminary Approval Order is attached as Exhibit 1.

**2.25.** **Parties.** "Parties" shall mean and refer to Plaintiffs and Defendant, as defined herein. To the extent that the Defendant or Plaintiffs discharge any of their obligations under this Agreement through agents, the actions of those agents shall be considered the actions of the Parties.

**2.26.** **Plaintiffs.** "Plaintiffs" shall mean the Plaintiffs Shannon Ray, Khala Taylor, Peter Robinson, Katherine Sebbane, and Rudy Barajas, individually and on behalf of the Certified Class, and anyone acting on their behalf, including in a representative capacity.

**2.27.** **Plaintiffs' Counsel.** "Plaintiffs' Counsel" shall mean all counsel who have appeared in the Litigation on behalf of the Plaintiffs and the Class and have not withdrawn their appearances, including Gustafson Gluek PLLC, Kirby McInerney LLP, Fairmark Partners LLP, The Law Offices of Leonard B. Simon, and Coleman & Horowitt LLP.

**2.28.** **Plan of Allocation.** "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Class Members. Any Plan of Allocation is not part of the Agreement and neither Defendants nor the Released Defendant Parties shall have any responsibility or liability with respect thereto. Any order of the Court modifying or rejecting the Plan of Allocation will not affect the finality or binding nature of the Settlement.

**2.29.** **Preliminary Approval.** "Preliminary Approval" shall mean and refer to the entry by the Court of the Order Granting Preliminary Approval of the Settlement.

**2.30.** **Released Claims.** "Released Claims" shall mean any and all claims of the Releasing Plaintiff Parties or Released Defendant Parties that were asserted or could have been asserted against Released Defendant Parties or Releasing Plaintiff Parties for conduct during the Class Period arising out of the facts alleged in the Litigation, including for avoidance of doubt, any claim for unpaid wages, benefits, or bonuses, or any claim for damages for lost opportunities, interference with contract, or restraint of trade, or any other claim, known or unknown, as well as any claims involving the institution,

prosecution, and the defense of the Litigation. Released Claims include any claims that were asserted or could have been asserted against Released Defendant Parties or Releasing Plaintiff Parties for conduct during the Class Period for compensation, benefits, penalties or any other recovery on the theory that Plaintiffs or Class Members who do not opt out of the Settlement were employees of, or contractors for, any Released Defendant Parties, and thus include claims under state and federal minimum wage laws, the federal Fair Labor Standards Act, state and local wage and hour statutes and laws, including any claims under the California Labor Code and California Labor Code section 2698 et seq. specifically as well as California Business & Professions Code section 17200 and equivalent statutes from other states that could have been asserted based on the facts alleged in the Litigation.

2.31. **Released Defendant Parties.** "Released Defendant Party" or "Released Defendant Parties" or "Defendants' Released Persons" shall mean Defendant and its past or present officers, directors, trustees, employees, insurers, agents, committee members, member conferences, and member schools with any Division I sports program that designated a Class Member as a "volunteer coach" under the NCAA Bylaws during the Class Period in any Division I sport other than, or in addition to, Division I Baseball.

2.32. **Releasing Plaintiff Parties.** "Releasing Plaintiff Party" or "Releasing Plaintiff Parties" means Plaintiffs, all other Class Members who do not file valid requests for exclusion, Plaintiffs' Counsel, and their respective current and former officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, employees, and attorneys, in their capacities as such.

2.33. **Released Parties.** "Released Parties" shall mean Released Defendant Parties and Releasing Plaintiff Parties.

2.34. **Settlement.** "Settlement" shall mean the settlement of the Litigation in accordance with the terms and provisions of this Agreement.

2.35. **Settlement Amount.** "Settlement Amount" means Three Hundred and Three Million U.S. Dollars (U.S. $303,000,000.00) to be paid by wire transfer(s) or check(s) to the Escrow Agent pursuant to Paragraph 4.1 of this Agreement.

2.36. **Settlement Fund.** "Settlement Fund" means the Settlement Amount plus all interest and accretions thereto.

2.37. **Tax or Taxes.** "Tax" or "Taxes" mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority, including, but not limited to, any local, state, and federal taxes.

# 3. REPRESENTATIONS AND WARRANTIES

3.1.   Plaintiffs and Defendant represent that they have all requisite power and authority to execute, themselves or respectively by Plaintiffs' Counsel or Defendant's Counsel, deliver and perform this Agreement and to consummate the transactions contemplated herein, that the execution, delivery and performance of this Agreement have been duly authorized by all necessary action, and that this Agreement has been duly and validly executed as aforesaid and delivered by Plaintiffs and Defendant and constitutes their legal, valid, and binding obligation.

## 4.   CONSIDERATION

4.1.   Under the terms of this Agreement, Defendant agrees to provide the following relief to the Class:

### 4.1.1.   Settlement Fund

4.1.1.1.    To fully and finally resolve this Litigation, Defendant will pay the gross sum of $303 million U.S. Dollars. This Settlement Amount shall be paid by Defendant into a court-approved, interest-bearing Qualified Settlement Fund in three (3) equal payments, as follows: $101 million dollars within 30 days from the Order Granting Final Approval ("date of initial deposit"); $101 million dollars one calendar year from the date of initial deposit; and $101 million dollars two calendar years from the date of initial deposit.  This amount is non-reversionary, meaning none of the Settlement Fund shall revert to Defendant if an Order Granting Final Approval is entered by the Court in the Litigation.

4.1.1.2.    All Plaintiffs' attorneys' fees, litigation or court costs, settlement administration costs, taxes, Escrow agent costs, service awards, and individual damages payments shall be made from the Settlement Fund as approved by the Court.  No additional payment or amount of any kind shall be due or owed by Defendant or the Released Parties as part of this Settlement or the resolution of this Litigation.

### 4.1.2.   Attorneys' Fees and Expenses

4.1.2.1.    Class Counsel may submit an application or applications (the "Fee and Expense Application") for an award from the Settlement Fund for: (a) attorneys' fees; (b) expenses or charges in connection with prosecuting the Litigation; and (c) any interest earned on such attorneys' fees and expenses/charges at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court.  Any such fees and expenses awarded shall be paid from the Settlement Fund. Any application for fees and expenses also will include a request for Service Awards on behalf of Plaintiffs.  Class Counsel reserves the right to make additional applications for fees and expenses incurred.

**4.1.2.2.**    The procedure for and the allowance or disallowance by the Court of any applications by any Plaintiffs' Counsel for attorneys' fees and expenses to be paid out of the Settlement Fund is not part of the Settlement set forth in this Agreement, and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Agreement, and shall have no effect on the terms of the Agreement or on the validity or enforceability of this Settlement.  The approval of the Settlement, and its becoming Final, shall not be contingent on the award of attorneys' fees and expenses, any award to Plaintiffs, Class Counsel, or Plaintiffs' Counsel, nor any appeals from such awards.  Any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the Judgment approving this Agreement and the Settlement of the Litigation set forth therein, or any other orders entered pursuant to this Agreement.

**4.1.2.3.**    Any fees and/or expenses awarded by the Court shall be paid solely from the Settlement Fund. With the sole exception of Defendants' obligation to cause the Settlement Amount to be paid into the Escrow Account as provided for in Paragraph 4.1.1.1, the Released Defendant Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment of attorneys' fees and/or expenses (including Taxes) to Plaintiffs' Counsel, including their law firms, partners, and/or shareholders, or any other counsel or Person who receives payment from the Settlement Fund.

**4.1.2.4.**    Any expenses, as awarded by the Court, shall be paid to Plaintiffs' Counsel from the Settlement Fund, as ordered, immediately after the Court enters the Judgment and an order awarding such expenses, notwithstanding the existence of any timely filed objections thereto or to the Settlement, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof.

**4.1.2.5.**    In the event that the Effective Date does not occur, or the Judgment or the order making the fee and expense award is reversed or modified, or this Agreement is canceled or terminated for any other reason, and such reversal, modification, cancellation, or termination becomes Final and not subject to review, and in the event that the expense award has been paid to any extent, then Class Counsel, including its partners and/or shareholders, and such other Plaintiffs' Counsel, including their law firms, partners, and/or shareholders, and Plaintiffs who have received any portion of the expense award shall, within ten (10) business days from receiving notice from Defendant's Counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund all such expenses previously paid to them from the Settlement Fund plus interest thereon in an amount consistent with such reversal, modification, cancellation, or termination. Any refunds required pursuant to this Paragraph shall be the several obligation of Plaintiffs' Counsel, including their law firms, partners, and/or shareholders, and Plaintiffs if they received expenses to make appropriate refunds or repayments to

the Settlement Fund. Each such Plaintiffs' Counsel or Plaintiff receiving expenses, as a condition of receiving such expenses, on behalf of themselves and each of their partners and/or shareholders, agrees that: (a) such Person and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this Paragraph; and (b) are severally liable for the full amount of all expenses and costs paid from the Settlement Fund.

**4.1.2.6.**     The Released Defendant Parties shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Plaintiffs' Counsel and/or any other Person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Litigation.

**4.1.2.7.**     The Released Defendant Parties shall have no responsibility for, and no liability whatsoever with respect to, any attorneys' fees, costs, or expenses (including Taxes) incurred by or on behalf of any Class Member, whether or not paid from the Escrow Account.

**4.1.2.8.**     This is not a claims-made settlement. As of the Effective Date, the Released Defendant Parties, and/or any other Person funding the Settlement on their behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason, and shall not have liability should Claims made exceed the amount available in the Settlement Fund for payment of such Claims. The Released Defendant Parties shall not be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for the payment of Claims, Taxes, legal fees, or any other expenses payable from the Settlement Fund

**4.1.3.   Escrow Agent.**

**4.1.3.1.**     The Settlement Fund shall be used to pay: (a) any Taxes; (b) any Notice and Administration Expenses; (c) any Escrow Agent costs; (d) any litigation expenses awarded by the Court; (e) any attorneys' fees awarded by the Court; and (f) any Service Awards awarded by the Court. The balance remaining in the Settlement Fund, that is, the Net Settlement Fund, shall be distributed to Authorized Claimants as approved by the Court. Except as provided herein or pursuant to orders of the Court, the Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date. All funds held by the Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Agreement as ordered by the Court.

**4.1.3.2.**     The Escrow Agent shall invest the Settlement Amount deposited pursuant to Paragraph 4.1.1.1 hereof in United States Agency or Treasury Securities or other instruments backed by the full faith and credit of the United States Government or an agency thereof, or fully insured by the United States Government or an agency thereof, or in money funds holding only instruments

backed by the full faith and credit of the United States Government or an agency thereof, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.

**4.1.3.3.**    All costs and risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund, and the Parties shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Parties and their counsel harmless for the actions of the Escrow Agent.

**4.1.3.4.**    The Escrow Agent shall not disburse the Settlement Fund except as provided in this Agreement or as ordered by the Court.

**4.1.3.5.**    Notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Class Counsel may pay, without further approval from Defendants and/or order of the Court, all reasonable costs and expenses actually incurred in connection with providing notice of the Settlement by mail, publication, and other means, locating potential Class Members, assisting with the submission of Claims, processing Proofs of Claim, administering the Settlement, and paying escrow taxes, fees, and costs, if any ("Notice and Administration Expenses").

**4.1.3.6.**    It shall be Class Counsel's responsibility to arrange for the dissemination of Notice to potential Class Members in accordance with this Agreement and as ordered by the Court. The cost of Notice and Administration Expenses shall be paid from the Settlement Fund and the Released Defendant Parties shall have no responsibility for or liability whatsoever with respect to the Notice and Administration Expenses, nor shall they have any responsibility or liability whatsoever for any claims with respect thereto.

**4.1.4.    Tax Treatment of Settlement Fund.** The Settlement Fund shall be treated as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. The Escrow Agent shall timely make such elections as necessary or advisable  to carry out the provisions of this Paragraph 4.1.3, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1), back to the earliest permitted date. Such elections shall be made in compliance with  the procedures and requirements contained in such regulations. It shall be the sole responsibility of the Escrow Agent to timely and properly prepare and deliver any necessary documentation or returns under applicable regulations.

## 5.  ADMINISTRATION

**5.1.**    Notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Class Counsel may pay up to $500,000 from the Settlement Fund, without further

approval from Defendant or further order of the Court, for all Escrow Agent costs and Notice and Administration Costs actually incurred and paid or payable. Such Notice and Administration costs and expenses shall include, without limitation, the actual costs of printing and mailing the Notice of Pendency of the Litigation, and the Notice Plan approved by the Court in connection with this Settlement, including the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice, administering the Settlement (including processing the submitted Claims), and the fees, if any, of the Escrow Agent. In the event that the Settlement is terminated pursuant to the terms of this Agreement, all such Notice and Administration Costs paid or incurred, including any related fees, shall not be returned or repaid to Defendant or any other person or entity who or that paid any portion of the Settlement Amount.

## 6. APPROVAL AND NOTICE

**6.1. Preliminary Approval.** Pursuant to the Court's Order (ECF No. 157), on November 10, 2025, Plaintiffs shall submit to the Court a motion seeking (a) preliminary approval of the Settlement; (b) approval of the Notice Plan; and (c) a date for the Final Fairness Hearing.

**6.1.1.** The Proposed Preliminary Approval Order shall provide a schedule of events to occur in advance of the Final Fairness Hearing, including but not limited to deadlines for Class Counsel to file and serve papers in support of the proposed Settlement, the proposed Plan of Allocation, and Class Counsel's motion for an award of attorneys' fees and litigation expenses, including any request for Plaintiffs' service awards.

**6.2. Notice Plan.** The Claims Administrator previously provided notice to the Class that the Court had certified the Class in its March 10, 2025 Order. Since that time, the Claims Administrator has been updating contact information for Class Members as that information becomes available. Plaintiffs will work with the Claims Administrator to prepare a list of Class Members in advance of the filing of the motion for preliminary approval.

**6.2.1.** In the event that the Court enters the Order Granting Preliminary Approval and approves the Notice Plan, Class Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Preliminary Approval Order, provide Class Members with notice of the Settlement Agreement and the date of the Fairness Hearing. The Class Notice shall also explain the general terms of the Settlement Agreement, the general terms of the proposed Plan of Allocation, the general terms of the Fee and Expense Application, and a description of Class Members' rights to object to the Settlement, request exclusion from the Settlement Class (if allowed) pursuant to the schedule and terms provided in the Preliminary Approval Order, and appear at the Fairness Hearing. Plaintiffs' counsel will provide Defendant with a draft of the Class

Notice with reasonable time for comment prior to submission to the Court for approval.

**6.2.2.** Plaintiffs, through the Claims Administrator, shall have the responsibility of serving the notice of the Settlement that is required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b), and shall do so in a timely manner. The cost of the CAFA Notice will be treated as an expense of the Settlement Fund.

**6.2.3.** The fees, costs and expenses associated with providing notice of the Settlement to the Settlement Class shall be paid from the Settlement Fund and shall not be refundable to Settling Defendants.

**6.2.4.** Neither the Parties nor their respective counsel will seek, solicit, or otherwise encourage directly or indirectly any Class Member to exclude themselves from the Settlement, to object to the Settlement, or to appeal from the Order Granting Final Approval.

**6.3. Termination.** If a right to opt out of the Class is permitted in connection with the Settlement, Defendant may terminate this Agreement prior to Final Approval if, based upon application of the Parties' agreed-upon method for calculating gross possible damages, either (a) more than ███ of Class Members opt out of the Class or (b) gross possible damages for timely opt-out Class Members are more than ███ of the Settlement Fund.

**6.3.1.** Provided that Plaintiffs or the Claims Administrator notify Defendants of any opt outs from the Class in connection with the Settlement which may be allowed within one week of receiving notice that any Class Member has opted out, Defendant's right of termination is waived unless Defendant executes this termination right by notice in writing to the Plaintiffs served within ten (10) days of the date on which Defendant or its counsel are notified in writing by the Claims Administrator of facts sufficient to show that the termination conditions have been met, or the Parties mutually agree to extend this time.

**6.3.2.** Upon Defendant's timely exercise of its right of termination, the Parties shall work in good faith to negotiate a new settlement that takes into account the opt-out rate. If the Parties are unable to reach a new settlement, then the Parties will agree to mediate before Miles Ruthberg, Esq. (Phillips ADR Enterprises).

**6.3.3.** The Parties agree that if there is a termination pursuant to this provision, then the fact and amount of the settlement and the terms of this Agreement shall not be used or admitted into evidence in the Litigation absent a court order requiring disclosure.

**6.4. Entry of Order of Final Approval.** At the Final Fairness Hearing, the Parties will request that the Court: (a) enter an Order Granting Final Approval in accordance with this Agreement; (b) approve the Agreement as final, fair, reasonable, adequate, and

binding on all Class Members who have not opted out; (c) enter a Judgment; and (d) permanently enjoin any Class Member who has not opted out from bringing any Released Claims in any court. In addition, prior to the Final Fairness Hearing, Class Counsel may petition the Court for an award of attorneys' fees, plus costs and expenses to be paid out of the Settlement Fund. Class Counsel may also petition the Court for the Class Representatives (Shannon Ray, Khala Taylor, Peter Robinson, Katherine Sebbane, and Rudy Barajas) to each receive a court-approved service award to be paid out of the Settlement Fund.

6.5.  **Effect of Failure of Approval.** In the event that the Court fails to enter an Order Granting Final Approval in accordance with the terms of this Agreement or if the Order Granting Final Approval is reversed by an appellate court, the Parties shall proceed as follows:

6.5.1.  If the Court declines to enter the Order Granting Final Approval as provided for in this Agreement, or if the Order Granting Final Approval is reversed by an appellate court, the Parties will work together, diligently and in good faith, to remedy any issue(s) leading to such denial or reversal, or if they are unable to remedy those issues, to consider seeking appellate review of the order denying the motion or Court approval of a renegotiated settlement without any change to the Settlement Fund. Litigation will resume unless within thirty (30) calendar days of the denial by the Court to enter the Order Granting Final Approval or of the appellate court ruling, the Parties mutually agree in writing to do one of the following: (a) seek reconsideration or appellate review of the decision denying entry of the Order Granting Final Approval or of the appellate review reversing the Order Granting Final Approval; (b) attempt to renegotiate the Settlement and seek Court approval of the renegotiated settlement; or (c) if unable to reach a new settlement, the Parties agree to mediate before Miles Ruthberg, Esq. (Phillips ADR Enterprises).

6.5.2.  In the event the Litigation resumes or the Parties seek reconsideration and/or appellate review of the decision denying entry of the Order Granting Final Approval or of the appellate decision reversing the Order Granting Final Approval, and such reconsideration and/or appellate review is denied, the Claims Administrator shall, within seven (7) calendar days of receiving written notice of the resumption of the Litigation or the denial of reconsideration or appellate review, repay to Defendant the funds remaining in the Escrow Account less those expenses incurred pursuant to Paragraph 5.1 and this Agreement shall thereupon terminate.

6.5.3.  If, for any reason, the Settlement is not approved by the Court or does not become subject to Final Approval, then the Litigation for all purposes will revert to its status as of October 10, 2025. Plaintiffs will thereafter be entitled to contact the Court to schedule an argument on Plaintiffs' motion for partial summary judgment.

**6.5.4.** The Parties agree that, if the Settlement is not approved, then the fact and amount of the settlement and the terms of this Agreement shall not be used or admitted into evidence in the Litigation or any subsequent litigation absent a court order requiring disclosure.

**6.5.5.** It shall not be deemed a failure to enter the Order Granting Final Approval for the Court to deny, all or in part, the attorneys' fees and cost award requested by Class Counsel.  In such case, this Agreement shall be deemed valid and enforceable, notwithstanding the Court's order awarding less than the requested amount of attorneys' fees and costs.  However, Class Counsel shall retain all rights of appellate review to such an order without affecting the finality of any award to the Class or Defendant's obligations under this Agreement.

## 7. DISTRIBUTIONS

**7.1. Notice and Administration.** All costs of notice and administration of the Settlement shall be paid from the Settlement Fund subject to and in accordance with the provisions of Paragraph 4.1.1.2.  The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs incurred in the administration of the Settlement.

**7.2. Attorneys' Fees and Costs.** Any award of attorneys' fees, expenses, or costs under the Order Granting Final Approval or such other order of the Court, shall be paid from the Settlement Fund by the Escrow Agent to Class Counsel.

**7.3. Service Awards.** Any service awards granted by the Court in the Order Granting Final Approval or such other order of the Court, shall be paid from the Settlement Fund by the Escrow Agent as part of the first round of Class Member payments.

**7.4. Class Member Payments.** The deduction of the amounts in Paragraphs 7.1, 7.2, and 7.3 from the Settlement Fund, plus the deduction of any taxes and Escrow Agent costs, will result in a Net Settlement Amount that will be distributed to the Class in three payments as approved by the Court.

**7.4.1.** No person shall have any claim against Defendant, Plaintiffs, Class Members, Class Counsel, or Defendant's Counsel based on distributions or payments made in accordance with this Agreement.

**7.4.2.** The Claims Administrator shall distribute the Net Settlement Fund to Authorized Claimants  according to the Court-approved Plan of Allocation.  If any portion of the Net Settlement Fund remains after six (6) months from the date of the final distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise), or reasonably soon thereafter, the Claims Administrator shall, if logistically feasible and economically justifiable, reallocate such balances among Authorized Claimants in an equitable fashion.  These redistributions shall be repeated until the remaining balance in the Net Settlement Fund is *de minimis*

and such remaining balance is not cost effective or efficient to redistribute to the Class, then such remaining balance of funds, after payment of any further costs of Class Notice and administration and Taxes and Tax Expenses and other costs and expenses related to the Action, shall be donated to an appropriate §501(c)(3) non-profit charitable organization identified by Class Counsel after notice to Defendant and approved by the Court.

## 8. RELEASE AND COVENANT NOT TO SUE

**8.1.** Upon entry of the Judgment, the Releasing Plaintiff Parties (i) release the Released Defendant Parties from all Released Claims, and (ii) covenant not to sue the Released Defendant Parties based on any Released Claims.

**8.2.** Upon entry of the Judgment, the Defendant and the Released Defendant Parties (i) release the Plaintiffs, Plaintiffs' Counsel and all Class Members who have not opted out from all Released Claims, and (ii) covenant not to sue the Plaintiffs, Plaintiffs' Counsel, and any Class Member who has not opted out based on any Released Claims.

**8.3.** No Party will retaliate or encourage anyone else to retaliate against another Party or Class Members for bringing, supporting, or defending this Action or participating in this Settlement.

**8.4.** In accordance with the foregoing release and covenant not to sue, all pending litigation brought by or on behalf of a Class Member who has not opted out of the Settlement involving Released Claims, including the Litigation, shall be dismissed with prejudice within 30 calendar days of the Effective Date, with each party bearing their own fees, costs, and expenses, unless otherwise ordered by the Court or provided for herein.

**8.5.** **Waiver of Statutory Provisions**. On the Effective Date, Plaintiffs and all Class Members who have not opted out of the Settlement shall be deemed to have, and by operation of this Agreement shall have, with respect to the subject matter of the Litigation and limited to the scope of the Released Claims, expressly waived the benefits of any statutory provisions or common law rule that provides, in substance or effect, that a general release does not extend to claims which the Class Member does not know or suspect to exist in its favor at the time of executing the release, which if known by it, would have materially affected its settlement with any other party. In particular, but without limitation, Plaintiffs and all Class Members who have not opted out of the Settlement waive the provisions of California Civil Code § 1542 (or any like or similar statute or common law doctrine in California or any other state), and do so understanding the significance of that waiver. Section 1542 provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR

OR RELEASED PARTY.

Plaintiffs and all Class Members who have not opted out of the Settlement may hereafter discover facts in addition to or different from those which he or she or they now know or believe to be true with respect to the subject matter of the Litigation and limited to the scope of the Released Claims, but the Plaintiffs and all Class Members who have not opted out of the Settlement, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which then exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future. The Parties and all Class Members agree that this release of unknown claims extends only to claims that meet the definition of Released Claims and does not extend to claims that do not meet that definition, such as, for example, claims for workplace harassment or physical injury.

## 9.  MISCELLANEOUS PROVISIONS

9.1.  **No Admission of Liability.** Defendant expressly denies any liability or wrongdoing, and nothing in this Agreement or the subsequent Judgment constitutes an admission by Defendant or finding of liability by the Court regarding any claim or defense.

9.2.  **Conditional Pending Final Approval.** This Agreement is made for the sole purpose of attempting to consummate settlement of the Litigation on a class basis. This Stipulation and the settlement it evidences is made in compromise of disputed claims. Because this Stipulation would settle the Litigation as a class action, this settlement must receive preliminary and final approval from the Court. Accordingly, the Parties enter into this Agreement and associated settlement on a conditional basis that the Court enter a Final Approval Order of the settlement.

9.3.  **No Waiver of Right to Challenge.** Defendant denies all of the allegations and claims, including as to liability, damages, fees, and all other forms of relief asserted in the Litigation. Defendant has agreed to resolve the Litigation via this Agreement, but to the extent this Agreement is disapproved by the Court, deemed void, or does not otherwise take effect, the Parties and Class Members do not waive, but rather expressly reserve, all rights to challenge or prosecute all such claims and allegations in the Litigation upon all procedural and factual grounds, including without limitation the ability to proceed with or challenge class and/or representative action treatment on any grounds or assert any and all defenses or privileges. The Parties, all Class Members, and their counsel of record agree that the Parties and all Class Members retain and reserve these rights, and agree not to take positions to the contrary; specifically, the Parties, all Class Members, and their counsel of record agree not to argue or present any argument, and hereby waive any argument, that this Agreement estops or otherwise precludes a Party from proceeding with or contesting class and/or representative treatment on any grounds if this Litigation were to proceed.

**9.4.** **Continuing Jurisdiction.** The United States District Court for the Eastern District of California shall have and retain jurisdiction over all matters related to the interpretation and implementation of this Agreement, as well as any and all matters arising out of, or related to, the interpretation or implementation of the Agreement.

**9.5.** **Governing Law.** This Agreement, and all claims, causes of action (whether in contract, tort, or statute) that may be based upon, arise out of, or relate to this Agreement, or the negotiation, execution, or performance of this Agreement (including any claim or cause of action based upon, arising out of, or related to any representation or warranty made in or in connection with this Agreements or as an inducement to enter into this Agreement) shall be construed in accordance with and governed by the laws of the State of California, including its statutes of limitations, without regard to that State's conflicts of laws principles. The Parties expressly submit to the exclusive jurisdiction of the United States District Court for the Eastern District of California for all purposes related to this Agreement, and agree that any order, process, notice of motion, or other application to or by such court or a judge thereof may be served within or without such court's jurisdiction by overnight delivery or by hand, with copies thereof sent by e-mail, to the address specified in Paragraph 9.19, Notices to Parties.

**9.6.** **Cooperation Between the Parties.** The Parties shall cooperate fully with each other and shall use all reasonable efforts to obtain Court approval of the Settlement and all of its terms. Defendant shall provide all information reasonably available to Defendant and reasonably necessary to assist Plaintiffs in the filing of any brief supporting approval of the Settlement. Defendant will reasonably cooperate with Plaintiffs to try to help identify remaining Class Members that have not yet been identified by Plaintiffs from school document productions and public sources. However, nothing in this Agreement shall require Defendant to obtain or provide information that is not in its possession, custody and control. Plaintiffs, Class Counsel, Defendant, and Defendant's Counsel agree to recommend approval of and to support this Agreement to the Court and to use all reasonable efforts to give force and effect to its terms and conditions.

**9.7.** **Investigation; Advice of Counsel; Authority**

**9.7.1.** Plaintiffs, as well as their counsel signing this Agreement, represent, warrant, and agree that Plaintiffs: (i) have made such investigation of the facts pertaining to this Settlement and this Agreement and of all the matters pertaining thereto as they deem necessary; (ii) have had the opportunity to have counsel of their choosing review this Agreement; (iii) have read this Agreement, understand its contents, and have executed it voluntarily and without duress or undue influence from any person or entity; (iv) have duly and validly authorized the execution and delivery of this Agreement by their counsel; and (v) have full power and authority to enter into and perform all actions or transactions contemplated by this Agreement. Without limiting the generality of the foregoing in any way, Plaintiffs represent and warrant that they (i) are the sole legal owners of, and have full right, title and interest in, the claims asserted in the Lawsuit; (ii) prior to the Execution Date, they have not assigned and will not assign to any third party their right, title,

and interest in any of the Released Claims; and (iii) they have full right, power, and legal authority to release, relinquish, settle, and discharge the Released Claims (including without limitation the claims they asserted in the Lawsuit) on behalf of Plaintiffs.

9.7.2.  Defendant, as well as its counsel signing this Agreement, represent, warrant, and agree that Defendant: (i) has made such investigation of the facts pertaining to this settlement and this Agreement and of all the matters pertaining thereto as it deems necessary; (ii) has had the opportunity to have counsel of its choosing review this Agreement; (iii) has read this Agreement, understands its contents, and has executed it voluntarily and without duress or undue influence from any person or entity; (iv) has duly and validly authorized the execution and delivery of this Agreement by its counsel; and (v) has full power and authority to enter into and perform all actions or transactions contemplated by this Agreement. Without limiting the generality of the foregoing in any way, Defendant represents and warrants that it has the full right, power, and legal authority to release Released Claims.

9.8.  **Entire Agreement.** This Agreement contains the entire agreement and understanding between the Parties concerning the subject matter hereof, and supersedes any prior or contemporaneous discussion or agreements thereon. The Parties acknowledge and agree that: (i) no promises, representations, or agreements have been made in connection with this Agreement other than those set forth herein; and (ii) in deciding to enter this Agreement, they have not relied on any promise, statement, or representation of fact or law except for those that are expressly stated in this Agreement.

9.9.  **Exhibits.** All of the Exhibits to this Agreement are material and integral parts hereof and are fully incorporated herein by this reference. Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Agreement and the terms of any exhibit attached hereto, the terms of the Agreement shall prevail.

9.10.  **Modification of Agreement.** No waiver, modification, or amendment of the terms of this Agreement, made before or after Final Approval, shall be valid or binding unless in writing, signed by Plaintiffs and by duly authorized signatories of Defendant, and then only to the extent set forth in such written waiver, modification, or amendment, and subject to any required Court approval.

9.11.  **Construction of Agreement.** The terms, provisions, and conditions of this Agreement are the result of negotiations in good faith and at arm's length between Plaintiffs and Defendant. Plaintiffs and Defendant have all been represented by legal counsel of their own choosing and have contributed substantially and materially to the preparation of this Agreement. Accordingly, the terms, provisions and conditions of this Agreement shall be interpreted and construed in accordance with their usual and customary meanings, without application of any rule of interpretation or construction providing that ambiguous or conflicting terms, conditions, or provisions shall be interpreted or construed against the Party whose legal counsel prepared the executed version or any

prior drafts of the Agreement. Any captions and headings contained in this Agreement are for convenience of reference only and are not to be considered in construing this Agreement.

**9.12. Binding Effect.** This Agreement shall be binding upon and inure to the benefit of Plaintiffs, the Class, Defendant, and Defendant's members. Defendant agrees to make all payments required by this Agreement notwithstanding the future availability of any sovereign immunity defense and agrees to waive and to not assert any such defense to enforcement of the Order Granting Final Approval of the Settlement and the associated Judgment. The individual signing this Agreement on behalf of Defendant hereby represents and warrants that he/she has the power and authority to enter into this Agreement on behalf of Defendant, on whose behalf he has executed this Agreement, as well as the power and authority to bind Defendant to this Agreement.  Likewise, Plaintiffs and Class Counsel executing this Agreement represent and warrant that they have the authority to enter into this Agreement on behalf of Plaintiffs and the Class, and to bind Plaintiffs and the Class subject to Court approval.

**9.13. Change of Law.** Any change of relevant law, regulation, or rule, whether federal, state, or local, that affects the terms of this Agreement, the claims asserted by the Plaintiffs in this Litigation, or the Judgment entered upon Final Approval, shall not excuse any payment due under this Agreement and the Judgment and Agreement shall be complied with in all respects.

**9.14. Solvency Representation.** Defendant represents, on behalf of itself and not by counsel or any other party, that as of the date that it enters into this Agreement, it is not insolvent (as defined by Section 101(32) of Title 11 of the United States Code, 11 U.S.C. § 101 et seq.), and it has no reason to expect that it will be rendered insolvent prior to making any payment of the Settlement Amount, or by paying or committing to pay the Settlement Amount.

**9.15. Waiver.** Any failure by any of the Parties to insist upon the strict performance by any of the other Parties of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions of this Agreement and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**9.16. When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its execution by Defendant and Plaintiffs or their respective counsel. The Parties may  execute this Agreement in counterparts and execution in one or more counterparts shall  have the same force and effect as if all Parties had signed the same instrument.

**9.17. Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon  the construction or interpretation of any part of this Agreement.

**9.18. Electronic and Counterpart Signatures.** This Agreement may be executed simultaneously in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same instrument. Signatures by electronic means shall be deemed to constitute original signatures. Each person executing the Agreement on behalf of a Party hereby represents and warrants that he or she is duly authorized to do so and that his or her signature to the Agreement binds the Party for which the signature is provided to all the terms of the Agreement.

**9.19. Notices to Parties.**  All notices, requests, demands, or other communications required or contemplated hereunder or relating hereto shall be in writing and forwarded by registered or certified mail, postage prepaid, return receipt requested, and overnight delivery with a copy by e-mail, and addressed as follows:

If to Plaintiffs:

> Daniel E. Gustafson
> Dennis Stewart
> Gustafson Gluek PLLC
> 120 South 6th Street, Suite 2600
> Minneapolis, MN 55402
> dgustafson@gustafsongluek.com
> dstewart@gustafsongluek.com
>
> Robert J. Gralewski, Jr.,
> Kirby McInerney LLP
> 1420 Kettner Blvd., Suite 100
> San Diego, CA 92101
> BGralewski@kmllp.com
>
> Jamie Crooks
> Michael Lieberman
> Fairmark Partners, LLP
> 400 7th Street NW, Suite 304
> Washington, DC 20004
> jamie@fairmarklaw.com
> michael@fairmarklaw.com

If to Defendant:

> Scott Bearby
> Senior Vice President and Chief Legal Officer
> National Collegiate Athletic Association
> Sbearby@ncaa.org
>
> -and-

Carolyn Hoecker Luedtke
Justin P. Raphael
Megan McCreadie
Munger Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA  94105
Carolyn.Luedtke@mto.com
Justin.Raphael@mto.com
Megan.McCreadie@mto.com

**9.20.** This Agreement shall be binding upon, and inure to the benefit of, all successors, heirs, and assigns of the Parties.

**9.21.** Except as otherwise provided herein or otherwise ordered by the Court, each Party shall bear its own costs.

**9.22.** Whether or not the Agreement is approved by the Court and whether or not the Agreement is consummated, or the Effective Date occurs, the Parties and their counsel shall use their best efforts to keep all negotiations, discussions, acts performed, agreements, drafts, documents signed, and proceedings in connection with the Agreement confidential.

**9.23.** All agreements made and orders entered during the course of this Action relating to the confidentiality of information shall survive this Settlement subject to the terms of any such agreements or orders.

**9.24.** No opinion or advice concerning the tax consequences of the proposed Settlement to individual Class Members is being given or will be given by the Parties or their counsel; nor is any representation or warranty in this regard made by virtue of this Agreement. Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the  Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual  Class Member.

**9.25.** The Parties agree that the Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

**9.26.** Unless otherwise provided, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Agreement without further order of the Court.

*– the rest of the page is intentionally blank –*

**IN WITNESS WHEREOF,** the Parties have executed this Agreement and Release as follows:

Dated: 11/10/2025

Signed by: Dennis Stewart
831A06842BE5429...
By: Dennis Stewart
Gustafson Gluek PLLC
On behalf of the Class

Dated: 11/10/2025

Signed by: Jamie Crooks
DD64E6DE7661409...
By: Jamie Crooks
Fairmark Partners, LLP
On behalf of the Class

Dated: 11/10/2025

Signed by: Robert J. Gralewski, Jr.
3A61FEC2A79A449...
By: Robert Gralewski Jr.
Kirby McInerney LLP
On behalf of the Class

Dated: 11/10/2025

Signed by: Shannan Ray
D4EFD84CF8E8440...
By: Shannon Ray

Dated: 11/10/2025

Signed by: Khala Taylor
E4D444F60C9D4C2...
By: Khala Taylor

Dated: 11/10/2025

Signed by: Peter Robinson
2759EE40C8814A6...
By: Peter Robinson

Dated: 11/10/2025

Signed by:
40DD13C4D2FC45E...
By: Katherine Sebbane

Dated: 11/10/2025

DocuSigned by: RUDY BARAJAS
1ABD21E3AEF4400...
By: Rudy Barajas

Dated: 11/10/2025

Signed by: Charles D Baker
638C8E7F6A4A414...
By: Charlie Baker
On behalf of Defendant NCAA

23

# Exhibit 2 to Joint Declaration

Plan of Allocation

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON RAY, KHALA TAYLOR, PETER ROBINSON, KATHERINE SEBBANE, and RUDY BARAJAS Individually and on Behalf of All Those Similarly Situated, | Case No. 1:23-cv-00425 |
| Plaintiffs, | |
| v. | **[PROPOSED] PLAN OF ALLOCATION** |
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, an unincorporated association, | |
| Defendant. | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

1.      Plaintiffs Shannon Ray, Khala Taylor, Peter Robinson, Katherine Sebbane, and Rudy Barajas ("Plaintiffs" or "Class Representatives") respectfully submit this proposed Plan of Allocation relating to the proceeds of the settlement in *Ray v. NCAA*, No. 23-cv-00425 (E.D. Cal.). In March 2025, this Court certified a class of "[a]ll persons who, from March 17, 2019, to June 30, 2023, worked for an NCAA Division I sports program other than baseball in the position of 'volunteer coach,' as designated by NCAA Bylaws," and appointed the Plaintiffs as Class Representatives. See ECF 128 at 26-27.[1]

2.      Plaintiffs, on behalf of themselves and the Class, have agreed to settle their claims against Defendant National Collegiate Athletic Association ("NCAA") for $303,000,000 in cash (the "Settlement Fund"), as described in more detail in Plaintiffs' motion for preliminary approval of the Settlement.  Pursuant to the Settlement Agreement, Defendant will make three separate payments of $101 million into a Qualified Settlement Fund ("First Payment," "Second Payment," and "Third Payment"). The First Payment will be made within 30 days of Final Approval; the Second Payment will be made one calendar year later; the Third Payment will be made one calendar year later. Plaintiffs submit this proposed Plan of Allocation to allocate the $303,000,000 payment, plus any interest earned on the Settlement Fund, and net of any Court awarded attorneys' fees, expenses, service awards to the Class Representatives, settlement administration and notice costs, escrow agent fees, and taxes (the "Net Settlement Fund").

3.      As set forth below, the proposed Plan of Allocation is designed to allocate the Net Settlement Fund in a practical, equitable, and efficient way to all Authorized Claimants.  Class Counsel developed the Plan of Allocation with the assistance of Plaintiffs' expert, Dr. Orley Ashenfelter, and his team at Ashenfelter & Ashmore, LLP, as well as the Claims Administrator A.B. Data, Ltd. ("A.B. Data" or "Claims Administrator").  A.B. Data will implement this Plan of Allocation with the assistance of Dr. Ashenfelter and under the supervision of Class Counsel.

---

[1] Unless otherwise defined herein, all capitalized terms shall have the same meaning as set forth in the Settlement Agreement ("Agreement").  A copy of the Agreement, along with other important documents relating to the Settlement, can be found on the Settlement Website (www.NCAAVolunteerCoachLawsuit.com).

**PROCEDURES REGARDING CLAIM SUBMISSION**

4.      No later than 14 days after the Court issues an order preliminarily approving the Settlement and this Plan of Allocation, A.B. Data will mail or email an individualized Notice Form to each Class Member for whom A.B. Data has a current address or email address. The Notice Form will contain personalized ID numbers for each Class Member and the website address for the Settlement Website (www.NCAAVolunteerCoachLawsuit.com), at which each Class Member can access the Proof of Claim and Release Form ("Claim Form"). When the Class Member enters his or her ID number, the Claim Form will automatically populate with the school, sport, and year(s) during the class period in which each Class Member served as an NCAA Division I assistant coach with the "volunteer" designation, based on data collected during the litigation and provided to the Claims Administrator. The Settlement Website will also contain instructions for any Class Member who wishes to submit a Claim Form by mail, as well as the full name and mailing address for correspondence regarding the distribution of the Settlement Fund.

5.      The Claim Form will ask the Class Member to verify the accuracy of the information contained in the populated Claim Form and will provide instructions for challenging the information set forth in the populated Claim Form regarding the school, sport, and year(s) during the class period in which each Class Member served as an NCAA Division I assistant coach with the "volunteer" designation. If a Class Member agrees that the information displayed is accurate, the Class Member will be asked to electronically sign the Claim Form and provide a preferred method of receiving payment. If a Class Member believes that the information displayed is not accurate, that Class Member may submit his or her own information on the Claim Form and any supporting documentation confirming his or her identity and work history, along with the Class Member's preferred method of receiving payment if his or her claim is accepted.

6.      If a Class Member does not receive a Notice Form by mail or email, the Class Member may likewise submit a Claim Form on the Settlement Website. A Class Member without a personalized ID number will be required to submit his or her own information on the Claim Form regarding the school, sport, and year(s) during the class period in which he or she served as an NCAA Division I assistant coach with the "volunteer" designation, and may be asked to submit

supporting documentation confirming his or her identity and work history. The Class Member will also be asked for his or her preferred method of receiving payment if the claim is accepted.

7.    Each Class Member will be required to execute a Claim Form to receive any distribution from the Net Settlement Fund. Each Class Member wishing to receive proceeds from the Net Settlement Fund must submit a Claim Form, which is signed under penalty of perjury by an authorized person. All Claim Forms submitted by Class Members will be reviewed and processed by A.B. Data, with assistance from Class Counsel and, where necessary and appropriate, Dr. Ashenfelter and his staff.

8.    A Class Member's submission of a valid Claim Form will entitle the Class Member to distributions in all three distributions described below; Class Members will not be required to submit a new Claim Form for each distribution.

9.    All correctly completed, signed, and valid Claim Forms that are submitted after the deadline for submitting Claim Forms will be processed by A.B. Data but marked as "Late Approved Claims."  A.B. Data and Class Counsel may, at their discretion, allow such "Late Approved Claims" to be included in one or more distributions from the Settlement Fund.  If A.B. Data and Class Counsel conclude that, in their judgment, any such Late Approved Claims should ultimately not be accepted, the Claimant will be so notified, and then may seek review by the Court via the appeals process described below.

## PLAN OF ALLOCATION

10.    The objective of the Plan of Allocation is to equitably distribute the Settlement proceeds to those Class Members who suffered economic losses as a proximate result of the alleged wrongdoing. The calculations made pursuant to the Plan of Allocation are not intended to be, nor should they be understood as, estimates of the amounts that Class Members might have recovered after a trial. Nor are they intended to be estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement. Rather, the computations under the Plan of Allocation serve solely as a method for weighing the claims of Authorized Claimants against one another for the purpose of allocating of the Net Settlement Fund.

11.    Based on the formula set forth below, a "Recognized Loss" shall be calculated by the Claims Administrator for each Class Member who submits a Valid Claim.  As set forth above, the NCAA shall make three separate payments of $101 million into a Qualified Settlement Fund. Based on the Claims Administrator's Recognized Loss Calculations, Authorized Claimants shall receive distributions from the Net Settlement Fund pursuant to the general framework set forth below.

12.    Dr. Ashenfelter will calculate a Recognized Loss for each six-month period coached by a Class Member (a "Class Member Half-Year").[2] The Recognized Loss for each Class Member Half-Year will be based on the wages paid to the team's lowest-paid coach during that period who was not designated as a "Volunteer Coach" under NCAA Bylaws (the "Reference Coach").[3] To derive the Recognized Loss for each Class Member Half-Year, Dr. Ashenfelter will apply a "stepdown" factor to the Reference Coach's wages for that period, meaning that the Recognized Loss for each Class Member Half-Year will be based on, but lower than, the wages paid to the Reference Coach. The size of the stepdown is based on a regression analysis that uses post-conspiracy data to calculate the average relationship between the lowest paid coach and the second-lowest paid coach in a program after the Volunteer Coach Rule was repealed.[4] During the claims process, Claimants will be matched to their Class Member Half-Year(s) and allocated the corresponding amount.

13.    Because this methodology results in an aggregate amount less than the settlement pool of $303 million, Dr. Ashenfelter will scale up all Recognized Loss amounts so that the total

---

[2] The use of half-years will allow for a standardized calculation and claim submission process without regard to whether a school provided its data by academic year or calendar year. Dr. Ashenfelter and A.B. Data may, if it becomes apparent that it will be administratively more efficient, use either full years or shorter periods of time.

[3] For a small percentage of Class Member Half-Years for whom reliable data on Reference Coach compensation is not available, Dr. Ashenfelter will use regression analysis to estimate Reference Coach pay based on the sport, conference, and institutional factors like total undergraduate enrollment and the size of the school's endowment.

[4] For Class Member Half-Years in which the Class Member's team did not employ the maximum number of unrestricted coaches, Dr. Ashenfelter applies two stepdowns from the Reference Coach's wages.

aggregate Recognized Loss equals the $303 million settlement pool. If this methodology results in any Class Member Half-Year with a Scaled Recognized Loss below $2,500, Dr. Ashenfelter assigns that Class Member Half-Year $2,500. In no event will any Claimant be finally allocated less than $5,000 ("Guaranteed Minimum Payment").[5] The net effect of the scaling will result in a "Scaled Recognized Loss" for each Claimant.

14.     The Scaled Recognized Loss amount for each Claimant will then be divided into three equal amounts corresponding with the three settlement distributions, subject to adjustments for any Late Approved Claims or other authorized changes that effect the net distribution amounts.

15.     For example, assume a Class Member who coached a Division I softball team for the 2021 calendar year. If the data show that the Reference Coach on that team was paid $65,000 in the 2021 calendar year, the two Class Member Half-Years for that calendar year will have reference wages of $32,500. If the stepdown for softball is 45%, the Recognized Loss associated with those Class Member Half-Years would be $17,550 [$32,500 – ($32,500 x 0.45)], making the Class Member's total Recognized Loss for the year $35,100 [$17,550 + $17,550]. That Recognized Loss will then be scaled into a final Scaled Recognized Loss, which will be distributed to the Class Member in three equal payments.

## DISTRIBUTION OF THE NET SETTLEMENT FUND

**I.     Initial Distribution To Authorized Claimants.**

16.     After NCAA makes the First Payment, the First Net Distribution Amount will be calculated by deducting one-third of any amount ordered by the Court for attorneys' fees, costs, expenses, and service awards. A.B. Data will use the data provided by Dr. Ashenfelter and his staff to determine the portion that each Claimant is entitled to receive from the First Net Distribution Amount. After this process is completed for the First Net Distribution Amount, A.B. Data will prepare a report for the Court's review ("Distribution Report"). Any interest earned on the

---

[5] The Guaranteed Minimum Payment ensures that all Authorized Claimants receive consideration from the Settlement, even if Recognized Loss is less than $5,000. Dr. Ashenfelter estimates that less than 1.3% percent of the Net Settlement Fund will be distributed due to the Guaranteed Minimum Payment.

Settlement Fund that becomes part of the Net Settlement Fund will be distributed *pro rata* to Authorized Claimants, regardless of the date on which they submitted their Settlement Claims.

17.    The Distribution Report will explain the tasks and methodologies employed by A.B. Data in processing the claims and administering the Plan of Allocation. It will also contain (i) a list of purported Class Members who filed Claim Forms that were rejected and the reasons for the rejections, (ii) a list of challenges (if any) to the Claim Forms that were rejected and the reasons for rejecting the challenges, and (iii) the date any such Claimant whose challenge was rejected was informed by A.B. Data of that rejection. The Distribution Report shall contain an accounting of the expenses incurred to date in association with the Net Settlement Fund, including bills from Dr. Ashenfelter and A.B. Data, any taxes that are due and owing, and any other fees or expenses associated with or expected during the settlement administration and allocation process. Those costs are to be paid out of the Settlement Fund with Court approval.

18.    A.B. Data shall issue a check or wire payable to each Claimant who has submitted a complete, timely, and valid Claim Form and who is entitled to a recovery under this Plan of Allocation ("First Distribution").

**II.    Subsequent Distributions To Authorized Claimants.**

19.    Class Members will not be required to submit new Claim Forms to receive subsequent distributions, but rather will automatically be included in subsequent distributions. After NCAA makes the Second Payment, the Second Net Distribution Amount will be calculated by deducting one-third of any amount ordered by the Court for attorneys' fees, costs, expenses, and service awards. A.B. Data will use the data provided by Dr. Ashenfelter and his staff to determine the portion that each Claimant is entitled to receive from the Second Net Distribution Amount. Upon completion of this process, A.B. Data shall issue a check or wire payable to each Claimant who is entitled to a recovery under this Plan of Allocation ("Second Distribution").

20.    After NCAA makes the Third Payment, the Third Net Distribution Amount will be calculated by deducting the remainder of any amount ordered by the Court for attorneys' fees, costs, expenses, and service awards. If the expenses incurred in association with the Net Settlement Fund are less than those approved by the Court, the excess will be included in the Third Net

Distribution Amount. If the expenses incurred in association with the Net Settlement Fund exceed the amounts approved by the Court, Class Counsel may petition the Court to approve those expenses being paid from the Settlement Fund. A.B. Data will use data the provided by Dr. Ashenfelter and his staff to determine the portion that each Claimant is entitled to receive from the Third Net Distribution Amount. Upon completion of this process, A.B. Data shall issue a check or wire payable to each Claimant who is entitled to a recovery under this Plan of Allocation ("Final Distribution").

21.    Subject to further Order of the Court, any monies distributed as part of the First Distribution that remain unclaimed 120 days after the First Distribution shall be distributed on a *pro rata* basis to Claimants as part of the Second Distribution. Likewise, any monies distributed as part of the Second Distribution that remain unclaimed 120 days after the Second Distribution shall be distributed on a *pro rata* basis to Claimants as part of the Final Distribution. Any monies distributed as part of the Third Distribution that remain unclaimed 120 days after the Third Distribution shall be distributed to Claimants in an additional *pro rata* distribution if economically feasible, or to a *cy pres* recipient approved by the Court.

22.    Pursuant to Paragraph 7.4.2 of the Agreement:

The Claims Administrator shall distribute the Net Settlement Fund to Authorized Claimants  according to the Court-approved Plan of Allocation.  If any portion of the Net Settlement Fund remains after six (6) months from the date of the final distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise), or reasonably soon thereafter, the Claims Administrator shall, if logistically feasible and economically justifiable, reallocate such balances among Authorized Claimants in an equitable fashion.  These redistributions shall be repeated until the remaining balance in the Net Settlement Fund is de minimis and such remaining balance is not cost effective or efficient to redistribute to the Class, then such remaining balance of funds, after payment of any further costs of Class Notice and administration and Taxes and Tax Expenses and other costs and expenses related to the Action, shall be donated to an appropriate §501(c)(3) non-profit charitable organization identified by Class Counsel after notice to Defendant and approved by the Court.

**ADDITIONAL PROVISIONS**

23.    Class Members are urged to visit the Settlement Website to keep apprised of other pertinent information relating to this Plan of Allocation. All determinations and interpretations of this Plan shall be made by the Claims Administrator.

**I.    Audits.**

24.    By submitting a Claim Form, a Class Member agrees to provide such information as the Claims Administrator or the Court may require. Further, by submitting a Claim Form, a Class Member is swearing to the truth of the statements contained in it and, if applicable, the genuineness of the data and documents attached thereto, subject to penalty of perjury under the laws of the United States of America. The making of false statements or the submission of forged or fraudulent documentation will result in the rejection of a claim and may subject the claims filer to civil liability or criminal prosecution.

25.    The Claims Administrator may request that any Class Member who files a Claim Form provide documentation to verify the Class Member's identity and coaching details. Even if the Class Member provided a letter/affidavit attesting to the truth and accuracy of the data and claim overall, the Claims Administrator may require specific documentary evidence to independently verify the details of aspects of the claim submission. Failure to comply with such an audit request may result in the rejection of the claim.

**II.    Resolution Of Disputes And Court Review**

26.    In the event of any disputes between Claimants and the Claims Administrator on any subject (e.g., timeliness, required completeness or documentation of a claim, the calculation of a Claimant's pro rata share of the Net Settlement Fund), the decision of the Claims Administrator shall be final, subject to the Claimant's right to seek review by the Court.[6]

27.    In notifying a Claimant of the final rejection of a Claim or a challenge thereto, the Claims Administrator shall notify the Claimant of his or her right to seek such review. A.B. Data,

---

[6] In the interest of achieving substantial justice, Class Counsel will have the right, but not the obligation, to advise the Claims Administrator to waive what Class Counsel reasonably deem to be technical defects in any Claim submitted, including, without limitation, failure to submit a document by the relevant deadline.

[PROPOSED] PLAN OF ALLOCATION

in consultation with Class Counsel, shall review all written challenges by Claimants to A.B. Data's determinations. If A.B. Data, in consultation with Class Counsel, concludes that its initial determinations were correct, it will so inform the Claimant in writing. Such notification shall be final. If upon review of a challenge and any supporting documentation submitted by the Claimant, A.B. Data and Class Counsel decide to amend or modify their determination, A.B. Data shall advise the Claimant who made the challenge. Any such determinations shall be final.

28.    All proceedings with respect to the administration, processing, and determination of claims, and the determinations of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court. To the extent the Claims Administrator rejects a Claim, either in whole or in part, the Claimant whose Claim Form was rejected will be advised in writing of the reasons for the rejection and that such Claimant will have the opportunity to seek Court review of the Claims Administrator's rejection. All Claimants expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to the Court's determination.

29.    Any such request for Court review by a Claimant must be submitted in writing to the Court, with copies to the Claims Administrator and Class Counsel, within 21 days of the Claims Administrator's sending a final rejection notification to the Claimant.