# EXHIBIT C

<u>Declaration of Elaine Pang in Support of</u>
<u>Plaintiffs' Motion for Preliminary Approval of Settlement</u>

Dennis Stewart, CA Bar No. 99152
**GUSTAFSON GLUEK PLLC**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 595-3299

Daniel E. Gustafson, MN Bar No. 202241
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844

Darryl J. Horowitt, CA Bar No. 100898
**COLEMAN & HOROWITT, LLP**
499 West Shaw, Suite 116
Fresno, CA 93704
Telephone: (559) 248-4820

Robert J. Gralewski, Jr., CA Bar No. 196410
Marko Radisavljevic, CA Bar No. 306552
**KIRBY McINERNEY LLP**
1420 Kettner Boulevard, Suite 100
San Diego, CA 92101
Telephone: (858) 834-2044

Leonard B. Simon, CA Bar No. 58310
**THE LAW OFFICES OF LEONARD B. SIMON P.C.**
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 818-0644

Michael Lieberman, DC Bar No. 1033827
Jamie Crooks, CA Bar No. 310447
Yinka Onayemi, NY Bar No. 5940614
**FAIRMARK PARTNERS, LLP**
1001 G Street NW, Suite 400E
Washington, DC 20001
Telephone: (818) 585-2903

*Attorneys for Plaintiffs Shannon Ray, Khala Taylor,*
*Peter Robinson, Katherine Sebbane, and Rudy Barajas*
*Individually and on Behalf of All Those Similarly Situated*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON RAY, KHALA TAYLOR, PETER ROBINSON, KATHERINE SEBBANE, and RUDY BARAJAS Individually and on Behalf of All Those Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, an unincorporated association,<br><br>Defendant. | Case No. 1:23-cv-00425<br><br>**DECLARATION OF ELAINE PANG IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Judge: Hon. William B. Shubb |

I, Elaine Pang, being duly sworn, certify as follows:

1.      I am the Vice President of Media with A.B. Data, Ltd.'s Class Action Administration Company ("A.B. Data"). I submit this declaration at the request of Class Counsel in connection with the above-captioned action (the "Action").

2.      This declaration is based upon my personal knowledge of and upon information provided by Class Counsel, my associates, and A.B. Data staff members.

3.      Previously, I submitted the *Declaration of Elaine Pang in Support of Plaintiffs' Motion for Approval of the Manner and Form of Class Notice*, filed on May 27, 2025 (Dkt. 138-4), outlining my and A.B. Data's credentials.

4.      A.B. Data was approved by the Court to act as Class Certification Notice Administrator in this case and implemented the plan to provide notice to the certified Class ("certification notice plan").

5.      This declaration describes the proposed notification plan ("Notice Plan") in connection with the Proposed Settlement for the above-captioned matter ("Action") and how it will meet Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and due process requirements. The methods and tools used to develop the notice plan are of a type reasonably relied upon in the fields of media, advertising, and communications.

## CAFA

6.      A.B. Data will be responsible to provide notice as required by CAFA, 28 U.S.C. § 1715. A.B. Data has been engaged to assist in preparing and mailing the CAFA notice.

7.      A.B. Data will provide the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715(b) ("CAFA") no later than ten (10) days following the filing of the Settlement with the Court.

## NOTICE PLAN OVERVIEW

8.      The objective of the Notice Plan is to provide the best practicable notice under the circumstances to Class Members of the previously certified Class, which was defined as:

> All persons who, from March 17, 2019 to June 30, 2023, worked for an NCAA Division I sports program other than baseball in the position of 'volunteer coach,' as designated by NCAA Bylaws.

9.      The proposed Notice Plan uses customary procedures that have been widely adopted in class actions and was designed to be substantially similar to the certification notice plan previously approved and executed in this matter. The Notice Plan includes direct notice via email and First-Class Mail and paid and earned media. The dedicated case-specific website (www.ncaavolunteercoachlawsuit.com) and toll-free telephone number (877-390-3148) will be updated and serve as additional resources.

<b>DIRECT NOTICE</b>

10.      Class Counsel provided A.B. Data with a list of available names, schools, sports, email addresses, and/or mailing addresses for known certified Class Members to effectuate direct notice in the certification notice plan. A.B. Data utilized information databases and other standard tools to attempt to locate mailing and/or email addresses for Class Members with ".edu" email addresses and those with only names and schools where they worked listed. This list now contains 5,893 mailing addresses and 12,532 email addresses to which direct notice will be sent by A.B. Data. This list will be combined with potential Class Members who registered to receive updates about the litigation ("Class List") and be used to provide direct notice about the Settlement.

11.      Media will be used to supplement direct notice and reach those whose contact information cannot be obtained, is no longer active, or is unknown.

|  |  | **Primary Method to Reach** |
|---|---|---|
| **Total Class Members** | **~7,718** | |
| Total Known (with Contact Information) | 6,513 | |
| *With .edu email address only* | *165* | Direct Notice + Media Notice |
| *With mail and/or non .edu email address* | *6,348* | Direct Notice + Media Notice |
| Total with Partial Information (Name and/or School Worked at) | ~501 | Direct Notice + Media Notice |
| Total Unknown | 219 | Media Notice |
| Newly Identified Post-Processing | 485 | Direct Notice + Media Notice |

12.    A.B. Data will send the Short-Form Notice, in the form of an email ("Email Notice"), to Class Members for whom an email address is available. A copy of the proposed Short-Form notice is attached hereto as **Exhibit A**.

13.    The Email Notice will include a unique ID and PIN number that Class Members can use when submitting their Claim Forms and to help validate their claims. These notices will also feature embedded links to the case-specific website where Class Members will be able to access frequently asked questions, important dates and deadlines, other relevant case information and documents, and file a claim.

14.    Prior to emailing, A.B. Data will again perform several tasks to maximize deliverability. These tasks include running the list of recipient email addresses through a deliverability analysis to ensure the email addresses are valid and working with our email service providers to develop sending strategies to achieve optimal deliverability. A.B. Data will also incorporate email "best practices." The subject line, sender, and message content will be designed to encourage readership and exclude words or phrases known to trigger SPAM or junk filters. The Email Notice will be in an embedded html text format, without attachments, to make it less likely email service providers will block the message. It will also be programmatically authenticated, so providers can verify that the emails are being sent from A.B. Data's authorized mail servers.

15.    A.B. Data will mail the Short-Form Notice as a postcard ("Postcard Notice") by First-Class Mail to Class Members with known mailing addresses. A copy of the proposed Postcard Notice is attached hereto as **Exhibit B**.

16.    Prior to mailing, A.B. Data will standardize and update all mailing addresses through the United States Postal Service's ("USPS") national change of address database. For Class Members with a registered change of address, A.B. Data will mail a Postcard Notice to the updated mailing address provided by the USPS.

17.    For any Postcard Notice returned to A.B. Data by the USPS as undeliverable as addressed ("UAA") with a forwarding address provided, A.B. Data will promptly remail the notice to the forwarding address. For any UAA Postcard Notice returned with no forwarding address provided, A.B. Data will search for an updated address using an information provider to which we

subscribe. If an updated address is available, A.B. Data will promptly remail the Postcard Notice to the updated address.

18.    The Long-Form Notice and Proof of Claim and Release Form ("Claim Form") are attached hereto as **Exhibits C-D**, respectively.  Both documents will also be available on the settlement website.

**MEDIA NOTICE**

19.    To supplement the direct notice, A.B. Data developed a media plan, including paid digital and social media advertising, earned media, and other outreach efforts to maximize exposure. Paid media advertising is guaranteed to appear and allows control over the content, timing, and positioning of the message. Earned media and outreach generates organic coverage that can be shared by journalists, influencers, or the public and offers a cost-efficient way to gain attention and visibility.

*Background*

20.    As discussed in my previous declaration, A.B. Data reviewed demographic and other related information about the coaching profession and coaches, including those who work for the National Collegiate Athletic Association ("NCAA"). Specific demographic information about volunteer coaches who worked for NCAA Division I sports programs between March 17, 2019 to June 30, 2023, is not measured by the nationally accredited resource, MRI-Simmons.[1] However, there are notable demographic trends noted in other sources about the coaching field.

21.    Individuals who may work as a volunteer or assistant coach may continue to participate or work in the college coaching.

---

[1] MRI Simmons Survey of the American Consumer is the country's largest, most comprehensive, and most reliable consumer and media and product/service usage database. Data from the Survey of the American Consumer, conducted continuously since 1979, is used in the majority of media and marketing plans written in the United States. The firm's multidimensional database is the largest and most reliable source for integrated media planning. About 450 U.S. advertising agencies, including 90 of the top 100, subscribe to MRI Simmons Research, along with A.B. Data and more than 200 national marketers. MRI Simmons offers the most detailed and representative picture of U.S. demographics and lifestyles, including information on usage of nearly 6,000 product and service brands across 550 categories, the magazines and newspapers audiences read, the websites they look at, the television programs they watch, and the radio stations they listen to.

22.    The proposed media plan was developed through analysis of the target audience and their media consumption habits, utilizing the platforms and channels these individuals engage with most frequently. This process ensures the notice is placed in media vehicles whose audiences are likely to include potential Class Members.

### *Digital and Social Media*

23.    Digital and social media are included in the Notice Plan to reach potential Class Members. A.B. Data recommends cross-platform advertising across a diverse range of websites, blogs, forums, and social media applications to maximize exposure and effectiveness.

24.    Internet advertising allows the viewer to click on a banner advertisement ("banner ad") and instantly be directed to the case-specific website to obtain additional information about their rights.

25.    Social media provides an opportunity for potential Class Members to not only link to the case-specific website, but also seamlessly share ads and information with their family, friends, community, and related social networks. Impressions served to social-media users can be highly targeted, specifically reaching those who have expressed an interest in information relevant to the case.

26.    All digital and social media ads will include images appropriate for this case and an embedded link to the case-specific website to increase the ad visibility and click-through rate. Banner and newsfeed ads will be placed in premium positions, so they are easily seen when viewers first open the website page or application. Sample banner ads are attached as **Exhibit E**.

27.    At least 4.5 million gross impressions[2] will be delivered across multiple devices, including desktop, tablet, and mobile. Digital advertising will run across a variety of websites for 30 days to allow ample time to deliver the targeted impressions. Banner ads will appear on Google Display Network and other programmatic digital platforms. Google Display Network places digital ads on websites, blogs, and other properties within its own network and over 2 million other websites across the Internet.

---

[2] Gross (targeted) impressions are the duplicated sum of audiences of all media vehicles containing the notice.

28.    Social media is commonly used by college coaches for sharing sports information and connecting with student athletes.[3] To further engage with potential Class Members, newsfeed ads will be purchased on Facebook, Instagram, Reddit, X, LinkedIn, and YouTube. Facebook.com is a free, global social networking website that helps people communicate with friends, family, and coworkers. Instagram is a photo and video sharing social networking application with highly engaged users who click on posts and ads. X is a social media platform that allows users to share short text messages, images, and video updates. Reddit is a forum where users connect, share news and content, and discuss shared interests. LinkedIn is a social networking site designed specifically for the business community. YouTube is an online video sharing and social media platform that has over 238 million users in the United States. These networks offer the opportunity to target various audience segments, including college and NCAA affiliations, NCAA-related social media accounts, coaching content and forums, athletic groups, sports influencers, recruiters, and other related interests and groups.

29.    Targeted digital and social media advertising will also be employed to programmatically reach users. Tactics may include:

| Strategy | Rationale |
| --- | --- |
| Third-Party Data | Use third-party data providers to target users with a career, industry, or profession related to NCAA Division I, coaching, NCAA Division I sports, and similar fields. May include utilizing business sources (*e.g.*, Dun & Bradstreet, ZoomInfo, etc.) to target relevant users. |
| Mobile – In-App | Target individuals while they are using relevant mobile applications. Mobile applications could include news apps, game apps, weather apps, exercise apps, entertainment apps, and sports apps. |
| Mobile – Websites | Targeted phones and tablets whose users are visiting websites that are contextually relevant or websites being visited by relevant users. |

---

[3] NCSA College Recruiting. (2025, October 27). https://www.ncsasports.org.

| Strategy | Rationale |
|---|---|
| Contextual/Channel | Target individuals who visited websites with relevant content and context, such as coaching, sports, NCAA, employment, and other related topics. |
| Predictive (Look-Alike) Modeling | Use "look-alike" modeling to target ads to user IDs whose owners have strong similarities to users who have previously "clicked through" to the case-specific website or known Class Members. |
| Behavioral | Target users based on their previous online browsing activity (*e.g.*, if a user views or searches content related to coaching in NCAA, a data profile with that information is created and targeted ads are served to them). This type of targeting may also include those who browse or search topics related to careers connected to NCAA Division I, coaching, and NCAA Division I sports, etc. |
| Social Media | Target social media users, handles, keywords, or topics associated with college and NCAA affiliates, NCAA sports, coaching content and forums, athletic groups, sports influencers, recruiters, and other related interests and communities. |
| Class List | Target users on digital platforms whose emails are on the list of known Class Members. |

30.     The digital campaign will be optimized to adjust for audiences and demographic groups that are most responsive and engaged and maximize exposure across websites that are best driving potential Class Members to the case-specific website.

31.     To make it easy for potential Class Members to locate the case-specific website, sponsored search listings will be purchased to appear on Google, the most highly visited search engine, and/or other search partners. When a person uses a specific target phrase and/or keyword in a search engine to search for information, the link to the case-specific website may appear on the search result pages. Sample keyword terms or phrases may include "NCAA volunteer coach class action," "Volunteer coach NCAA class action lawsuit," "NCAA volunteer coach settlement," plus many others.

32.     A.B. Data's digital media team is certified in Google Ads Display, Google Ads Search, Google Analytics, Facebook, The Interactive Advertising Bureau ("IAB")[4] Digital Media Buying & Planning, IAB Digital Media Sales, and Hootsuite Social Marketing.

### *Earned Media and Outreach*

33.     In addition to the direct notice and paid media, A.B. Data will distribute a news release via PR Newswire's US1 Newsline and Business Wire's Sports Wire Circuit to help the case gain more attention from the media and potential Class Members. The press release will reach traditional media outlets (television, radio, newspapers, magazines), news websites, and journalists nationwide. A news release serves a valuable role, as it provides additional exposure to the notice information beyond paid media.

34.     A.B. Data will also share information about the case with its followers on X.

35.     Additional outreach efforts will also be utilized to increase Class Member awareness and encourage individuals to share information about the Settlement via word-of-mouth.

36.     A.B. Data will contact (via mail or email) the Athletics Departments and General Counsel of Division I schools to request that they post the Notice on their own athletic websites and/or otherwise provide the Notice by mail or email to anyone employed by them in the Volunteer Coach position during the Class period.

37.     A.B. Data will reach out to other organizations, coaching associations, influencers, and media outlets to request that they share this information on their websites, electronic communication, or other social media sites.

### WEBSITE AND EMAIL ADDRESS

38.     A.B. Data will update the existing dedicated case-specific website, www.ncaavolunteercoachlawsuit.com, to ensure Class Members can easily access information about their rights and the Settlement. It will provide, among other things, a case summary, information about Class Member rights and options, relevant documents, important dates, and any

---

[4] The IAB is an American advertising business organization that develops industry standards, conducts research, and provides legal support for the online advertising industry.

pertinent updates concerning this Action. Class Members will also be able to submit their claims online, update or correct their contact information, access detailed Frequently Asked Questions, and download copies of key documents and a Claim Form.

39.     The website address will appear on the Notices and digital ads.

40.     A.B. Data will also continue to maintain an official email account, displayed on the website, that Class Members can utilize to ask questions.

**TOLL-FREE TELEPHONE NUMBER**

41.     A.B. Data will update the existing case-specific toll-free telephone number at (877) 390-3148 to address potential Class Member inquiries. The toll-free telephone number will be equipped with an automated interactive voice response system that presents callers with a series of choices to hear prerecorded information. If callers need further help, they have the option to speak with a live operator during business hours. After business hours, callers may leave a voicemail message, and their call will be returned. The toll-free telephone number will be prominently displayed on the Notices and the case-specific website.

**NOTICE DESIGN**

42.     The Notices are designed to be noticed, reviewed, and – by presenting the information in plain language – understood by Class Members. The notice design follows the principles embodied in the Federal Judicial Center's ("FJC") illustrative model notices posted at www.fjc.gov. Many courts have approved similarly written and designed notices. The Notices contain substantial, easy-to-read summaries of all key information about Class Members' rights, including the ability to file a claim, object, or opt-out and the deadline to do so. Consistent with our normal practice, all Notices will undergo a final edit for grammatical errors and accuracy prior to actual emailing and publication.

**EXCLUSION PROCESSING**

43.     The Long-Form Notice and the settlement website will include specific instructions on how to request exclusion from the Class. A.B. Data will receive, process, and report all exclusion requests and promptly circulate copies to Class Counsel.

1

## CLAIMS ADMINISTRATION

2   44.    A.B. Data will also provide claims administration services. These services include

3   processing each submitted Claim Form; preparing and sending deficiency/eligibility notifications;

4   determining the amount of each Claim Payment due; and providing payments, via an electronic

5   payment platform or check, to authorized claimants. A.B. Data may also provide additional

6   services upon the parties' request.

7   45.     Class Members who wish to be potentially eligible to receive a payment from the

8   Settlement Fund will be required to complete and submit a properly executed Claim Form, either

9   by mail or online through the case-specific website, no later than the claims-submission deadline

10  established by the Court.

11  46.    A.B. Data will review each Claim Form upon receipt to verify that all required

12  information was provided. Information provided with each Claim will be reviewed for accuracy.

13  A.B. Data will process each Claim in accordance with the Court-approved Settlement Agreement

14  and Plan of Allocation and/or relevant Court orders.

15  47.    A.B. Data employs a number of fraud prevention techniques to try to prevent and

16  identify claims filed from suspicious locations, by repeat or bad actors, and/or by Internet "bots"

17  attempting to defraud the claims process. These techniques include utilizing CAPTCHAs and other

18  industry-standard security measures. Our team continually monitors and technically enhances the

19  claims submission portal to detect and block fraudulent activity, and all submitted Claim Forms

20  are continually reviewed and scored.

21  48.    Suspicious Claims may be rejected or subject to additional scrutiny, such as

22  requests for additional documentation and other proprietary measures, to allow such claimants to

23  prove their claims are legitimate. Suspicious claimants who do not provide the requested additional

24  documentation or information or fail to otherwise prove their Claims' legitimacy, will not receive

25  a payment from the Net Settlement Fund.

26  49.    If a Claim is determined to be defective, A.B Data will send a deficiency

27  notification to the claimant, via letter or email, that describes why the Claim is deficient and

28  including, where applicable, what is necessary to cure the deficiency. The deficiency notification

will also advise claimants how much time they have to submit the appropriate information and/or documentary evidence to complete/cure their Claim. If claimants do not cure the deficiency in their Claim, their Claim will be recommended for rejection (in whole or in part). The deficiency notification will also advise claimants of their right to contest A.B. Data's administrative determination with respect to their Claim.

50.    After the Claims (and responses to deficiency notifications) are fully processed, quality assurance reviews performed, and final administrative determinations made as to which Claims are valid, A.B. Data will distribute the Net Settlement Fund proceeds to authorized claimants as approved by the Court upon Court approval.

51.    Authorized Claimants will be provided an opportunity to request their payment by check or wire.  Distributions from the Net Settlement Fund will be sent to Authorized Claimants based on their preference and in accordance with the timeframes and provisions established in the Court-approved Settlement Agreement.

**DATA SECURITY**

52.    A.B. Data has numerous control systems and procedures in place, that it believes meet or exceed relevant industry standards, to securely handle class member data.

53.    A.B. Data accepts responsibility for the security of class member information and claimant data; accurate calculation of claims pursuant to a Court-approved plan of allocation, subject to the guidance of the parties; and accurate distribution of funds pursuant to relevant Court orders. All case data provided to A.B. Data by the parties and/or Class Members will be used solely for the purpose of effecting notice and settlement administration. A.B. Data will not use any Class Member information for any other purpose; specifically, the information will not be used, disseminated, or disclosed by or to any other person for any other purpose.

54.    A.B. Data will continue to host and maintain the case data until otherwise instructed in writing by the parties to delete, archive, or return such data. When a customer requests that A.B. Data delete or destroy all data, A.B. Data agrees to delete or destroy all such data; however, A.B. Data may retain data as required by applicable law, rule, or regulation, and to the extent such

copies are electronically stored in accordance with A.B. Data's record retention or back-up policies or procedures (including those regarding electronic communications) then in effect.

55.     A.B. Data maintains adequate insurance in the case of errors, which includes: (a) professional liability errors and omissions insurance coverage; (b) a fidelity bond for employee dishonesty losses (plus additional computer fraud and wire transfer communication fraud coverages); and (c) network and information security liability coverage.

### FEES

56.     Based on the defined scope of work provided by Class Counsel and our experience, A.B. Data estimates the notice and Settlement administration costs will range from approximately $450,000 to $600,000, depending on the claims rate and number of claims paid.  A copy of the estimated costs is attached hereto as **Exhibit F**.

57.     A.B. Data's estimated fees and charges are based on certain information provided by the parties to A.B. Data and certain assumptions that could change based on actual circumstances and volumes. (For example, if media costs increase and/or the number of Claims received is substantially greater or lower than our estimate, true costs may be higher or lower.) Accordingly, the estimate is not intended to limit A.B. Data's actual fees and charges, which may be less or more than estimated due to the scope of actual services or changes to the underlying facts or assumptions. A.B. Data will always strive to minimize costs whenever possible.

### CONCLUSION

58.     It is my opinion that the proposed Notice Plan uses a strategic and contemporary method to deploy notice to the Class and is adequate and reasonable to effectively reach Class Members. This robust plan that includes direct notice (email and mail), paid media (digital and social media) advertising, and earned media and outreach, will reach over 75%[5] of the Class. This Notice Plan conforms to standards employed by A.B. Data in similar notification plans. The

---

[5] This reach is within the range that the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* recommends and considers reasonable. It states: "The lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70-95%."

proposed Notice Plan is the best practicable approach to reach Class Members and fully complies with Rule 23 of the Federal Rules of Civil Procedure.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of November 2025.

_____

Elaine Pang

# EXHIBIT A

<u>Legal Notice</u>

# Did You Work as a Volunteer Coach in an NCAA Division I Athletics Program in a Sport Other Than Baseball Between March 17, 2019 and June 30, 2023?

## *You Could Get Money from a $303 Million Settlement.*

There is a settlement with National Collegiate Athletic Association ("NCAA") in a class action antitrust lawsuit filed on behalf of former "volunteer" coaches in NCAA Division I sports other than baseball. This court-ordered notice may affect your rights. Please review and follow the instructions carefully.

### What is this case about?

The lawsuit claims that NCAA Bylaws that prohibited schools from paying wages, salaries, or benefits to Division I coaches who were designated as "volunteer coaches" violated the federal antitrust laws. This rule, officially found at NCAA Bylaw 11.7.6, was in effect from 1992 until July 1, 2023. Five former Division I volunteer coaches ("Plaintiffs") prosecuted this lawsuit on behalf of the Class. NCAA denies it did anything wrong.

The Court has not decided whether the Plaintiffs or NCAA are correct about whether NCAA violated the law. But litigation involves risks to both sides, and therefore Plaintiffs and NCAA have agreed to the Settlement to resolve the case and get benefits to the Class.

### Who is included?

Generally, you are included in the Settlement if you are a person who, for any period of time between March 17, 2019, and June 30, 2023, worked for a NCAA Division I sports program other than baseball in the position of "volunteer coach," as designated by NCAA Bylaws.

### What does the Settlement provide?

NCAA will pay $303,000,000 into a Settlement Fund, making three equal payments over two calendar years, to resolve all claims against it in this lawsuit. If you submit a valid Claim, you will receive a share of this money, also in three payments over two calendar years.

If the Court approves this Settlement, the following amounts will be deducted from the Settlement Fund: (i) any Court-awarded attorney's fees (up to 30% of the Settlement Fund) and costs and expenses (up to $5 million); (ii) any Court-awarded service awards for the five Class Representatives/named Plaintiffs (up to $25,000 each); and (iii) the fees and expenses for Settlement administration. The minimum amount to be paid (before fees and costs) per Class Member who files a valid claim will be $5,000**.**

**How do I get a payment?**

If you are a Class Member (and do not exclude yourself), you must submit a claim form online or by mail (postmarked) no later than [**DATE**] to receive your share of money from the Net Settlement Fund. Claim Forms are available on the Settlement website (www.NCAAVolunteerCoachLawsuit.com), by calling 1-877-390-3148, or emailing info@ncaavolunteercoachlawsuit.com.

If your claim is valid, you will get a payment from the net Settlement Fund. Your payment amount will depend on the school, sport, and year(s) in which you worked, the number of valid claims, the wages of the lowest paid coach on your team, the amount of court-approved deductions, and other factors.

**What are my rights?**

If you do nothing or if you participate in the Settlement, you will be bound by the Court's decisions and cannot sue NCAA or any Released Defendant Parties yourself for the Released Claims (defined in the Settlement Agreement).

If you want to keep your right to sue NCAA or any Released Defendant Parties yourself for the Released Claims, you must exclude yourself from the Settlement by [**DATE**]. If you exclude yourself, you cannot get a payment from the Settlement.

If you stay in the Settlement, you may object to it, the proposed Plan of Allocation, and/or the requests for attorney's fees, expenses, and service awards by [**DATE**].

Please visit www.NCAAVolunteerCoachLawsuit.com for more information about how to file a claim, exclude yourself, or object.

The Court will hold a hearing in this case (*Ray v. NCAA*, No. 1:23-cv-00425) on [**DATE**] at **XXX PT** to consider whether it will approve the Settlement, the Plan of Allocation, or requests for attorney's fees, reimbursement of litigation expenses, and service awards for the class representatives. You or your own lawyer may appear and speak at the hearing at your own expense.

**This Notice is only a summary.**
**For more information, including the full Notice and Settlement Agreement,**
**visit www.NCAAVolunteerCoachLawsuit.com, email _____, or call 877-390-3148.**

Class members should continue to review the settlement website for important updates about the Settlement and the litigation.

# EXHIBIT B

# Did You Work as a Volunteer Coach in an NCAA Division I Athletics Program in a Sport Other Than Baseball Between March 17, 2019 and June 30, 2023?

## *You Could Get Money from a $303 Million Settlement*

Records show you may be affected by a settlement with National Collegiate Athletic Association ("NCAA") in a class action antitrust lawsuit filed on behalf of former "volunteer" coaches in NCAA Division I sports other than baseball. This court-ordered notice may affect your rights. Please review and follow the instructions carefully.

The lawsuit claims that NCAA Bylaws that prohibited schools from paying wages, salaries, or benefits to Division I coaches designated as "volunteer coaches" violated the federal antitrust laws. This rule was in effect from 1992 until July 1, 2023. Five former Division I volunteer coaches ("Plaintiffs") prosecuted this lawsuit on behalf of the Class. NCAA denies it did anything wrong. The Court has not decided whether the Plaintiffs or NCAA are correct about whether NCAA violated the law. But litigation involves risks to both sides, and therefore Plaintiffs and NCAA have agreed to the Settlement to resolve the case and get benefits to the Class. The Settlement website is www.NCAAVolunteerCoachLawsuit.com.

XXXXXXXX
c/o A.B. Data, Ltd.
P.O. Box 170XXX
Milwaukee, WI 53217

**Postmaster: Please DO NOT Cover Up Barcode**

<<Barcode>>
<<Claim ID>>

<<Mailing Address>>

**Are you included?** Generally, you are included in the Settlement if you are a person who, for any period of time between March 17, 2019, and June 30, 2023, worked for an NCAA Division I sports program other than baseball in the position of "volunteer coach," as designated by NCAA Bylaws.

**What does the Settlement provide?** NCAA will pay $303,000,000 into a Settlement Fund, making three payments over two calendar years, to resolve all claims against it in this lawsuit. If you submit a valid Claim, you will receive a share of this money, also in three payments. If the Court approves this Settlement, the following amounts will be deducted from the Settlement Fund: (i) any Court-awarded attorney's fees (up to 30% of the Settlement Fund) and costs and expenses (up to $5 million); (ii) any Court-awarded service awards for the five Class Representatives (up to $25,000 each); and (iii) the fees and expenses for Settlement administration. The minimum amount to be paid (before fees and costs) per Class Member who files a valid claim will be $5,000.

**How do I get a payment?** If you are included (and do not exclude yourself), you must submit a claim form online or by mail (postmarked) no later than [**DATE**] to receive your share of money from the Net Settlement Fund. Claim Forms are available on the Settlement website, by calling 1-877-390-3148, or emailing info@ncaavolunteercoachlawsuit.com. If your claim is valid, you will get a payment from the Settlement Fund. Your payment amount will depend on the school, sport, and year(s) in which you worked, the number of valid claims, the wages of the lowest paid coach on your team, the amount of court-approved deductions, and other factors.

**What are my rights?** If you do nothing or if you participate in the Settlement, you will be bound by the Court's decisions and cannot sue NCAA or any Released Defendant Parties yourself for the Released Claims (defined in the Settlement Agreement). If you want to keep your right to sue NCAA or any Released Defendant Parties yourself for the Released Claims, you must exclude yourself from the Settlement by [**DATE**]. If you exclude yourself, you cannot get a payment from the Settlement. If you stay in the Settlement, you may object to it, the proposed Plan of Allocation, and/or the requests for attorney's fees and expenses and service awards by [**DATE**]. Please visit www.NCAAVolunteerCoachLawsuit.com for more information about how to file a claim, exclude yourself, or object. The Court will hold a hearing in this case (*Ray v. NCAA*, No. 1:23-cv-00425) on [**DATE**] at **XXX PT** to consider if it will approve the Settlement, the Plan of Allocation, or requests for attorney's fees, reimbursement of litigation expenses, and service awards for the class representatives. You or your own lawyer may appear and speak at the hearing at your own expense.

For more information: **1-877-390-3148 or www.NCAAVolunteerCoachLawsuit.com**

# EXHIBIT C

<u>Legal Notice</u>

# Did You Work as a Volunteer Coach in an NCAA Division I Athletics Program in a Sport Other Than Baseball Between March 17, 2019 and June 30, 2023?

## *You Could Get Money from a $303 Million Settlement.*

This Notice is given pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Eastern District of California (the "Court"). It is not junk mail, an advertisement, or a solicitation from a lawyer. You have not been sued.

**Please read this entire notice carefully.** Your rights may be affected by the proceedings in this action. This notice advises you of your rights and options with respect to the action, including what you must do if you wish to share in the proceeds of the net settlement fund. To claim your share of the net settlement fund, your claim form must be postmarked or electronically submitted by **[DATE]**.

TO:     All persons who, from March 17, 2019 to June 30, 2023 ("Class Period"), worked for an NCAA Division I sports program other than baseball in the position of "volunteer coach," as designated by NCAA Bylaws.

The purpose of this Notice is to inform you of a proposed settlement in this Action (the "Settlement") with Defendant National Collegiate Athletic Association ("NCAA"). Plaintiffs entered into the Settlement Agreement with NCAA on November 10, 2025.

If approved by the Court, the Settlement will resolve a lawsuit alleging that certain NCAA Bylaws that prohibited schools from paying wages, salaries, or benefits to Division I coaches designated as "volunteer coaches" violated federal antitrust law. If approved, the Settlement will avoid litigation costs and risks to Plaintiffs and NCAA and will release NCAA from liability to members of the Class. The Court has not decided whether NCAA did anything wrong, and NCAA denies any wrongdoing. *See* Question __.

The Court has preliminarily approved the Settlement. To resolve all Released Claims against all Released Parties, NCAA has agreed to pay a total of $303 million U.S. Dollars in three (3) equal payments. Class Members who do not opt out of the Settlement will release their claims against NCAA and the Released Parties.

The following table contains a summary of your rights and options regarding the Settlement. More detailed information about your rights and options can be found in the Settlement Agreement and Plan of Allocation, both of which are available at www.NCAAVolunteerCoachLawsuit.com (the "Settlement Website").

QUESTIONS? CALL (877) 390-3148 OR VISIT www.NCAAVolunteerCoachLawsuit.com

1

| **YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT** | |
|---|---|
| **FILE A CLAIM FORM** | The only way to receive your share of the Net Settlement Fund is to complete and submit a timely and valid Claim Form to the Claims Administrator. Electronic Claim Forms must be submitted, or mailed Claim Forms must be postmarked, by **[DATE]**. *See* Question ___. <br><br> The Claim Form is available at www.NCAAVolunteerCoachLawsuit.com. |
| **DO NOTHING** | If you do nothing in connection with this Settlement, you will receive no payment from the Settlement *and* you will be bound by past and any future Court rulings, including rulings on the Settlement, if approved, and the settlement release. You will give up your rights to sue NCAA or any Defendant Released Parties on your own about the claims in this lawsuit and all Released Claims. *See* Question ___. **To receive your share of the Net Settlement Fund, you must submit a Claim Form.** |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT** | If you wish to exclude yourself from the Settlement, you must submit by U.S. first class mail (or, if sent from outside the U.S., by a service that provides for guaranteed delivery within ____ (__) or fewer calendar days of mailing) or deliver a written request to the Settlement Administrator by **[45 Days From Provision of Notice]**. If you exclude yourself, you will not be bound by the Settlement, if approved, or settlement release, and you will not be eligible for any payment from the Settlement. *See* Questions __-___. This is the only option that allows you to be part of any other lawsuit against NCAA or any Defendant Released Parties about the claims in this lawsuit or the Released Claims. |
| **OBJECT TO THE SETTLEMENT** | If you wish to object to the Settlement, you must file a written objection with the Court and provide copies to Class Counsel by **[45 Days From Provision of Notice].** You must stay in the Class to object. *See* Questions __ and __. |
| **GO TO THE FAIRNESS HEARING** | You may ask the Court for permission to speak about the Settlement at the Fairness Hearing by including such a request in your written objection, which you must file with the Court and provide copies to Class Counsel so that it is received by **[45 Days From Provision of Notice]**. The Fairness Hearing is scheduled for _____. *See* Questions __-___. You may enter an appearance through your own counsel at your own expense. *See* Question __. |

QUESTIONS? CALL (877) 390-3148 OR VISIT www.NCAAVolunteerCoachLawsuit.com

These rights and options and the deadlines to exercise them are explained in this Notice. The capitalized terms used in this Notice are explained or defined below or in the Settlement Agreement, which is available on the Settlement Website, www.NCAAVolunteerCoachLawsuit.com.

Payments will be made only if the Court approves the Settlement and after appeals, if any, are resolved. Please be patient.

The Court has appointed the lawyers listed below ("Class Counsel") to represent you and the Class in this Action:

| | | |
|---|---|---|
| Dennis Stewart | Robert J. Gralewski, Jr., | Michael Lieberman |
| Gustafson Gluek PLLC | Kirby McInerney LLP | Fairmark Partners, LLP |
| 600 West Broadway | 1420 Kettner Blvd., Suite 100 | 400 7th Street NW, Suite 304 |
| Suite 3300 | San Diego, CA 92101 | Washington, DC 20004 |
| San Diego, CA 92101 | BGralewski@kmllp.com | michael@fairmarklaw.com |
| dstewart@gustafsongluek.com | | |

Please regularly visit the Settlement Website, which can be found at www.NCAAVolunteerCoachLawsuit.com, for updates about the Settlement.

Please do not contact the Court regarding this Notice. Inquiries concerning this Notice, the Claim Form, or any other questions should be directed to:

NCAA Volunteer Coaches Lawsuit
C/O A.B. Data, Ltd.
PO Box 173059
Milwaukee, WI 53217
Tel: (877) 390-3148
Email: info@ncaavolunteercoachlawsuit.com
Website: www.NCAAVolunteerCoachLawsuit.com

QUESTIONS? CALL (877) 390-3148 OR VISIT www.NCAAVolunteerCoachLawsuit.com

3

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ..................................................................................... **6**

    1.    What Is A Class Action Lawsuit? ................................................. 6

    2.    Why Did I Get This Notice? ......................................................... 6

    3.    What Are The Definitions Used In This Notice?........................... 6

    4.    What Is This Action About?........................................................... 6

    5.    What Is The History Of This Action? ........................................... 7

    6.    Why Is There A Settlement? ......................................................... 8

**WHO GETS MONEY FROM THE SETTLEMENT** .................................................. **8**

    7.    How Do I Know If I Am A Class Member? .................................. 8

    8.    Are There Exceptions To Being Included In The Class?....... **Error! Bookmark not defined.**

    9.    I'm Still Not Sure If I Am Included. ............................................. 8

**THE SETTLEMENT BENEFITS** ........................................................................ **8**

    10.    What Does The Settlement Provide? ............................................. 8

    11.    What are the Settlement benefits being used for?.......................... 9

    12.    How Will I Get A Payment? ......................................................... 9

    13.    How Much Will My Payment Be?................................................. 9

    14.    What Is The Plan of Allocation? ................................................. 10

    15.    When Will I Receive A Payment? ............................................... 10

    16.    What Do I Have To Do After I File A Claim Form? ................... 10

    17.    What Am I Giving Up To Receive A Payment?........................... 11

    18.    What If I Do Nothing? ................................................................. 12

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ................................................ **12**

    19.    What If I Do Not Want To Be In The Class?................................ 12

QUESTIONS? CALL (877) 390-3148 OR VISIT www.NCAAVolunteerCoachLawsuit.com

20.      How Do I Exclude Myself?..................................................................... 12

21.      If I Do Not Exclude Myself, Can I Sue the NCAA And The Other Released Parties For The Same Thing Later? ............................................................... 13

22.      If I Exclude Myself, Can I Get Money From The Settlement?............................. 13

23.      If I Exclude Myself From The Settlement, Can I Still Object?............................ 13

**OBJECTING TO THE SETTLEMENT** ....................................................... **13**

24.      How Do I Tell The Court What I Think About The Settlement? .......................... 13

25.      What Is The Difference Between Objecting And Excluding Myself?................... 15

**THE LAWYERS REPRESENTING YOU** ..................................................... **15**

26.      Do I Have A Lawyer In This Case? ....................................................... 15

27.      How Will The Lawyers Be Paid?......................................................... 15

**THE COURT'S FAIRNESS HEARING** ....................................................... **16**

28.      When And Where Will The Court Decide Whether To Approve The Settlement? 16

29.      Do I Have To Come To The Fairness Hearing?......................................... 16

30.      May I Speak At The Fairness Hearing? ................................................. 16

**GETTING MORE INFORMATION** ........................................................... **17**

31.      How Do I Get More Information?......................................................... 17

## BASIC INFORMATION

### 1.    What Is A Class Action Lawsuit?

A class action is a lawsuit in which one or more people, called representative plaintiffs or "Class Representatives," bring a lawsuit on behalf of themselves and other similarly situated persons (*i.e.*, a class) who have similar claims against the defendant. The Class Representatives, the court, and counsel appointed to represent the class all have a responsibility to make sure that the interests of all class members are adequately represented.

When a representative plaintiff enters into a settlement with a defendant on behalf of a class, such as in this Settlement with NCAA, the court will require that the members of the class ("Class Members") be given notice of the settlement and an opportunity to be heard with respect to the settlement. The court then conducts a hearing (called a Fairness Hearing) to determine, among other things, if the settlement is fair, reasonable, and adequate.

### 2.    Why Did I Get This Notice?

You received this Notice because you requested it or records indicate that you may be a Class Member. As a potential Class Member, you have a right to know about the proposed Settlement with NCAA before the Court decides whether to approve the Settlement. Your legal rights are affected whether you act or not.

This Notice explains the Action, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how you can apply to receive your portion of the benefits if you are eligible. The purpose of this Notice is also to inform you of the Fairness Hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement and Plan of Allocation and to consider requests for awards of attorneys' fees, litigation expenses and costs, and any Service Awards for Class Plaintiffs from the Settlement Fund.

Judge William B. Shubb of the United States District Court for the Eastern District of California is overseeing this case. This lawsuit is currently known as *Ray v. NCAA*, No. 1:23-cv-00425. The people who sued are called the "Plaintiffs." NCAA is the "Defendant."

### 3.    What Are The Definitions Used In This Notice?

This Notice incorporates by reference the definitions in the Stipulation and Agreement of Settlement with NCAA (the "Settlement Agreement").

The Settlement Agreement and the Court's Preliminary Approval Order are posted on the Settlement Website. All capitalized terms used, but not defined, shall have the same meanings as in the Settlement Agreement and the Court's Preliminary Approval Order.

### 4.    What Is This Action About?

Plaintiffs allege that the NCAA and member schools agreed, in the form of an NCAA bylaw, to prohibit the payment of compensation or benefits to a category of coaches designated under NCAA

Division I bylaws as "volunteer coaches." The rule, officially found at NCAA Bylaw 11.7.6, was in effect from 1992 until July 1, 2023. Plaintiffs claim that this prohibition was an illegal wage-fixing conspiracy under Section 1 of the Sherman Act and the people who worked in that position during the class period were injured by that alleged conspiracy.

A copy of the Complaint is available at www.NCAAVolunteerCoachLawsuit.com. The NCAA's motion to dismiss the case was denied by the Court on July 27, 2023. Plaintiffs' motion for class certification was granted on March 10, 2025.

NCAA has denied all allegations of wrongdoing in this lawsuit.

### 5.    What Is The History Of This Action?

On March 21, 2023, Plaintiffs Shannon Ray, Joseph Colon, and Kyle McKinley filed the initial complaint alleging the misconduct described above in the U.S. District Court for the Eastern District of California. On May 4, 2024, Plaintiffs filed an amended complaint. On May 23, 2023, the NCAA filed motions to dismiss and to transfer venue. The Court denied those motions on July 27, 2023. The action was subsequently prosecuted by Plaintiffs Shannon Ray, Khala Taylor, Peter Robinson, Rudy Barajas, and Katie Sebbane who, on March 10, 2025, were appointed by the Court as the representatives of the certified Class (the "Representative Plaintiffs").

The Parties engaged in extensive party and third-party discovery efforts. Notably, Class Counsel issued more than 400 subpoenas to Division I colleges and universities for the purpose of identifying the Class Members and obtaining data relating to paid coaches. Plaintiffs deposed employees and officers of NCAA, NCAA member conferences, and NCAA member schools, as well as NCAA's economic expert.

Plaintiffs filed the operative second amended complaint on October 29, 2024. On November 1, 2024, Plaintiffs filed their motion for class certification. Defendants' responses were filed on December 20, 2024. Plaintiffs filed their reply brief in support of class certification on January 31, 2025. The Court granted Plaintiff's class certification motion on March 11, 2025.

On June 30, 2025, Plaintiffs moved for Partial Summary Judgment. On August 15, 2025, NCAA opposed the motion and on September 9, 2025, Plaintiffs filed their Reply. Prior to the Settlement, the Court was scheduled to hear argument on the summary judgment on October 14, 2025.

Settlement efforts were hard fought. Prior to class certification being granted, the Parties participated in a full day mediation session in July 2024 facilitated by Fouad Kurdi, Esq. (Resolutions LLC). The Parties did not reach a resolution and litigation efforts continued. During the pendency of the Summary Judgment motion, the Parties resumed settlement negotiations. On October 10, 2025, the Parties participated in a full day mediation session that was facilitated by Miles Ruthberg, Esq. (Phillips ADR Enterprises), which resulted in the proposed settlement.

The NCAA has denied all allegations of wrongdoing in this lawsuit and would continue to assert numerous defenses to Plaintiffs' claims in the Action against it were it to proceed.

QUESTIONS? CALL (877) 390-3148 OR VISIT www.NCAAVolunteerCoachLawsuit.com

### 6.     Why Is There A Settlement?

Plaintiffs and Class Counsel believe that Class Members have been damaged by the NCAA's conduct. Defendant believes that it has meritorious defenses to Plaintiffs' allegations and Plaintiffs' claims would have been rejected at trial, or on appeal. As a result, NCAA believes Class Plaintiffs would have received nothing if the litigation had continued to trial.

The Court has not decided in favor of either Plaintiffs or NCAA. Instead, Plaintiffs and Class Counsel engaged in mediation with NCAA to reach a negotiated resolution of the Action. The Settlement allows both sides to avoid the risks and costs of further litigation and the uncertainty of pre-trial proceedings, a trial, and appeals, and, if approved, the Settlement will permit eligible Class Members who file timely and valid Claim Forms to receive compensation, rather than risk ultimately receiving nothing. Class Representatives and Class Counsel believe the Settlement is in the best interest of all Class Members.

If the Settlement is approved, the Action will be terminated. If the Settlement is not approved, NCAA will remain as the Defendant in the Action, and Class Plaintiffs will continue to pursue their claims.

### WHO GETS MONEY FROM THE SETTLEMENT

### 7.     How Do I Know If I Am A Class Member?

The Court previously certified the following Class:

> All persons who, from March 17, 2019 to June 30, 2023, worked for an NCAA Division I sports program other than baseball in the position of "volunteer coach," as designated by NCAA Bylaws.

You are in the Settlement if you are in the certified Class.

### 8.     I'm Still Not Sure If I Am Included.

If you are still not sure whether you are included, you can ask for free help. You can call toll-free 1-xxx-xxx-xxxx (if calling from outside the United States or Canada, call 1-xxx-xxx-xxxx) or visit the Settlement Website, www.NCAAVolunteerCoachLawsuit.com for more information. You may also send questions to the Settlement Administrator at XXXXXXXXX, c/o A.B. Data, Ltd., P.O. Box 0000, Milwaukee, WI 53217.

### THE SETTLEMENT BENEFITS

### 9.     What Does The Settlement Provide?

If the Settlement is approved, NCAA will pay $303,000,000 in cash across three equal payments over two calendar years to resolve all Class Members' claims against NCAA and all Defendant Released Parties for the Released Claims (as defined in the Settlement Agreement).

The Net Settlement Fund—which will consist of the total Settlement Fund less court-approved attorneys' fees, costs, expenses, and service awards—will be divided among all Class Members who file timely and valid Claim Forms.

### 10. What are the Settlement benefits being used for?

NCAA will pay a total $303 million into a Settlement Fund to make payments to eligible Class Members, and any Court-approved attorneys' fees, costs, and expenses; service awards to the Class Representatives (*see* Question ___) and costs to notify the Class and administer the Settlement.

Class Counsel will file a motion by _____, 2026, in which they will ask the Court to award up to 30% of the Settlement Fund in attorneys' fees, costs and expenses up to $5 million, and up to $25,000 in service awards for each of the Class Representatives. A portion of the Settlement Funds will also be used to pay notice and claims administration costs.

A copy of the motion for attorneys' fees and service awards will be available on the Settlement Website. The Net Settlement Fund will be distributed to Class Members who submit timely and valid Claim Forms and who have not excluded themselves from the Settlement pursuant to the Plan of Allocation, which is available on the Settlement website.

### 11. How Will I Get A Payment?

If you are a Class Member and do not exclude yourself, you are eligible to file a Claim Form to receive your share of money from the Net Settlement Fund. Claim Forms must be submitted online at the Settlement Website, www.NCAAVolunteerCoachLawsuit.com, no later than **[DATE]**, or postmarked by that same date and mailed to:

NCAA Volunteer Coaches Lawsuit
C/O A.B. Data, Ltd.
PO Box 173059
Milwaukee, WI 53217

Following the timely submission and receipt of your Claim Form, the Settlement Administrator will send you a "Confirmation of Claim Receipt," which will acknowledge receipt of your Claim and will inform you of important next steps.

**Please keep all data and documentation related to your work as volunteer coach. If there are discrepancies or incomplete data relating to your employment during the Class Period, having data and documentation may be important to substantiating your Claim Form.**

If you do not file a Claim Form, you will not receive any payment from the Settlement.

### 12. How Much Will My Payment Be?

The amount of your payment will be determined by the Plan of Allocation, if it is approved, or by such other plan of distribution that is approved by the Court. At this time, it is not known precisely

how much each Authorized Claimant will receive from the Net Settlement Fund or when payments will be made.

If your claim is valid, you will get a payment from the Net Settlement Fund. Your payment amount will depend on the school, sport, and year(s) in which you worked, the number of valid claims, the wages of the lowest paid coach on your team, the amount of court-approved deductions, and other factors. Valid claimants will receive a minimum $5,000 payment. For more information on the Plan of Allocation, *see* Question ___.

### 13.    What Happens If There Are Funds Remaining After Distribution?

If there are any funds remaining after all Settlement distributions are made, those funds will be distributed to an organization approved by the Court. No remaining funds will be returned to NCAA.

### 14.    What Is The Plan of Allocation?

The Plan of Allocation is available for review on the Settlement Website, www.NCAAVolunteerCoachLawsuit.com. Changes, if any, to the Plan of Allocation based on newly available data or information or any Court order will be promptly posted on the Settlement Website. Please check the Settlement Website for the most up-to-date information about the Plan of Allocation.

### 15.    When Will I Receive A Payment?

The Court will hold the Fairness Hearing on **[DATE], 2026** to decide whether to approve the Settlement and Plan of Allocation (*see* Question XX). Even if the Court approves the Settlement and Plan of Allocation, there may be appeals after that. It can sometimes take a year or more for the appellate process to conclude. The Settlement Agreement contemplates the payout of claims over 3 payments, the first to occur no earlier than **[DATE]** and the remaining payments one and two years respectively after that date.

Please be patient; status updates will be posted on the Settlement Website.

### 16.    What Do I Have To Do After I File A Claim Form?

After you file a Claim Form, the Claims Administrator will evaluate your Claim Form to determine if you have provided sufficient information to validate your membership in the Class and your claim. If the Claims Administrator determines that your Claim Form is deficient or defective, it will contact you. If you subsequently provide information that satisfies the Claims Administrator concerning the validity of your Claim Form, you will not have to do anything else. If any disputes cannot be resolved, Class Counsel will submit them to the Court, and the Court will make a final determination of the validity of your Claim Form.

As noted above: please keep records of all data and documentation related to your work as volunteer coach. Data and documentation may be needed to substantiate your Claim Form.

### 17.    What Am I Giving Up To Receive A Payment?

Unless you exclude yourself, you remain a Class Member. That means you can't sue, continue to sue, or be part of any other lawsuit about the Released Claims in this Action against the NCAA or any of the Released Parties. Upon the Effective Date of the Settlement, Plaintiffs and each of the Released Parties shall release and be deemed to release and forever discharge and shall be forever enjoined from prosecuting the Released Claims against the Released Defendant Parties or Releasing Plaintiff Parties (collectively, "Released Parties" as defined in Settlement Agreement).

The capitalized terms used in this paragraph are defined in the Settlement Agreement, Preliminary Approval Order, or this Notice. For easy reference, certain of these terms are copied below:

**Released Defendant Parties.** "Released Defendant Party" or "Released Defendant Parties" or "Defendants' Released Persons" shall mean Defendant and its past or present officers, directors, trustees, employees, insurers, agents, committee members, member conferences, and member schools with any Division I sports program that designated a Class Member as a "volunteer coach" under the NCAA Bylaws during the Class Period in any Division I sport other than, or in addition to, Division I Baseball.

**Releasing Plaintiff Parties.** "Releasing Plaintiff Party" or "Releasing Plaintiff Parties" means Plaintiffs, all other Class Members who do not file valid requests for exclusion, Plaintiffs' Counsel, and their respective current and former officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, employees, and attorneys, in their capacities as such.

**Released Parties.** "Released Parties" shall mean Released Defendant Parties and Releasing Plaintiff Parties.

**Released Claims.** "Released Claims" shall mean any and all claims of the Releasing Plaintiff Parties or Released Defendant Parties that were asserted or could have been asserted against Released Defendant Parties or Releasing Plaintiff Parties for conduct during the Class Period arising out of the facts alleged in the Litigation, including for avoidance of doubt, any claim for unpaid wages, benefits, or bonuses, or any claim for damages for lost opportunities, interference with contract, or restraint of trade, or any other claim, known or unknown, as well as any claims involving the institution, prosecution, and the defense of the Litigation. Released Claims include any claims that were asserted or could have been asserted against Released Defendant Parties or Releasing Plaintiff Parties for conduct during the Class Period for compensation, benefits, penalties or any other recovery on the theory that Plaintiffs or Class Members who do not opt out of the Settlement were employees of, or contractors for, any Released Defendant Parties, and thus include claims under state and federal minimum wage laws, the federal Fair Labor Standards Act, state and local wage and hour statutes and laws, including any claims under the California Labor Code and California Labor Code section 2698 et seq. specifically as well as California Business & Professions Code section 17200 and equivalent statutes from other states that could have been asserted based on the facts alleged in the Litigation.

The Settlement Agreement describes the specific claims you will give up (or "release"), so read it carefully. The Settlement Agreement is available at www.NCAAVolunteerCoachLawsuit.com. If you have any questions, you can talk to the lawyers listed in Question ▢▢ for free, or you can talk to your own lawyer if you have questions about what this means.

### 18.     What If I Do Nothing?

You are automatically a member of the Class if you fit the Class description and you did not previously exclude yourself. However, if you do not submit a timely and valid Claim Form, you will not receive any payment from the Settlement. You will be bound by past and any future Court rulings, including rulings on the Settlement and release. Unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit, or be a part of any other lawsuit against NCAA or any of the other Released Parties on the basis of the Released Claims. Please *see* Question ▢▢▢ for a description of the Released Claims.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 19.     What If I Do Not Want To Be In The Class?

If you are a Class Member, do not want to remain in the Class, and do not want a payment from the Settlement, then you must take steps to exclude yourself from the Class. This is also sometimes referred to as "opting out" of a class. *See* Question ▢▢▢.

If you exclude yourself from the Class, you will be free to sue the NCAA or any of the other Released Parties on your own for the claims being resolved by the Settlement. However, you will not receive any money from the Settlement, and Class Counsel will no longer represent you with respect to any claims against the NCAA.

If you want to receive money from the Settlement, do not exclude yourself. You must file a Claim Form to receive any payment from the Settlement.

### 20.     How Do I Exclude Myself?

You can exclude yourself by sending a written "Request for Exclusion." You cannot exclude yourself by telephone or email. Your written Request for Exclusion must be sent by U.S. first class mail (or, if sent from outside the U.S., by a service that provides for guaranteed delivery within five (5) or fewer calendar days of mailing) or delivered so that it is received by **[DATE]**, to:

NCAA Volunteer Coaches Lawsuit - EXCLUSIONS
C/O A.B. Data, Ltd.
PO Box 173
Milwaukee, WI 53217

Your letter should include:
    (a) Your name, address, and telephone number

(b) A statement that you want to be excluded from the Class in *Ray v. NCAA*, No. 1:23-cv-00425 (E.D. Cal.)

(c) Documents, evidence or other proof sufficient to prove you are a Class Member and worked as a volunteer coach from March 17, 2019 to June 30, 2023, and

(d) Your signature (you must sign the letter).

If your Request for Exclusion does not include all of the required information, does not contain the proper signature, is sent to an address other than the one designated above, or is not received by [**DATE**], your request will be considered invalid and you will remain a Class Member bound by the Settlement, if approved.

If you submit a valid and timely Requests for Exclusion that meets the requirements above, you will be excluded from the Class and will have no rights under the Settlement, will not share in the distribution of the Net Settlement Fund, and will not be bound by the Settlement. You also will not be allowed to object to the Settlement or appear at the Fairness Hearing.

### 21.    If I Do Not Exclude Myself, Can I Sue the NCAA And The Other Released Parties For The Same Thing Later?

No. Unless you exclude yourself from this Class, you give up any right to sue the NCAA and the other Released Parties for the Released Claims that the Settlement resolves. If you decide to exclude yourself from this Class, your decision will apply to the NCAA and the other Released Parties.

### 22.    If I Exclude Myself, Can I Get Money From The Settlement?

No. You will not get any money from the Settlement if you exclude yourself now (or if you previously excluded yourself).

### 23.    If I Exclude Myself From The Settlement, Can I Still Object?

No. If you exclude yourself now (or if you previously excluded yourself), you are no longer a Class Member and may not object to any aspect of the Settlement.

### 24.    If I Excluded Myself From The Class Previously, Do I Need To Exclude Myself Again?

No. If you excluded yourself previously from the Class, you do not need to exclude yourself again.

### OBJECTING TO THE SETTLEMENT

### 25.    How Do I Tell The Court What I Think About The Settlement?

If you are a Class Member and you do not exclude yourself, you can tell the Court what you think about the Settlement. You can object to all or any part of the Settlement, Plan of Allocation, and/or request for Attorneys' Fees and Expenses, and any service awards for Class Representatives. You

can give reasons why you think the Court should approve them or not. The Court will consider your views.

If you want to object, you may enter an appearance in the Action, at your own expense, individually or through counsel of your own choice, by filing with the Clerk of the United States District Court for the District of Eastern District of California, Robert T. Matsui United States Courthouse, Room 4-200, 501 "I" Street, Sacramento, CA 95814 your notice of appearance and objection by _____, and sending copies of your notice of appearance and objection to Class Counsel and the NCAA's Counsel at the following addresses:

| Class Counsel: | NCAA's Counsel |
|---|---|
| Dennis Stewart<br>Gustafson Gluek PLLC<br>600 West Broadway, Suite 3300<br>San Diego, CA 92101<br><br>Robert J. Gralewski, Jr.,<br>Kirby McInerney LLP<br>1420 Kettner Blvd., Suite 100<br>San Diego, CA 92101<br><br>Michael Lieberman<br>Fairmark Partners, LLP<br>400 7th Street NW, Suite 304<br>Washington, DC 20004 | Carolyn Hoecker Luedtke<br>Munger Tolles & Olson LLP<br>560 Mission Street, 27th Floor<br>San Francisco, CA 94105<br>Carolyn.Luedtke@mto.com |

Any Class Member who does not enter an appearance will be represented by Class Counsel. If you choose to object, you must file a written objection.

You cannot object by telephone or email.

Your written objection must include:
> (a) The case name, *Ray v. NCAA*, No. 1:23-cv-00425 (E.D. Cal.);
> (b) Your name, address, email address;
> (c) Your lawyer's name and contact information (if you have one);
> (d) The reasons you object;
> (e) Documents, evidence or other proof sufficient to prove you are a Class Member and worked as a volunteer coach from March 17, 2019 to June 30, 2023;
> (f) A list of any witnesses, exhibits, or legal authority you want to present to the Court;
> (g) If you or your lawyer intend to appear at the Fairness Hearing;
> (h) A statement saying if your objection applies only to the you, to a part of the Class, or to the entire Class; and
> (i) a list of all class action settlements to which you and your lawyer have previously objected.

QUESTIONS? CALL (877) 390-3148 OR VISIT www.NCAAVolunteerCoachLawsuit.com

If you do not timely and validly submit your objection, your views may not be considered by the Court or any court on appeal.

### 26.    If I Object To The Settlement, Can I Still File A Claim?

Yes. You may file a claim even if you object to, or comment on, the Settlement.

### 27.    What Is The Difference Between Objecting And Excluding Myself?

Objecting is telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you remain a Class Member and do not exclude yourself from the Class. Excluding yourself from the Class is telling the Court that you do not want to be a part of the Class. If you exclude yourself, you have no right to object to the Settlement because it no longer affects you.

### THE LAWYERS REPRESENTING YOU

### 28.    Do I Have A Lawyer In This Case?

Yes. The Court has appointed the lawyers listed below to represent you and the other Class Members in this Action:

| | | |
|---|---|---|
| Dennis Stewart | Robert J. Gralewski, Jr., | Michael Lieberman |
| Gustafson Gluek PLLC | Kirby McInerney LLP | Fairmark Partners, LLP |
| 600 West Broadway | 1420 Kettner Blvd., Suite 100 | 400 7th Street NW, Suite 304 |
| Suite 3300 | San Diego, CA 92101 | Washington, DC 20004 |
| San Diego, CA 92101 | BGralewski@kmllp.com | michael@fairmarklaw.com |
| dstewart@gustafsongluek.com | | |

These lawyers are called Class Counsel. Class Counsel may apply to the Court for payment of attorneys' fees and litigation expenses and costs from the Settlement Fund. You will not otherwise be charged for Class Counsel's services. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 29.    How Will The Lawyers Be Paid?

To date, Class Counsel have not been paid any attorneys' fees or reimbursed for any out-of-pocket costs. Any attorneys' fees and litigation expenses and costs will be awarded only as approved by the Court in amounts determined to be fair and reasonable. The Settlement provides that Class Counsel may apply to the Court for an award of attorneys' fees and litigation expenses and costs out of the Settlement Fund. Prior to the Fairness Hearing, Class Counsel will move for an award of no more than 30% of the Settlement Fund, plus payment of court-approved litigation expenses

and costs up to $_____, plus interest. Class Representatives may also seek service awards from the Settlement Fund of up to $25,000 per class representative ($125,000 total).

This is only a summary of the request for attorneys' fees and litigation expenses and costs. Any motions in support of the requests will be available for viewing on the Settlement Website after they are filed by _____. If you wish to review the motion papers, you may do so by viewing them at the Settlement Website, www.NCAAVolunteerCoachLawsuit.com.

The Court will consider the motion for attorneys' fees and litigation expenses and costs at or after the Fairness Hearing.

## THE COURT'S FAIRNESS HEARING

**30.    When And Where Will The Court Decide Whether To Approve The Settlement?**

The Court will hold the Fairness Hearing on **[DATE]**, at **[TIME]**, at the United States District Court for the for the Eastern District of California, at the Robert T. Matsui United States Courthouse, Courtroom 5, 14th floor, located at 501 I Street, Sacramento, CA 95814. The Fairness Hearing may be moved to a different date or time without notice to you; any changes to the date and time of the Fairness Hearing will be posted to the Settlement Website.

At the Fairness Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider whether to approve the Plan of Allocation and requests for attorneys' fees, litigation expenses and costs, and any service awards for Class Representatives. If there are any objections, the Court will consider them at this time and may listen to people who have asked to speak at the hearing. We do not know how long the Fairness Hearing will take or when the Court will make its decision. The Court's decision may be appealed.

**31.    Do I Have To Come To The Fairness Hearing?**

No. Class Counsel will answer any questions the Court may have. You are, however, welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you file and serve your written objection on time, the Court will consider it. You may also hire your own lawyer to attend, but you are not required to do so.

**32.    May I Speak At The Fairness Hearing?**

Yes. You may ask the Court for permission to speak at the Fairness Hearing. If you want to appear at the Fairness Hearing, you may enter an appearance in the Action at your own expense, individually, or through counsel of your own choice, by filing with the Clerk of Court your notice of appearance and objection, and sending copies to Class Counsel and NCAA's Counsel at the addresses in Question 24, so they are received no later than **[DATE]**, or as the Court may otherwise direct. Any Class Member who does not enter an appearance will be represented by Class Counsel. You cannot request to speak at the Fairness Hearing by telephone or email unless the Fairness Hearing is conducted remotely.

QUESTIONS? CALL (877) 390-3148 OR VISIT www.NCAAVolunteerCoachLawsuit.com

## GETTING MORE INFORMATION

### 33.     How Do I Get More Information?

The Court has appointed [Claims Administrator] as the Claims Administrator. Among other things, the Claims Administrator is responsible for providing this Notice of the Settlement and processing Claim Forms.

This Notice summarizes the Settlement Agreement. More details are in the Settlement Agreement and Plan of Allocation, which are available for your review at the Settlement Website, www.NCAAVolunteerCoachLawsuit.com. The Settlement Website also has answers to common questions about the Settlement, Claim Form, and other information to help you determine whether you are a Class Member and whether you are eligible for a payment. You may also call toll-free 1-877-xxx-xxxx (if calling from outside the United States or Canada, call 1-414-xxx-xxxx) or write to the Settlement Administrator at:

NCAA Volunteer Coaches Lawsuit
C/O A.B. Data, Ltd.
PO Box 173059
Milwaukee, WI 53217
Tel: (877) 390-3148
Email: info@ncaavolunteercoachlawsuit.com
Website: www.NCAAVolunteerCoachLawsuit.com

If this Notice reached you at an address other than the one on the mailing label, or if your address changes, please enter your current information online at the Settlement Website or send it to the Settlement Administrator at the address above in case the Settlement Administrator needs to contact you.

*****Please do not contact the Court or the Clerk's Office regarding this Notice or for additional information.*****

DATED: _____, 2025                    BY ORDER OF THE COURT

# EXHIBIT D

*RAY V. NCAA*, NO. 1:23-CV-00425 (E.D. CAL.)

**PROOF OF CLAIM AND RELEASE FORM ("CLAIM FORM")**

**INSTRUCTIONS FOR SUBMITTING A CLAIM FORM IN THE
RAY V. NCAA VOLUNTEER COACH SETTLEMENT**

You may be eligible to receive a cash payment if, at any time between March 17, 2019 to June 30, 2023, you worked for a National Collegiate Athletic Association ("NCAA") Division I sports program other than baseball in the position of "volunteer coach," as designated by NCAA bylaws (the "Class").

**You must submit a Claim Form to participate in this Settlement**
The easiest way to file a Claim is online at
**www.NCAAVolunteerCoachLawsuit.com**

*IF YOU RECEIVED A NOTICE WITH A CLAIM ID:* Please go to the settlement website at **www.NCAAVolunteerCoachLawsuit.com** to input your unique claim ID and Identification Number from the postcard you received in the mail. The information we obtained from your school will auto populate. If the auto-populated information is correct, you should so indicate and then complete, sign, and submit this Claim Form. If you believe that your auto-populated information is incorrect and want to dispute it, you should complete and submit all Sections of this Claim Form and submit any supporting materials.

*IF YOU DID NOT RECEIVE A CLAIM ID:* If you believe you are a member of the Class but you did NOT receive a notice with your unique claim ID and Identification Number, you should complete and submit a Claim Form if you want to make a claim. The easiest way to do so is online at **www.NCAAVolunteerCoachLawsuit.com**.

***FOR ALL CLASS MEMBERS:* You must sign and submit a Claim Form to participate in this Settlement.** You must submit your Claim Form (and any supporting materials) online at www.NCAAVolunteerCoachLawsuit.com or by email to info@NCAAVolunteerCoachLawsuit.com on or before <mark>MONTH DAY</mark>, 2026, or it will not be considered. You may also submit your Claim Form (and any supporting materials) by mail, *postmarked* on or before <mark>MONTH DAY</mark>, 2026 to the below address, or it will not be considered:

Questions? Call: 1-877-390-3148,
Email: info@NCAAVolunteerCoachLawsuit.com, or
Visit www.NCAAVolunteerCoachLawsuit.com

*Ray v. NCAA Volunteer Coach Settlement*
c/o A.B. Data, Ltd.
P.O. Box 173059
Milwaukee, WI 53217

Approved members of the Class who sign and submit timely Claim Forms will be entitled to a share of the net Settlement Fund. The actual dollar amount of your claim payment will depend on, among other things: the school, sport, and year(s) in which you worked; how many members of the Class submit approved claim forms; how much interest the Settlement Fund accrues during the pendency of the claims process; the amount of court-approved deductions from the gross settlement fund; and whether additional data about unknown Class Members becomes available for use in the allocation. If a member of the Class would have been allocated less than $5,000, he or she will be allocated $5,000.

There is a Court-approved Plan of Allocation providing for distribution of the net Settlement Fund. The Plan of Allocation and other important documents are available at **www.NCAAVolunteerCoachLawsuit.com**.

---

## SECTION A: CLASS MEMBER INFORMATION

---

Please complete the form below with the most up-to-date information.

If you have a unique claim ID and Identification Number, please enter that information here: Claim ID _____ Identification Number_____.

| Your Full Legal Name: |
| --- |

| Current Mailing Address Line One: |
| --- |

| Current Mailing Address Line Two (if applicable): |
| --- |

| City: | State: | Zip Code: |
| --- | --- | --- |

Questions? Call: 1-877-390-3148,
Email: info@NCAAVolunteerCoachLawsuit.com, or
Visit www.NCAAVolunteerCoachLawsuit.com

| | | |
|---|---|---|
| Email: | Date of Birth: | Phone Number: |

*IF YOU HAVE A UNIQUE CLAIM ID:* Please go to the settlement website at **www.NCAAVolunteerCoachLawsuit.com** to input your unique claim ID and Identification Number from the postcard you received in the mail or by email. The information we obtained from your school will auto populate. Please review this information. **If the auto-populated information is correct, please skip Section B (below) and complete Sections C and D.**

---

**SECTION B: WORK HISTORY AND SUPPORTING DOCUMENTS**

---

## I.  WORK HISTORY

If you have a unique claim ID and Identification Number, you reviewed the auto-populated information, and you believe the information is correct, please skip this Section B and complete Sections C and D below.

If you believe the auto-populated information is incorrect and you want to dispute it, OR if you believe you are a member of the Class but you did not receive a unique claim ID, you **must** complete the form below.

Please indicate all periods of time in which you performed any work as a volunteer coach. Note: Only dates of employment during the Class Period (March 17, 2019 to June 30, 2023) are relevant to this Settlement and will be considered.

Please complete the information requested below:

| |
|---|
| School: [dropdown list with school names] |
| Sport: [dropdown list with sport options] |
| Dates of Volunteer Coaching: [checkboxes with options] |

Questions? Call: 1-877-390-3148,
Email: info@NCAAVolunteerCoachLawsuit.com, or
Visit www.NCAAVolunteerCoachLawsuit.com

| |
|---|
| Explanation of disputed information, if applicable: |
| Witness Who Can Verify Your Dates of Volunteer Coaching (Name and Job Title): |
| Contact Information of Witness: |

## II.    SUPPORTING DOCUMENTS

**You are encouraged to provide documents to support the information you provided above.** If you submit a claim without providing any supporting documents or materials, we cannot guarantee you will get any payment from the Settlement.

Please review the following lists of acceptable materials. This documentation will be used to verify that you served as a Volunteer Coach at the identified school and confirm your approximate dates of service. You may be able to contact your school directly to get documentation.

Please provide primary sources to support your claim whenever possible. Secondary sources may also be accepted if you cannot provide primary documentation.

**Potential Primary Sources:**

**Official school or athletic department records**
- Appointment letters, offer or onboarding emails, or signed volunteer coach agreements.
- Rosters or staff listings (e.g., team websites, yearbooks, media guides) showing your name and role as a volunteer coach.
- Payroll or human resource records showing your volunteer coach role.

Questions? Call: 1-877-390-3148,
Email: info@NCAAVolunteerCoachLawsuit.com, or
Visit www.NCAAVolunteerCoachLawsuit.com

- Signed acknowledgments or background check confirmations from NCAA, your school, or your school's conference, with reference to your position as a volunteer coach.

**Contemporaneous correspondence with the college**

- Emails between you and athletic department officials, coaches, or administrators referencing your volunteer role.
- Letters of recommendation or an evaluation from the head coach or athletic director referencing your service dates.

**Official identification ("ID") or credentialing records**

- School-issued ID cards, facility access passes, or parking permits identifying you as a "coach" or "volunteer".
- NCAA or conference registration, compliance, or certification records where you are listed.

**Potential Secondary Sources:**

**Contemporaneous media or publications**

- Team programs, yearbooks, game-day rosters, or local newspaper articles listing or mentioning you as a volunteer coach, by name.
- Archived webpages (via Wayback Machine or similar).

**Photographs or video evidence**

- Photos showing you participating in practices, games, or events in an identifiable capacity as a coach.
- Photos must include context (e.g., team uniforms, signage, or recognizable individuals).

**Statements or declarations from others**

- Signed statements from former players, other coaches, or athletic department staff attesting to your volunteer role and timeframe (or your service dates).

**Sworn declaration or affidavit**

- Statement under penalty of perjury by a corroborating witness (e.g., head coach or athletic staff member) describing your role.

The Claims Administrator and Class Counsel reserve the right to determine if the materials you submit are sufficient proof. If you do not provide adequate supporting documents, your claim may be rejected.

---

**SECTION C: PAYMENT, TAX CERTIFICATIONS & SUBSTITUTE FORM W-9**

---

## I.    PAYMENT INFORMATION

In the following table, please identify how you prefer to receive your distribution (for example, by ACH or mailed check) and provide applicable instructions:

Questions? Call: 1-877-390-3148,
Email: info@NCAAVolunteerCoachLawsuit.com, or
Visit www.NCAAVolunteerCoachLawsuit.com

| ☐ ACH (direct deposit) | ☐ Mail payment to address provided above |
|---|---|
| Payment instructions for ACH:<br><br>Bank Name:_____<br><br>Routing Number:_____<br><br>Account Name:_____<br><br>Account Number:_____<br><br> | |

## II.    TAX CERTIFICATIONS & SUBSTITUTE FORM W-9

### Substitute IRS Form W-9

Taxpayer Identification Number Certification

**Social Security Number (SSN)/Individual Taxpayer Identification Number (ITIN):**

_____  --   _____  --   _____

**Print your name as it appears on your federal income tax return**
(First Name and Last Name)**:**

_____

Under penalties of perjury, I certify that:

1.    The number shown on this form is my correct Social Security Number or Taxpayer Identification Number; and
2.    I am not subject to backup withholding because: (a) I have never been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (b) I am exempt from backup withholding, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3.    I am a U.S. citizen or other U.S. person (including a U.S. resident alien).

Questions? Call: 1-877-390-3148,
Email: info@NCAAVolunteerCoachLawsuit.com, or
Visit www.NCAAVolunteerCoachLawsuit.com

Note: If you have been notified by the IRS that you are subject to backup withholding, you must cross out item 2 above.

---

**SECTION D: YOU MUST SIGN YOUR PROOF OF CLAIM FORM**

---

YOU MUST READ AND SIGN THE ACKNOWLEDGEMENT BELOW. IF YOU DO NOT SIGN THE PROOF OF CLAIM FORM, YOUR CLAIM MAY BE DELAYED OR REJECTED.

By signing below:

(1) I certify that the above and foregoing information is true and correct;

(2) I certify that I am duly authorized and have the legal capacity to sign this Claim Form;

(3) I submit this Claim Form under the terms of the Settlement Agreement (which can be viewed on the Settlement Website at www.NCAAVolunteerCoachLawsuit.com and is described in the Notice of Class Action Settlement for this Action);

(4) I submit to the jurisdiction of the United States District Court for the Eastern District of California with respect to my claim as a member of the Class and for the purpose of enforcing the releases stated in the Settlement Agreement;

(5) I further acknowledge that I am bound by and subject to the terms of any judgment that may be entered in the Action; and

(6) I agree to provide additional information to the Claims Administrator to support this claim if I am asked to do so.

| Claimant Name: |
| --- |
| Signature of Claimant: |
| Date: |

Questions? Call: 1-877-390-3148,
Email: info@NCAAVolunteerCoachLawsuit.com, or
Visit www.NCAAVolunteerCoachLawsuit.com

# EXHIBIT E





# EXHIBIT F



**People Doing Business With People**

**Talent. Technology.  Experience.**

A.B. Data, Ltd. | Class Action Administration Company

600 A.B. Data Drive | Milwaukee, WI 53217

## Notice and Claims Administration Estimate

| | |
|---|---|
| Case: | *Ray, et al. v. Nat'l Collegiate Athletic Association* |
| RFP Number: | 3111 |
| Date: | November 10, 2025 |

## Cost Summary

| ADMINISTRATION PHASE | ESTIMATED COST |
|---|---|
| Direct Notice | $18,923.88 |
| Media Notice | $119,000.00 |
| Claims Processing | $15,722.27 |
| Contact Center | $18,351.30 |
| Fund Distribution | $14,725.30 |
| Project Management and Reporting | $45,525.00 |
| Postage and Other Expenses | $15,066.04 |
| **TOTAL ESTIMATED COST** | **$247,313.79** |

| ADDITIONAL DISTRIBUTIONS (3) | $120,000-$180,000 |
|---|---|