UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| SHANNON RAY, KHALA TAYLOR, PETER ROBINSON, KATHERINE SEBBANE, and RUDY BARAJAS, Individually and on Behalf of All Those Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, an unincorporated association,<br><br>Defendant. | No. 1:23-cv-00425<br><br>MEMORANDUM AND ORDER RE: PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |

----oo0oo----

Plaintiffs Shannon Ray, Khala Taylor, Peter Robinson, Katherine Sebbane, and Rudy Barajas brought this putative class action against defendant National Collegiate Athletic Association ("NCAA"), alleging violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. (Second Am. Compl. (Docket No. 84).) Plaintiffs have filed an unopposed motion for preliminary approval of class action settlement. (Docket No. 159.)

1

I.   Background and Proposed Settlement

This is one of two related cases assigned to this court involving antitrust challenges to a since-repealed NCAA bylaw barring "volunteer coaches" from receiving pay.  The related case, Smart v. Nat'l Collegiate Athletic Ass'n, No. 2-22-cv-02125 WBS CSL, 2025 WL 2651800 (E.D. Cal. Sept. 16, 2025), recently ended in settlement.

The court previously granted plaintiffs' motion to certify a class in this action, which consists of "[a]ll persons who from March 17, 2019, to June 30, 2023, worked for an NCAA Division I sports program other than baseball in the position of 'volunteer coach,' as designated by NCAA bylaws."  (Docket No. 128 at 27.)  Plaintiffs now estimate the class has approximately 7,718 members.  (Docket No. 159 at 8.)

The parties propose a gross settlement amount of $303,000,000, to be paid in three separate installments of $101,000,000 into a common fund over the course of two calendar years.  (See Plan of Allocation (Docket No. 159-1 ¶ 2).)  Amounts paid to class members "will be determined by the school, sport, and year in which he or she worked."  (Docket No. 159 at 15.)  More specifically, plaintiffs' expert Dr. Ashenfelter "will calculate a Recognized Loss for each six-month period coached by a Class Member . . . based on the wages paid to the team's lowest-paid coach during that period who was not designated as a 'Volunteer Coach,'" and then incorporate a "stepdown" to account for the fact that class member coaching positions were "lower in the hierarchy than [their] reference coach."  (Id. at 16; Plan of Allocation ¶ 12.)  The resulting payment for each claimant will

2

1   be divided into three amounts corresponding with settlement
2   distributions.  (Id. at 12-13.)
3        Plaintiffs' counsel anticipates that attorneys' fees
4   will comprise up to 30% of the settlement fund.  (Docket No. 159
5   at 27.)  Plaintiffs further request service awards for the class
6   representatives in the amount of $25,000 each.  (Id. at 29.)
7   II.  Preliminary Approval of Class Action Settlements
8        Federal Rule of Civil Procedure 23(e) provides that
9   "[t]he claims, issues, or defenses of a certified class may be
10  settled . . . only with the court's approval."  Fed. R. Civ. P.
11  23(e).  This Order is the first step in that process and analyzes
12  only whether the proposed class action settlement deserves
13  preliminary approval.  See Murillo v. Pac. Gas & Elec. Co., 266
14  F.R.D. 468, 473 (E.D. Cal. 2010) (Shubb, J.).  Preliminary
15  approval authorizes the parties to give notice to putative class
16  members of the settlement agreement and lays the groundwork for a
17  future fairness hearing, at which the court will hear objections
18  to (1) the treatment of this litigation as a class action and (2)
19  the terms of the settlement.  See id.; Diaz v. Tr. Territory of
20  Pac. Islands, 876 F.2d 1401, 1408 (9th Cir. 1989).  The court
21  will reach a final determination as to whether the parties should
22  be allowed to settle the class action on their proposed terms
23  after that hearing.
24       A.   Class Certification and Notice
25       Having already certified a class under Rule 23, the
26  court must now "direct to class members the best notice that is
27  practicable under the circumstances, including individual notice
28  to all members who can be identified through reasonable effort."

3

Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2) governs both the form and content of a proposed notice. See Ravens v. Iftikar, 174 F.R.D. 651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 172-77 (1974)). Although that notice must be "reasonably certain to inform the absent members of the plaintiff class," actual notice is not required. Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994) (citation omitted).

Plaintiffs' counsel has provided the court with a proposed notice to be sent class members via email, First-Class Mail, and paid and earned media. (See Docket No. 159-3 at 4.) A dedicated website and toll-free telephone number will serve as additional resources. (Id.) The proposed notices explain the proceedings, define the scope of the class, and explain what the settlement provides and the minimum amount each class member can expect to receive in compensation. (See id. at 20-25.) The notices further explain the opt-out procedure, the procedure for objecting to the settlement, and the date and location of the final approval hearing. (See id.) The content of the notices therefore satisfies Rule 23(c)(2)(B). See Fed. R. Civ. P. 23(c)(2)(B); Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'") (quoting Mendoza v. Tucson Sch. Dist. No. 1, 623 F.2d 1338, 1352 (9th Cir. 1980)).

The parties have selected A.B. Data, Ltd.'s Class Action Administration Company ("A.B. Data") to serve as the Settlement Administrator. (Declaration of Elaine Pang ("Pang

1  Decl." (Docket No. 159-3) ¶ 4.)  Pursuant to the notice plan, the
2  Settlement Administrator will effectuate direct notice to each
3  class member using a provided list of available names, schools,
4  sports, email addresses, and/or mailing addresses for known class
5  members.  (See id. ¶ 10.)  Further, the Settlement Administrator
6  will establish a website and toll-free phone number, which will
7  be referred to in the mail and email notices, to supplement
8  direct notice and provide further information about the
9  settlement to class members.  (See id. ¶¶ 11-14.)  The proposed
10 notice procedures appear "reasonably calculated, under all the
11 circumstances," to apprise all class members of the proposed
12 settlement.  See Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035,
13 1045-46 (9th Cir. 2019).

14         B.   Terms of the Settlement

15         The court must next determine whether the terms of the
16 parties' settlement appear fair, adequate, and reasonable.  See
17 Fed. R. Civ. P. 23(e)(2); Hanlon v. Chrysler Corp., 150 F.3d
18 1011, 1026 (9th Cir. 1998).  This process requires the court to
19 "balance a number of factors," including "the strength of the
20 plaintiff's case; the risk, expense, complexity, and likely
21 duration of further litigation; the risk of maintaining class
22 action status throughout the trial; the amount offered in
23 settlement; the extent of discovery completed and the stage of
24 the proceedings; the experience and views of counsel; the
25 presence of a governmental participant; and the reaction of the
26 class members to the proposed settlement."  Hanlon, 150 F.3d at
27 1026.
28         Because some of these factors cannot be considered

1  until the final fairness hearing, at the preliminary approval
2  stage "the court need only determine whether the proposed
3  settlement is within the range of possible approval," Murillo,
4  266 F.R.D. at 479 (quoting Gautreaux v. Pierce, 690 F.2d 616, 621
5  n.3 (7th Cir. 1982)), and resolve any "glaring deficiencies" in
6  the settlement agreement before authorizing notice to class
7  members, Ontiveros, No. 2:08-567 WBS DAD, 2014 WL 3057506, at *12
8  (E.D. Cal. July 7, 2014) (citing Murillo, 266 F.R.D. at 478).
9  This generally requires consideration of "whether the proposed
10 settlement discloses grounds to doubt its fairness or other
11 obvious deficiencies, such as unduly preferential treatment of
12 class representatives or segments of the class, or excessive
13 compensation of attorneys."  Murillo, 266 F.R.D. at 479 (quoting
14 West v. Circle K Stores, Inc., 04-cv-438 WBS GGH, 2006 WL
15 1652598, at *11-12 (E.D. Cal. June 13, 2006)).

16         Courts often begin by examining the process that led to
17 the settlement's terms to ensure that those terms are "the result
18 of vigorous, arms-length bargaining" and then turn to the
19 substantive terms of the agreement.  See, e.g., Murillo, 266
20 F.R.D. at 479-80; Circle K, 2006 WL 1652598, at *11-12; In re
21 Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal.
22 2007) ("[P]reliminary approval of a settlement has both a
23 procedural and a substantive component.").

24         1.   Negotiation of the Settlement Agreement
25         This action was filed in 2023.  (Docket No. 1.)  The
26 court disposed of NCAA's motions to dismiss and transfer venue in
27 2023.  (Docket No. 38.)  The parties attempted mediation in
28 summer 2024 but were unsuccessful in reaching a settlement at

1  that time.  (Joint Declaration (Docket No. 159-1 ¶ 28.)
2  Following additional litigation, including discovery motions,
3  class certification proceedings, a petition for appeal, and
4  filings on motions for partial summary judgment, the parties
5  resumed settlement discussions in September 2025.  (Docket No.
6  159 at 20.)  These discussions involved almost daily exchanges of
7  proposals over ten days and were informed by the extensive
8  litigation up to that point. (Id.)  The parties agreed to request
9  a continuance of the impending hearing on plaintiffs' motion for
10 summary judgment and engaged another professional mediator.
11 (Id.)  Follow further exchange of memoranda and a full-day
12 mediation on October 10, 2025, the parties reached a settlement.
13 (Id.)
14        Given the extensive discovery and litigation conducted
15 prior to settlement and counsel's representation that the
16 settlement was the product of arms-length bargaining, the court
17 at this stage does not question that the proposed settlement is
18 the result of informed and non-collusive negotiations between the
19 parties.
20        2.   Amount Recovered and Distribution
21        In determining whether a settlement agreement is
22 substantively fair to the class, the court must balance the value
23 of expected recovery against the value of the settlement offer.
24 See Tableware, 484 F. Supp. 2d at 1080.  This inquiry may involve
25 consideration of the uncertainty class members would face if the
26 case were litigated to trial.  See Ontiveros, 2014 WL 3057506, at
27 *14.
28        "In determining whether the amount offered in

settlement is fair, the Ninth Circuit has suggested that the Court compare the settlement amount to the parties' 'estimates of the maximum amount of damages recoverable in a successful litigation.'" Litty v. Merrill Lynch & Co., No. 14-cv-0425 PA PJW, 2015 WL 4698475, at *9 (C.D. Cal. Apr. 27, 2015) (quoting In re: Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000)); see also Almanzar v. Home Depot U.S.A., Inc., No. 2:20-cv-0699 KJN, 2022 WL 2817435, at *11 (E.D. Cal. July 19, 2022) (citing Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 964 (9th Cir. 2009)) ("In determining whether the amount offered is fair and reasonable, courts compare the proposed settlement to the best possible outcome for the class.")

   Plaintiffs' expert has calculated the total damages suffered by class members to be $299,600,000. (Dr. Ashenfelter Declaration ("Ashenfelter Decl.") (Docket No. 159-2) ¶ 9.) The gross settlement amount of $303,000,000 represents over 100% of estimated damages to the class. This is an exceptional result for the class and is comfortably within the range of percentage recoveries that California courts have found to be reasonable. See Cavazos v. Salas Concrete, Inc., No. 1:19-cv-00062 DAD EPG, 2022 WL 2918361, at *6 (E.D. Cal. July 25, 2022) (collecting cases). Based on these figures, the average payment per class member is $39,260 before allowed fees and expenses. (Docket No. 159 at 9.) This five-figure payout also represents a strong result for the class.

   Plaintiffs faced numerous risks in this complex antitrust litigation, including proving all elements of the claims, obtaining and maintaining class certification,

8

establishing liability, and the costliness of litigation and potential appeals on these issues.  In light of the risks associated with further litigation and the strength of the settlement terms, the court finds that the value of the settlement is within the range of possible approval such that preliminary approval of the settlement is appropriate.  The court further finds the method of processing class member claims to be adequate, as each class member's share of the settlement will be calculated on an individual basis by plaintiffs' expert based on factors including school, sport, and length of employment.

### 3. Attorney's Fees

If a negotiated class action settlement includes an award of attorney's fees, that fee award must be evaluated in the overall context of the settlement.  Knisley v. Network Assocs., 312 F.3d 1123, 1126 (9th Cir. 2002); Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013) (England, J.). The court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

Plaintiffs' counsel will seek fees in an amount not to exceed 30% of the gross settlement amount.  (Docket No. 159 at 27.)  Counsel plans to file a fee petition contemporaneously with its motion for final approval which will provide details regarding expenses incurred and fees sought.  (Id.)  In deciding the attorney's fees motion, the court will have the opportunity to assess whether the requested fee award is reasonable by multiplying a reasonable hourly rate by the number of hours

9

1  counsel reasonably expended.  See Van Gerwen v. Gurantee Mut.
2  Life. Co., 214 F.3d 1041, 1045 (9th Cir. 2000).  As part of this
3  lodestar calculation, the court may consider factors such as the
4  "degree of success" or "results obtained" by plaintiffs' counsel.
5  See Cunningham v. Cnty. of L.A., 879 F.2d 481, 488 (9th Cir.
6  1988).  If the court, in ruling on the fees motion, finds that
7  the amount of the settlement warrants a fee award at a rate lower
8  than what plaintiffs' counsel requests, then it will reduce the
9  award accordingly.  The court will therefore not evaluate the fee
10 award here in considering whether the settlement is adequate.

    4. Service Awards for Class Representatives

12   "[A]wards that are intended to compensate class
13 representatives for work undertaken on behalf of a class are
14 fairly typical in class action cases."  In re Online DVD-Rental
15 Antitrust Litig., 779 F. 3d 934, 943 (9th Cir. 2015) (internal
16 citations and quotation marks omitted).  Class counsel plans to
17 request service awards for the class representatives in the
18 amount of $25,000 each, for a total of $125,000.  (Docket No. 159
19 at 29.)

20   "Several courts in this District have indicated that
21 incentive payments of $10,000 or $25,000 are quite high and/or
22 that, as a general matter, $5,000 is a reasonable amount."
23 Harris v. Vector Marketing Corp., No. C-08-5198 EMC, 2012 WL
24 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting cases).  In
25 justifying their request, class counsel provides some detail of
26 the class representatives' efforts in this action, including
27 consulting with counsel on numerous occasions about their
28 experience as college coaches, case strategy, and discovery, as

10

1  well as responding to interrogatories and sitting for
2  depositions.  (Id.)  The court notes, however, that counsel has
3  not identified specific reasons for why five individuals were
4  needed for these efforts.
5       In light of the unusually high amount of the service
6  award requested, and the number of class representatives listed,
7  counsel is advised to provide a more substantial report in their
8  motion for final approval of the class representatives'
9  contributions to this action meriting the requested award
10 amounts, which should also explain the necessity for having five
11 representatives.
12      IT IS THEREFORE ORDERED that plaintiffs' motion for
13 preliminary approval of the class action settlement (Docket No.
14 159) be, and the same hereby is, GRANTED.
15      IT IS FURTHER ORDERED THAT:
16    (1) The proposed settlement is preliminarily approved as
17 fair, just, reasonable, and adequate to the members of the
18 settlement class, subject to further consideration at the final
19 fairness hearing after distribution of notice to members of the
20 settlement class;
21    (2) A.B. Data is appointed as the Settlement Administrator;
22    (3) The form and content of the proposed Notices of Class
23 Action Settlement (Docket No. 159-3 at 3-14) are approved, except
24 to the extent that they must be updated to reflect the dates and
25 deadlines specified in this Order and other information such as
26 website addresses and phone numbers;
27    (4) no later than seven (7) calendar days from the date this
28 Order is signed, counsel shall provide the Settlement

11

1 Administrator with the class members' names, physical mailing
2 addresses, telephone numbers, email addresses, and any other
3 information pertinent to the administration of the Settlement, if
4 they have not done so already;

5     (5) no later than fourteen (14) calendar days from the date
6 this Order is signed, the Settlement Administrator shall send a
7 Notice of Class Action Settlement to all members of the
8 settlement class via first class mail and email.  If a Notice is
9 returned to the Settlement Administrator with a forwarding
10 address, the Settlement Administrator will re-send the Notice to
11 the forwarding address.  If no forwarding address is provided,
12 the Settlement Administrator will attempt to locate a more
13 current address within three (3) business days of receipt of the
14 returned mail;

15     (6) no later than sixty (60) days from the date Settlement
16 Administrator mails the Notice of Class Action Settlement, though
17 in the case of a re-mailed notice the deadline will be extended
18 by fifteen (15) days, any member of the settlement class who
19 intends to object to, comment upon, or opt out of the settlement
20 shall provide written notice of that intent pursuant to the
21 instructions in the Notice of Class Action Settlement;

22     (7) A final fairness hearing shall be set to occur before
23 this Court on **May 11, 2026 at 1:30 p.m.** in Courtroom 5 of the
24 Robert T. Matsui United States Courthouse, 501 I Street,
25 Sacramento, California, to determine whether the proposed
26 settlement is fair, reasonable, and adequate and should be
27 approved by this court; whether the settlement class's claims
28 should be dismissed with prejudice and judgment entered upon

final approval of the settlement; whether final class certification is appropriate; and to consider class counsel's applications for attorney's fees, costs, and incentive awards for the class representatives. The court may continue the final fairness hearing without further notice to the members of the class;

(8) no later than thirty-five (35) days before the final fairness hearing, class counsel shall file with this court a petition for an award of attorney's fees and costs.  Any objections or responses to the petition shall be filed no later than twenty-one (21) days before the final fairness hearing. Class counsel may file a reply to any objections no later than fourteen (14) days before the final fairness hearing;

(9) no later than thirty-five (35) days before the final fairness hearing, class counsel shall file and serve upon the court and defendant's counsel all papers in support of the settlement, the incentive awards for the class representatives, and any award for attorney's fees and costs;

(10) no later than thirty-five (35) days before the final fairness hearing, the Settlement Administrator shall prepare, and class counsel shall file and serve upon the court and defendant's counsel, a declaration setting forth the services rendered, proof of mailing, a list of all class members who have opted out of the settlement, and a list of all class members who have commented upon or objected to the settlement;

(11) any person who has standing to object to the terms of the proposed settlement may appear at the final fairness hearing (themselves or through counsel) and be heard to the extent

13

1  allowed by the court in support of, or in opposition to, (a) the
2  fairness, reasonableness, and adequacy of the proposed
3  settlement, (b) the requested award of attorney's fees,
4  reimbursement of costs, and incentive award to the class
5  representative, and/or (c) the propriety of class certification.
6  To be heard in opposition at the final fairness hearing, a person
7  must, no later than sixty (60) days from the date the Settlement
8  Administrator mails the Notice of Class Action Settlement, (a)
9  serve by hand or through the mails written notice of his or her
10 intention to appear, stating the name and case number of this
11 action and each objection and the basis therefore, together with
12 copies of any papers and briefs, upon class counsel and counsel
13 for defendant, and (b) file said appearance, objections, papers,
14 and briefs with the court, together with proof of service of all
15 such documents upon counsel for the parties.
16           Responses to any such objections shall be served by
17 hand or through the mails on the objectors, or on the objector's
18 counsel if there is any, and filed with the court no later than
19 fourteen (14) calendar days before the final fairness hearing.
20 Objectors may file optional replies no later than seven (7)
21 calendar days before the final fairness hearing in the same
22 manner described above.  Any settlement class member who does not
23 make his or her objection in the manner provided herein shall be
24 deemed to have waived such objection and shall forever be
25 foreclosed from objecting to the fairness or adequacy of the
26 proposed settlement, the judgment entered, and the award of
27 attorney's fees, costs, and incentive awards to the class
28 representatives unless otherwise ordered by the court;

(12) pending final determination of whether the settlement should be ultimately approved, the court preliminarily enjoins all class members (unless and until the class member has submitted a timely and valid request for exclusion) from filing or prosecuting any claims, suits, or administrative proceedings regarding claims to be released by the settlement.

Dated:   January 6, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE