Dennis Stewart, CA Bar No. 99152
**GUSTAFSON GLUEK PLLC**
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone: (612) 333-8844

Daniel E. Gustafson, MN Bar No. 202241
Anthony J. Stauber, MN Bar No. 401093
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844

Darryl J. Horrowitt, CA Bar No. 100898
**COLEMAN & HOROWITT, LLP**
499 West Shaw, Suite 116
Fresno, CA 93704
Telephone: (559) 248-4820

Robert J. Gralewski, Jr., CA Bar No. 196410
Marko Radisavljevic, CA Bar No. 306552
**KIRBY McINERNEY LLP**
1420 Kettner Boulevard, Suite 100
San Diego, CA 92101
Telephone: (858) 834-2044

Leonard B. Simon, CA Bar No. 58310
**THE LAW OFFICES OF LEONARD B. SIMON P.C.**
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 818-0644

Michael D. Lieberman, DC Bar No. 1033827
Jamie Crooks, CA Bar No. 310447
Yinka Onayemi, NY Bar No. 5940614
Michael Goldberg, MA Bar No. 709203
**FAIRMARK PARTNERS, LLP**
400 7th Street, Suite 304
Washington, DC 20004
Telephone: (818) 585-2903

*Attorneys for Plaintiffs Shannon Ray, Khala Taylor,*
*Peter Robinson, Katherine Sebbane, and Rudy Barajas,*
*Individually and on Behalf of All Those Similarly Situated*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SHANNON RAY, KHALA TAYLOR, PETER ROBINSON, KATHERINE SEBBANE, and RUDY BARAJAS, Individually and on Behalf of All Those Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, an unincorporated association,<br><br>Defendant. | Case No. 1:23-cv-00425 WBS CKS<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO ESTABLISH PROTOCOLS REGARDING THIRD-PARTY CLAIMS PURCHASERS**<br><br>Judge: Hon. William B. Shubb<br>Courtroom: 5, 14th Floor<br>Date: May 11, 2026<br>Time: 1:30 p.m. |

PLAINTIFFS' MOTION TO ESTABLISH PROTOCOLS REGARDING THIRD-PARTY
CLAIMS PURCHASERS

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 11, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable William B. Shubb, United States District Judge, in Courtroom 5 of the United States District Court for the Eastern District of California in Sacramento, California, Plaintiffs will, and hereby do, move the Court pursuant to Federal Rule of Civil Procedure 23, 28 U.S.C. § 1651, and this Court's inherent authority for entry of an Order establishing protocols regarding Third-Party Claims Purchasers in the event that the Court grants the motion for Final Approval. This motion is based on the Memorandum of Points and Authorities set forth below, the supporting Declaration of Dennis Stewart ("Stewart Decl."), and attached exhibits, all papers and records on file in this matter, and the arguments of counsel.

i

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ............................................................................................. i

TABLE OF AUTHORITIES ....................................................................................................... iii

INTRODUCTION ........................................................................................................................ 1

RELEVANT BACKGROUND .................................................................................................... 4

ARGUMENT ............................................................................................................................... 7

    A.    The Court has the authority to regulate communications between Class Members and Third-Party Claims Purchasers. ................................................................................................ 7

    B.    The Court and Class Counsel have a duty to protect the class and ensure that communications regarding proposed claim purchases are fair and that Class Members' decisions regarding a sale of their claims are fully informed. ................................................................................ 7

    C.    THERE ARE TAX RISKS AND ISSUES ASSOCIATED WITH THE SALE OF A CLASS MEMBER'S RIGHT TO RECEIVE SETTLEMENT FUNDS ................................................. 10

    D.    REQUESTED RELIEF ................................................................................................ 12

# TABLE OF AUTHORITIES

Cases                                                                                                                           Page(s)

*Allen v. Bedolla,*
   787 F.3d 1218 (9th Cir. 2015) ................................................................................................ 8

*Chalian v. CVS Pharmacy, Inc.,*
   No. 2:16-CV-8979-AB-AGR, 2020 WL 7347866 (C.D. Cal. Oct. 30, 2020) ............................ 7

*Gulf Oil Co. v. Bernard,*
   452 U.S. 89 (1981) ................................................................................................................. 7

*In re Cmty. Bank of N. Virginia,*
   418 F.3d 277 (3d Cir. 2005) .................................................................................................. 7

*In re Grand Jury Proceedings,*
   654 F.2d 268 (3d Cir. 1981) .................................................................................................. 8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
   No. 05-MD-1720, 2024 WL 3402883 (E.D.N.Y. July 13, 2024) ............................................ 7

*NFL Players' Concussion Injury Litig.,*
   923 F.3d 96 (3d Cir. 2019) .................................................................................................... 8

*O'Connor v. Uber Technologies, Inc.,*
   No. C-13-3826 EMC, 2014 WL 1760314 (N.D. Cal. May 2, 2014) ....................................... 8

*Retiree Support Grp. of Contra Costa Cty. v. Contra Costa Cty.,*
   No. 12-CV-00944-JST, 2016 WL 4080294 (N.D. Cal. July 29, 2016) ................................ 8, 9

*Stark v. Patreon, Inc.,*
   No. 22-CV-03131-JCS, 2025 WL 1592736 (N.D. Cal. June 5, 2025) ................................ 8, 10

*Symetra,*
   775 F.3d (5th Cir. 2014) ........................................................................................................ 9

*Symetra Life Ins. Co. v. Rapid Settlements, Ltd.,*
   599 F. Supp. 2d 809 (S.D. Tex. 2008) ................................................................................... 9

*White v. Symetra Assigned Benefits Serv. Co.,*
   104 F.4th 1182 (9th Cir. 2024) ......................................................................................... 9, 10

**Statutes**

28 U.S.C. § 1651 ....................................................................................................................... 8

Cal. Ins. Code § 10139.5(b) ..................................................................................................... 10

**Rules**

Federal Rule of Civil Procedure 23 ........................................................................... 8

**Other Authorities**

Manual for Complex Litigation § 21.33 (4th ed.) ...................................................... 7

## **INTRODUCTION**

Following this Court's preliminary approval of the parties' proposed settlement, Class Counsel have become aware of at least three firms that have begun to, or intend to, solicit Class Members to sell their claims in this case in exchange for a discounted, lump-sum payout (together with all others, "Third-Party Claims Purchasers").[1] While the proposed Settlement has not yet been considered for Final Approval, Class counsel believe it prudent to raise these issues with the Court in the event that the proposed Settlement is finally approved. The sale of claims at this stage of the litigation raises serious disclosure and fairness issues for Class Members. In addition, as set forth in the accompanying Declaration of Nicholas Sanchez in Support of Plaintiffs' Motion for Prospective Order Concerning Third-Party Claim Buyout Purchases ("Sanchez Decl."), a sale of a Class Member's right to receive future proceeds from a settlement also raises important and unsettled tax issues for both the Class Member and the Administrator of the Fund. Finally, absent clear and definite procedures for establishing the validity and timing of transfers, the Claims Administrator faces uncertainty and exposure for potentially issuing payment to the wrong party.

Because of concerns Class Counsel have for the accuracy of such solicitations, the financial fairness of such transactions to Class Members, the tax issues and other administrative issues, Class Counsel respectfully submit this motion seeking an order, in the case that Final Approval is granted, establishing protocols and disclosures that will ensure that Class Members receive accurate and complete information in connection with the solicitation and terms of claim assignments and that a process is established to eliminate uncertainty concerning the proper payee of claim proceeds.[2]

---

[1] Class Counsel have been approached by two firms, Phoenix TF LLC and Claims Nexus LLC, and we are informed that a third firm has contacted the Claims Administrator. *See generally,* Stewart Decl. Accordingly, Class Counsel respectfully submit that this issue is ripe for the Court's consideration before Class Members' rights are potentially adversely impacted by solicitations and purported sales that have not been accompanied by accurate and complete disclosures and safeguards.

[2] Class Counsel conferred with the NCAA concerning the motion, and they take no position.

The existence and regulation of the activities of Third-Party Claims Purchasers is not novel, particularly in cases involving substantial settlements paid in more than one installment. Most recently an Order was entered by Judge Wilken in the NCAA NIL case to that effect. *See In re College Athlete NIL Litig.,* Case No. 4:20-cv-03919-CW, ECF No. 1028; 1047 (N.D. Cal. Sept. 5. 2025) ("NIL") (plaintiffs' motion for "judicial intervention and guidance" regarding practices of Third-Party Claim Purchasers and Amended Order thereon in connection with 10-year payout settlement to student athletes). While this case presents a significantly shorter pay out period than NIL (2 years as opposed to 10 years), a number of firms have already begun to, and intend to, seek profit from the payout period by purchasing Class Member's claims at a discounted value.

Class Counsel understands that Class Members may want to sell their claims to obtain an immediate payout, rather than waiting for settlement distributions over the two years contemplated by the proposed settlement.[3] However, Class Counsel, as stewards of the Class Members' interests, are concerned that any such transaction be carried out only after the Class Member has been fully informed of the facts relevant to the Class Member's evaluation of such an offer, including: 1) the fact that the value of the Class Member's claim (what the Class Member will be solicited to sell) will not be established until the settlement claims procedure has been completed and the amount of the Net Settlement Fund[4] has been established, and 2) that such a sale may have adverse tax consequences. In addition, the Administrator of the Settlement Fund should be protected from uncertainty and potential attendant liabilities which could occur from: a) conflicting claims as between the Class Member and the claims purchaser; and b) compliance with the fund's tax reporting responsibilities.

---

[3] Under the Settlement Agreement, the $303 million total consideration is payable in three installments: one upon Final Approval and the remaining two, respectively, one and two years after that. *See* ECF No. 163 at 2. The claims cutoff date is June 2, 2026, and, if approved, the Administrator will need a reasonable amount of time to complete its determination of the validity of claims and their individual claim values. *See* ECF No. 166.

[4] The "Net Settlement Fund" is the amount remaining for distribution to Class Members after any Court approved deductions for attorneys fees, litigation and administration costs, and service awards as well as any interest earned on the fund prior to distribution.

2

As regards fairness, Class Counsel are concerned that Third-Party Claims Purchasers cannot, and thus will not, apprise Class Members of the amounts that any such Class Member would ultimately receive from the Settlement **before** committing to a sale of their claim such that the Class Member might fully and adequately evaluate the real cost of the transaction before agreeing to it. As set forth in the Notice and Plan of Allocation, Class Members' actual individual distribution shares from the Settlement Fund depend on two factors, neither of which is currently knowable: 1) The amount of the Net Settlement Fund (*i.e.*, the sum remaining after any Court approved deductions for attorney's fees, litigation costs, costs of administration and service awards); and 2) Each Class Member's individual *pro rata* share of that Fund based on their individual claim value relative to the claim values of all other submitted and allowed claims.[5] *See, e.g.,* 159-1, Ex. C ("Plan of Allocation") ¶¶ 2, 16. Neither of these will be known until: 1) the Court approves the proposed settlement (assuming it does); 2) decides the applications for costs and fees; 3) approves the Plan of Allocation; 4) the claims deadline passes, and; 5) all claims are received and valued by the Administrator. *See id.*

Allowing third parties to purchase Class Member's claims based on the incomplete information currently available, in Class Counsel's view, presents a serious concern for the fairness of any such transaction. Class Members should be afforded accurate and relevant information, including, in addition to the actual distribution value of the Class Members' claim, the amount of the discount they will be accepting under any proposed purchase of their claim by a Third Party Claims Purchaser.

Absent intervention by the Court, the content of solicitations for sales of Class Members' claims will be unregulated and there is the potential for sophisticated firms to take advantage of a Class Member's lack of information regarding the economic basics of the proposed purchase. Absent prudent regulation of this activity, there is a risk of serious prejudice to Class Members.

---

[5] A Class Member's final distribution amount will depend on the ratio of that Class Member's allowed claim amount compared to the total value of all **actual allowed** claims. *See* Plan of Allocation ¶ 16. Not every Class Member will claim and the final value of each Class Member's claim under the plan of allocation must be individually determined.

Ground rules for establishing the requirements for an effective transfer of a claim, including timing, are also indispensable for assuring that the Claims Administrator directs payment to the correct party and is not subject to conflicting claims as well as for fulfilling the Administrator's obligation to issue tax documents to the correct party.

Additionally, as discussed in the Sanchez Declaration, sales and the timing of the sale of a Class Member's claim raises taxability issues to which the Class Member should be alerted. *See generally,* Sanchez Decl.

Therefore, Class Counsel respectfully seek the Court's intervention to permit disclosures by Class Counsel and required disclosures by any firm soliciting Class Members to sell their right to settlement proceeds as well as other procedural safeguards so as to prevent potentially uninformed and unfair outcomes to Class Members, as follows:

*First,* Plaintiffs request an order permitting the addition to the case website of disclosures relating to claims purchasers. *Second,* Plaintiffs request an order requiring that any solicitation for the purchase of claims will not be recognized by the Administrator unless it was accompanied by appropriate disclosures, especially of the risk of a highly unfavorable exchange if a class member commits to a sale of their claim before all claims are received and valued and their individual claim value is established. *Third,* to eliminate payment risk, no transfer of a Class Member's right to receive her share of settlement proceeds should be finally effective until payment of the agreed amount to the Class Member has been completed and adequate proof of such payment has been provided to the Administrator. *Fourth,* because the sale of a Class Member's right to receive payments over time may have adverse tax consequences for the Class Member, Plaintiffs request an order requiring that Class Members be advised of the existence of such tax issues and of the advisability of discussing them with a tax advisor as was required in the NIL litigation.

## RELEVANT BACKGROUND

The Parties entered into a proposed Settlement of this case in October 2025. The Court preliminarily approved that settlement on January 6, 2026. ECF Nos. 156, 163. Notice has been directed to the Class and the hearing on Final Approval of the Settlement and applications for award

4

of attorneys' fees, reimbursement of litigation and administration expenses, and service awards to the class representatives is scheduled for May 11, 2026. ECF No. 163 at 12-13. Under the settlement agreement, Defendant National College Athletic Association ("NCAA") agreed to pay $303 million into a common settlement fund in three equal installments over two calendar years. Under the Proposed Plan of Allocation, settlement monies will be paid out to Class Members in three equal installments over that same time period. Plan of Allocation ¶¶ 2,11; 163 at 2-3. Since Notice of the proposed Settlement and Preliminary Approval has been disseminated, Class Members have been submitting claims for payment under the proposed Settlement and continue to do so. The claims filing deadline is June 2, 2026. ECF No. 166.

Under the proposed Plan of Allocation, the Net Settlement Fund will be allocated among Class Members who file approved claims *pro rata* based on their relative claim values compared to those of the class as a whole. As described in Plaintiffs' Plan of Allocation, a Recognized Loss will be calculated for each Class Member who submits an allowed claim. Plan of Allocation ¶¶ 10-15. The Recognized Loss for each such Class Member will be determined under the damages methodology previously described by Plaintiffs' damages expert, Dr. Orley Ashenfelter. *See generally,* ECF No. 159-2. Under that methodology, generally, each Class Member's Recognized Loss is calculated by taking into account the school, sport, and year in which that Class Member worked and a "step down" from the wages paid to the team's lowest-paid coach in that sport, at that school, during that same year.  ECF No. 163; Plan of Allocation ¶ 12. All Class Members with allowed claims will be entitled to a $5,000 minimum payment, no matter the amount of her Recognized Loss. The $303 million dollar settlement consideration will earn interest for the time it is on deposit prior to distribution. The $303 million plus interest Gross Settlement Fund will be reduced by any attorneys' fees, expenses, costs, and service awards ordered by the Court, yielding the Net Settlement Fund. *Id.* ¶ 16. Each allowed claimant will receive her *pro rata* share of the Net Settlement Fund based on the amount of that Class claimant's Recognized Loss. That amount will then be paid to claimants in three equal installments over the course of two years. *Id.* ¶ 15; ECF No. 163 at 2-3.

5

As a result, the ultimate *pro rata* distribution amount to any particular Class Member will depend on two variables which are not yet resolved: (1) the amount of the Net Settlement Fund (which will not be known until the Court rules on Plaintiffs' forthcoming motion for attorneys' fees, costs, and class representative service awards); and (2) the sum and relative values of all allowed claims (which will not be known until after the end of the claims period). The Long Form notice posted on the Notice and Claims website so advised.[6]

As related in the accompanying Stewart Declaration, Class Counsel have been contacted by two parties who represent that they intend to communicate (and in at least one case have already communicated) with Class Members about buying their claims; Austin Viny, who represents that he is acting on behalf of a firm called Phoenix TF, LLC, and Dov Kleiner, an attorney representing a firm called Claims Nexus LLC. *See* Stewart Decl. ¶¶ 3-11. A third firm called GTS Finance also reached out to the Claims Administrator. *Id.* at ¶¶ 12-13. As described in the Stewart Declaration, at least Phoenix TF appears to be already communicating with Class members about purchasing their claims and Claims Nexus intends to do so. *See generally, id.* at ¶¶ 3-9. Counsel for Claims Nexus LLC made themselves available for a discussion of the issues raised by their intention to solicit the purchase of claims and Plaintiffs' counsel met and conferred with them regarding those issues. *Id.* ¶ 11.

---

[6] It states:

> The amount of your payment will be determined by the Plan of Allocation, if it is approved, or by such other plan of distribution that is approved by the Court. At this time, it is not known precisely how much each Authorized Claimant will receive from the Net Settlement Fund or when payments will be made.
>
> If your claim is valid, you will get a payment from the Net Settlement Fund. Your payment amount will depend on the school, sport, and year(s) in which you worked, the number of valid claims, the wages of the lowest paid coach on your team, the amount of court-approved deductions, and other factors. Valid claimants will receive a minimum $5,000 payment.

https://ncaavolunteercoachlawsuit.com/media/1n5nqvtx/ncaa-long-form-notice-final_011626.pdf; *see also* Exhibit A to ECF No. 159-3 (same)

## ARGUMENT

**A.    The Court has the authority to regulate communications between Class Members and Third-Party Claims Purchasers.**

When confronted with Third-Party Purchasers, courts recognize that "[p]reventing confusion and deception before they can happen is far preferable to taking remedial measures after they happen." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* No. 05-MD-1720, 2024 WL 3402883, *5 (E.D.N.Y. July 13, 2024) "[A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). Thus, "courts overseeing settlement proceedings have the authority to address improper communications sent by non-parties." *Chalian v. CVS Pharmacy, Inc.*, No. 2:16-CV-8979-AB-AGR, 2020 WL 7347866, at *4 (C.D. Cal. Oct. 30, 2020) (citing *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 311 (3d Cir. 2005); David F. Herr, Manual for Complex Litigation § 21.33 (4th ed.)). Courts do so under either Federal Rule of Civil Procedure 23, or under the All Writs Act, 28 U.S.C. § 1651." *Retiree Support Grp. of Contra Costa Cty. v. Contra Costa Cty.*, No. 12-CV-00944-JST, 2016 WL 4080294, at *3 (N.D. Cal. July 29, 2016); *NFL Players' Concussion Injury Litig.,* 923 F.3d 96, 108-09 (3d Cir. 2019) ("[T]he Court also had authority to enforce its orders under the All Writs Act, 28 U.S.C. § 1651, as well as authority to protect the class as a fiduciary under Federal Rule of Civil Procedure 23."). The Court also has authority to ensure that Class Members are informed and not misled about the potential value of their claims. *See In re Grand Jury Proceedings,* 654 F.2d 268, 277 & n.14 (3d Cir. 1981) (The All Writs Act "extends to all persons who are in a position to frustrate the implementation of a court order or the proper administration of justice." (internal quotation marks omitted)).

**B.    The Court and Class Counsel have a duty to protect the class and ensure that communications regarding proposed claim purchases are fair and that Class Members' decisions regarding a sale of their claims are fully informed.**

At settlement, the Court plays a fiduciary role with respect to the interests of absent Class Members. *Allen v. Bedolla,* 787 F.3d 1218, 1223 (9th Cir. 2015). Courts presiding over a class action

7

are charged "not only to protect Class Members in particular but to safeguard generally the administering of justice and the integrity of the class certification process." *O'Connor v. Uber Technologies, Inc.*, No. C-13-3826 EMC, 2014 WL 1760314, at \*3 (N.D. Cal. May 2, 2014).

Courts have found that third parties misled Class Members where they did not provide the Class Members with complete or accurate information regarding the potential value of the Class Members' claims. In *Stark v. Patreon, Inc.,* No. 22-CV-03131-JCS, 2025 WL 1592736, at \*15 (N.D. Cal. June 5, 2025), the Court found that a third-party claims aggregator had made misleading statements in connection with the purchase of claims including: "**fail[ing] to inform Class Members that their likely recovery if they submit a claim instead of assigning their claim…and opting out will be more than ten times that amount**.") *Id.* (emphasis added). In addition to ordering the claims administrator to issue a curative notice to Class Members who sold their claims to the aggregator, the Court also found that the assignments were invalid as a matter of law. *Id.* at \*18; *see also Retiree Support Grp. of Contra Costa Cnty. v. Contra Costa Cnty.,* No. 12-CV-00944-JST, 2016 WL 4080294, at \*7 (N.D. Cal. July 29, 2016) (finding that statements by third party to Class Members about proposed settlement were false, despite "semantic splitting of hairs" and therefore, finding that opt-outs obtained as a result were invalid and ordering curative notice).

While there is little authority regarding what kinds of disclosures are required for a Class Member to be fully informed prior to selling a claim that includes installment payments, the law involving assignment of structured settlements is instructive by analogy. Structured settlements usually involve an annual payment of a fixed sum over the course of several years. Third party companies offer to purchase a payee's structured settlement (a process called "factoring") in exchange for a one-time lump sum payment, usually a small percent of the total value of the settlement over its full term. Recognizing "a potential for abuse in these secondary-market transactions" legislatures "enacted paternalistic statutes regulating them." *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 599 F. Supp. 2d 809 (S.D. Tex. 2008), *aff'd,* 567 F.3d 754 (5th Cir. 2009). These states' particular concern was "to protect litigants from transferring their rights to future periodic payments for a lump sum that is inadequate." *Symetra* 775 F.3d at 245 (5th Cir. 2014)

(cleaned up). Every state and Washington D.C. has some form of Structured Settlement Protection Act ("SSPA"). *White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1186 (9th Cir. 2024). SSPAs impose disclosure and other procedural requirements and require court approval. *Id.* Under each state SSPA, factoring companies are required to make written disclosures to the payee "designed to highlight the value of the transferred payments and to contrast that value with the net amount the payee will actually receive." *See* Daniel W. Hindert, Structured Settlements and Periodic Payment Judgments § 16.04(3)(a). Other disclosures include required provisions relating to the payee's right to seek and receive independent professional advice on the transaction, itemization of fees and expenses that will be deducted from the gross amount the payee will receive, and disclosure of the discounted present value and effective interest rate of the transferred payments. *Id.* at *1187.

Ultimately, a court must determine that the assignment is in the payee's "best interest" which "refers to the personal circumstances of the individual seeking an immediate cash sum," and "is akin to ... best interest determinations" made in family, probate, or guardianship proceedings. Hindert, *supra*, § 16.05(4)(a). California's SSPA provides fifteen non-exclusive factors that a state court must consider when making this determination. *See* Cal. Ins. Code § 10139.5(b). One relevant factor from California's SSPA is "[w]hether the financial terms of the transaction, including the discount rate applied to determine the amount to be paid to the payee, the expenses and costs of the transaction for both the payee and the transferee, the size of the transaction, the available financial alternatives to the payee to achieve the payee's stated objectives, are fair and reasonable. *Id.* § 10139.5(b)(9). This standard is "largely associated **with the difference between what is being paid in cash by the transfer company and the aggregate value of the future payment rights being acquired**." *White*, 104 F.4th at 1187 (quoting Hindert § 16.05(4)(a)) (emphasis added).

Class Members here are similar to structured settlement payees in that they are entitled to some monies that will be distributed to them over the course of two years, which is why there is a market for Third-Party Claims Purchasers, who will buy claims for cash now. But those market conditions also create the same potential for abuse, with Third-Party Claims Purchasers incentivized

to offer a pittance in cash today in exchange for Class Members' full claim value, which could be as high as six-figures.

Notably, the caselaw on both opt-outs from class action settlements and payees seeking assignment of structured settlement endorse the view that, at the very least, Class Members and payees **need to know the actual value of their claim** before they can sell that claim. *See Stark,* 2025 WL 1592736, at *15 (opt-outs invalid where third-party claims aggregator misled Class Members about the value of their claims); *White*, 104 F.4th at 1187 ("best interest" analysis for structured settlement assignment includes looking at the difference between the immediate third-party payment and the actual value of the settlement over its full term).

As noted *supra,* Class Members in this case do not—and cannot—know the actual value of their claims because: (1) The final net settlement fund is not yet determined; and 2) The settlement fund will be distributed *pro rata* and the number and value of total claims submitted and approved will not be known until the end of the claims period.. Additionally, because the settlement includes a minimum payment of $5,000, there is a risk that Class Members with substantially higher claims will agree to sell to Third-Party Claims Purchasers based on an assumption – in the absence of current information otherwise – that they will receive only the minimum payment.[7]

## C. THERE ARE TAX RISKS AND ISSUES ASSOCIATED WITH THE SALE OF A CLASS MEMBER'S RIGHT TO RECEIVE SETTLEMENT FUNDS

As set forth in the Declaration of Nicholas Sanchez, the sale of a claim raises tax compliance and reporting issues for both the Administrator of the Qualified Settlement Fund ("QSF") and Class Members. Sanchez Decl. ¶ 3. Mr. Sanchez is a partner at the accounting and advisory firm Miller Kaplan Arase LLP where he advises his clients regarding the tax implications of settlements and judgments arising out of class action litigation. *Id.* at ¶ 3. As Mr. Sanchez explains, the QSF is required to issue Form 1099s to the recipients of settlement funds. *Id.* ¶ 4. In the case of a purported sale of the right to receive settlement funds, the Fund must determine whether a sale of the claim occurred, if it was valid, and only if valid may it make a settlement distribution to the purchaser and

---

[7] Plaintiffs' expert estimates that less than 1.3% of the net settlement fund will be distributed to Class Members whose damages are calculated at the $5,000 minimum. ECF No. 159-2 at ¶ 14.

issue the relevant tax form to the Third-Party purchaser. This determination carries "significant reporting risk" and administrative costs to the Fund. *Id.* ¶ 5. The validity of the sale of claims for tax purposes may depend on the timing of the transaction relative to milestones in the case as well as applicable state law. *Id.* ¶¶ 5, 6. The question complicates further with respect to the timing of the transaction as a claim sale is valid only if it occurs prior to the settlement becoming "ripe" for tax purposes which in a class action settlement may raise difficult questions. Pursuant to a Private Letter Ruling (itself only binding in the case in which it is issued) it was held that the transfer of a litigation claim to a third person can be effective only if completed prior to the expiration of appeals in the case. *Id.* ¶ 7. And "[g]enerally if a Claim Sale occurs **after** the Class Member has a right to the settlement payment, the QSF must report the settlement payment as income to the Class Member. If the Claim Sale occurs **before** the Class Member has the right to the settlement payment, the QSF can respect the Claim sale for tax purposes and report the payment as income to the claims buyer. *Id.* ¶ 9 (emphasis added).

But not only are determining who has the lawful right to the settlement payment and when for tax purposes potentially vexing issues under state law; the issue of timing of finality of an individual Class Member's right to a given distribution amount is potentially subject to question in a class action case such as this with no easy answer. Here, the judgment approving the Settlement as well as the Plan for Distribution may well be resolved and become final and unappealable prior to the Administrator's determination of the specific amount of an individual's claim value under that Plan of Distribution.[8] A question arises whether a sale of a claim which occurs subsequent to finality of the approval of the Settlement and Plan of Allocation but prior to finality of the specific distribution amounts and notice of such distribution amounts to the Class Member is sufficiently "final" such as to require the Fund to report the income as income to the Class Member as opposed to a purported buyer of the claim. And, of course, just as these questions must be resolved by the

---

[8] The Hearing on Final Approval of the proposed settlement and approving the Plan of Allocation is scheduled for May 11, 2026. ECF No. 1673 at 12. The claims period closes on June 2, 2026, and some period of time will be required by the Administrator after that to evaluate, value and pro rate claims; all of which must occur before any given Class Member's claim value will be finally established.

Administrator and the QSF, the same tax exposure questions, uncertainties and risks face the Class Member; not to mention the risk that the QSF and the Class Member may take inconsistent positions. *Id.* ¶¶ 9-12.

At a minimum, as was the case in *NIL*, it is appropriate to require, as a condition of any purchase of claims, that any Class Member considering a sale of his or her rights to receive future payments be alerted to the existence of such tax issues and be advised to discuss them with a tax advisor. *See In re College Athlete NIL Litig.,* Case No. 4:20-cv-03919-CW, ECF No. 1047, ¶ 1. (N.D. Cal. Sept. 5. 2025).

### D.  REQUESTED RELIEF

Accordingly, Class Counsel respectfully move the Court for an Order:

1. Approving the posting on the Settlement Website of a disclosure in substantially the form and content of the proposed disclosure submitted with this motion as Exhibit G to the Stewart Declaration;

2. Requiring that all Third-Party Claims Purchasers, as a condition of an effective transfer of the Class Member's right to receive proceeds under the Settlement from the Settlement Fund to be recognized by the Administrator, have transmitted to each such Class Member the disclosure submitted with this motion as Exhibit H to the Stewart Declaration prior to the Class Member entering into a sale of the Class Member's rights to receive its share of the Settlement proceeds;

3. Providing further that no transfer of any Class Member's rights to receive proceeds under the Settlement may be recognized by the Administrator until all of the following have occurred:

   a. The Class Member has been informed, after request, of the amount of the payout to which they are entitled as determined by the Administrator after the Claims Filing Date and;

      b.  The Third-Party Claims Purchaser has submitted to the Administrator as to each such transfer a complete and unredacted written Bill of Sale signed and notarized by the Class Member, which includes:

          i.  the financial terms of the transaction;

          ii.  a recital, separately signed by the Class Member, acknowledging that the Class Member, prior to signing the Bill of Sale, received and reviewed both:

              1.  The disclosure required by this Order (Exhibit H) and;

              2.  The statement of the Class Member's claim value as calculated by the Administrator;

          iii.  The agreement of the Third-Party Claims Purchaser to submit to the jurisdiction of this Court to resolve (and designating a party authorized to receive service by mail in connection with) any disputes arising out of the sale of, or payment on, a Class Member's transfer of rights to receive proceeds under the Settlement;

4.  Ordering that the Claims Administrator may not recognize any claimed assignment of a Class Member's right to receive proceeds under the Settlement unless and until the Third-Party Claims Purchaser:

      a.  Submits to the Claims Administrator proof of compliance with each of the provisions of this Court's Order;

      b.  Proof of prior payment to the Class Member of the agreed purchase amount reflected in the Bill of Sale; and

      c.  Provides to the Administrator the Indemnification Agreement attached as Exhibit I to the Stewart Declaration.

Dated: March 20, 2026                    Respectfully submitted,

**GUSTAFSON GLUEK PLLC**

By: /s/ *Dennis Stewart*

13

Dennis Stewart, CA Bar No. 99152
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 595-3299
dstewart@gustafsongluek.com

Daniel E. Gustafson, MN Bar No. 202241
(*pro hac vice*)
Anthony J. Stauber, MN Bar No. 401093
(*pro hac vice)*
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
tstauber@gustafsongluek.com

**FAIRMARK PARTNERS, LLP**

By: */s/ Micheal Lieberman*
Michael Lieberman, DC Bar No. 1033827
(*pro hac vice*)
Jamie Crooks, CA Bar No. 310447
(*pro hac vice*)
Yinka Onayemi, NY Bar No. 5940614
(*pro hac vice*)
Michael Goldberg, MA Bar No. 709203
(*pro hac vice*)
400 7th Street NW, Suite 304
Washington, DC 20004
Telephone: (818) 585-2903
michael@fairmarklaw.com
jamie@fairmarklaw.com
yinka@fairmarklaw.com
mgoldberg@fairmarklaw.com

**KIRBY McINERNEY LLP**

By: */s/Robert J. Gralewski*

Robert J. Gralewski, Jr., CA Bar No. 196410
Marko Radisavljevic, CA Bar No. 306552
1420 Kettner Blvd., Suite 100
San Diego, California 92101
Telephone: (619) 784-1442
bgralewski@kmllp.com
mradisavljevic@kmllp.com

14

Darryl J. Horowitt, CA Bar No. 100898
**COLEMAN & HOROWITT, LLP**
499 West Shaw, Suite 116
Fresno, CA 93704
Telephone: (559) 248-4820
dhorowitt@ch-law.com

Leonard B. Simon, CA Bar No. 58310
**THE LAW OFFICES OF LEONARD B.
SIMON P.C.**
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 818-0644
lens@rgrdlaw.com

*Attorneys for Plaintiffs and the Class*

15