# EXHIBIT A

**From:** Austin Viny <austin@ncaaclaimsettlement.com>
**Sent:** Monday, January 26, 2026 8:03 AM
**To:** Dennis Stewart <dstewart@gustafsongluek.com>
**Subject:** Ray v. NCAA

Hi Dennis,

Hope you are well.  I run an investment firm that has been following the Ray v. NCAA class action lawsuit.  We have been speaking to claimants in that settlement about purchasing their claims and I wanted to reach out to chat about what documentation you would like to see from us regarding transfers of claims in the case.  Let me know if you have a few minutes to chat.

Best,

Austin

*Austin*

www.ncaaclaimsettlement.com

(216) 496-4501

# EXHIBIT B

**From:** Austin Viny <austin@ncaaclaimsettlement.com>
**Date:** Tuesday, January 27, 2026 at 11:04 AM
**To:** Dennis Stewart <dstewart@gustafsongluek.com>, Bob Gralewski <BGralewski@kmllp.com>, michael <michael@fairmarklaw.com>
**Subject:** Ray v NCAA Claim Transfer

[**ATTENTION:** This message is from an external source.]

Hello,

A claimant in the Ray v. NCAA settlement is seeking to transfer ownership of their claim to Phoenix TF, LLC.  Could you advise as to what documentation you would need to see in order to successfully acknowledge this transfer?

Best,

Austin

*Austin*

www.ncaaclaimsettlement.com
(216) 496-4501

# EXHIBIT C

**From:** Austin Viny <austin@ncaaclaimsettlement.com>
**Sent:** Wednesday, January 28, 2026 1:53 PM
**To:** Dennis Stewart <dstewart@gustafsongluek.com>
**Subject:** Interest in Purchasing Claims

Hi Dennis,

Hope you are well.  Thank you for chatting with me earlier.  Per our call, I own the website www.ncaaclaimsettlement.com and run a firm called Phoenix TF, LLC.  Phoenix TF is a buyer and broker of class action and bankruptcy claims.  We are interested in making an offer to Authorized Claimants in the Ray v. NCAA case to purchase their claims in the settlement.  We are reaching out to enquire if you can provide us with the documentation you and the Claims Administrator would need to accept and acknowledge transfers of claim.

We have sent an initial email to around 30 potential claimants in this case so far to gauge their interest in receiving offers.  I've attached an example of such correspondence.

Best,

Austin

*Austin*
www.ncaaclaimsettlement.com
(216) 496-4501

# EXHIBIT D

Ray v. NCAA



↩ Reply    ↩ Reply All    → Forward    ⋯

Wed 1/28/2026 4:22 PM

Hi ███

I am reaching out to you regarding a lawsuit between volunteer coaches and the NCAA titled *Shannon Ray, et al. v. National Collegiate Athletic Association*. We believe you either were volunteer coach or worked with volunteer coaches who may be eligible to participate in the settlement.

An investment firm is purchasing claims of creditors in this case. If you were a volunteer coach, we can offer you a cash payout today. Please let me know if you are interested in chatting further. I can be reached at either austin@ncaaclaimsettlement.com or (216) 496-4501.

Best,

Austin

*Austin*
www.ncaaclaimsettlement.com
(216) 496-4501

# EXHIBIT E

Case 1:23-cv-00425-WBS-CSK     Document 170-3     Filed 03/20/26     Page 10 of 27

# NCAA Claim Settlement

## Get Paid Today for Your Claims vs the NCAA!

## About Us

## Who We Are

NCAA Claim Settlement is an independent third party, unrelated to the NCAA or any college or university. We purchase college athletes' claims in the *In re: College Athlete NIL Litigation*, the *Hubbard v. National Collegiate Athletic Association* litigation and other similar lawsuits. We offer cash today in lieu of a delayed year payout and we protect you against settlement failure and other contingencies that could result in non-payment.

## Our Mission

To provide the most user friendly and transparent marketplace to monetize your claims.

## DISCLAIMERS!! READ THIS!

1. You should consult an attorney or guardian before signing any contract regarding your settlement claim.

2. Allocation estimates that have been provided to athletes have already accounted for and deducted the amount of attorneys' fees that Class Counsel requested from the Court.

3. I may receive compensation from facilitating the sale of your claim.

4. The Buyer is purchasing your claim to generate a profit and their goal is to buy your claim for less than they ultimately recover from the litigation.

5. I am an independent third party not affiliated with the NCAA or the U.S. Court system

## TAX DISCLOSURES

- You should seek advice from a registered tax preparer or competent tax advisor about your tax obligations for any payments that you are entitled to receive under the Settlement. However, the Court overseeing the Settlement has directed us to provide the following disclosure:

THE TAX CONSEQUENCES OF ANY AGREEMENT YOU SIGN REGARDING YOUR CLAIM MAY VARY DEPENDING ON THE SPECIFIC TERMS OF THAT AGREEMENT. WITH CERTAIN TRANSACTION STRUCTURES, YOU MAY BE REQUIRED TO PAY INCOME TAXES ON THE FULL [        ] OF THE PAYMENTS THAT YOU ARE ENTITLED TO UNDER THE SETTLEMENT (EVEN

IF THE RESULTING TAX LIABILITY EXCEEDS THE AMOUNT YOU RECEIVED UNDER THE AGREEMENT). A TRANSACTION STRUCTURED AS AN OUTRIGHT OR "TRUE" SALE MAY REMOVE FUTURE SETTLEMENT PAYMENTS FROM YOUR GROSS INCOME FOR FEDERAL AND STATE INCOME TAX PURPOSES, IN WHICH CASE YOU WOULD INSTEAD LIKELY PAY TAX ON THE PURCHASE PRICE YOU RECEIVE. AS A RESULT OF A SALE, YOU WOULD ALSO BE FORFEITING ANY AND ALL RIGHTS TO RECEIVE ADDITIONAL INCOME OR FUTURE PAYMENTS UNDER THE FOURTH AMENDED STIPULATION AND SETTLEMENT AGREEMENT, IN RE: COLLEGE ATHLETE NIL LITIGATION, NO. 4:20-CV-03919 (THE "SETTLEMENT AGREEMENT"). YOU SHOULD CONSULT WITH A COMPETENT TAX ADVISOR REGARDING THE SPECIFIC TAX CONSEQUENCES OF YOUR PARTICULAR AGREEMENT BEFORE SIGNING THE AGREEMENT.

Additional information, including information about the potential tax consequences of selling your right to receive settlement payments, may be found on the Settlement website at: https://collegeathletecompensation.com/frequently-asked-questions.aspx

# PROS AND CONS OF SELLING YOUR CLAIM

TLDR

**Cons of selling your claim**

- **Getting Less:** Buyers are offering less than the full amount of your allocation estimate, generally *substantially less*. Selling now potentially means you lose out on that money if/when it is paid later

- **Losing Control:** Depending on the agreement you sign, you may give up your rights to participate in the lawsuit or have any governance on your claim moving forward

elling your claim

**- Immediate access to cash:**  You receive payment now, not next year or later, which is appealing if you need funds quickly or want to defer risk

**- Simplicity and convenience:**  Generally, a third-party handles certain administrative functions and its their responsibility to follow the case at that point as they own your claim, saving you time and effort

**- Protection from fund-distribution delays:**  If payments from the settlement are postponed, for example due to appeals, selling gives certainty of value now

# Contact Us

Please provide approx. claim size in your message so that we can best assist you!

Name

Email*

Message

Attach Files                                                                                   Attachments (0)

**SEND**

This site is protected by reCAPTCHA and the Google Privacy Policy and Terms of Service apply.

# Additional Info

## Background

On June 15, 2020, Grant House and Sedona Prince filed a lawsuit against the NCAA and the Power Five Conferences asserting that the defendants' prevented themselves and other college athletes from monetizing their name, image and likeliness, violating the Sherman Antitrust Act and other applicable laws. On September 22, 2023 and November 3, 2023 the Plaintiffs' classes were certified and on July 26, 2024, the plaintiffs filed a motion for preliminary approval of their proposed settlement. On October 7, 2024, the Court granted preliminary approval of the settlement. Judge Wilken issued her order granting final approval of the settlement on June 6, 2025.

## Disclaimer

1. Class Members need not use any third-party service in order to participate in any monetary relief;

2. The use of a third-party service will not increase any monetary relief that Class Members are eligible to receive under the Settlement;

3. No-cost assistance is available from the Claims Administrator and Class Counsel during the claims-filing period and their contact information is available on the Court-approved Settlement website: (https://collegeathletecompensation.com)

Case 1:23-cv-00425-WBS-CSK     Document 170-3     Filed 03/20/26     Page 15 of 27

Copyright © 2026 NCAA Claim Settlement - All Rights Reserved.

Powered by

GoDaddy Airo

Case 1:23-cv-00425-WBS-CSK     Document 170-3     Filed 03/20/26     Page 15 of 27

# EXHIBIT F

# Tony Stauber

| | |
|---|---|
| **From:** | Dov Kleiner <DKleiner@kkwc.com> |
| **Sent:** | Friday, February 13, 2026 11:30 AM |
| **To:** | Dennis Stewart; Tony Stauber; michael; jaimie@fairmarklaw.com; yinka; mgoldberg; Bob Gralewski; Marko Radisavljevic; dhorowitt@ch-law.com; LenS |
| **Cc:** | David M. Levy |
| **Subject:** | Ray v. NCAA |
| **Attachments:** | 1047 - Order re Renewed Motion re Third-Party Claims(14237301.1).PDF |

Our firm represents Claims Nexus LLC in connection with the **_Ray v. NCAA_** class action (1:23-cv-00425) (the "Ray NCAA Case").  Congratulations on the settlement.  Claims Nexus intends to purchase claims from some Ray NCAA Case class members who may be interested in early liquidity and certain payout and we were hoping to get the cooperation of class counsel and the claims administrator.  In the **_In re College Athlete NIL Litigation_** settlement (4:20-cv-03919-CW), with which I am sure you are familiar, Claims Nexus s affiliate was an active buyer of class member claims and an agreed upon order was entered laying out some required tax-related disclosures and other procedures was entered to protect the sellers and the claims agent; we think something similar would make sense here.  I have attached a copy of that order and would be interested in discussing with you how to best implement a similar arrangement, which we believe is beneficial both to class members and to class counsel.

**DOV KLEINER**
**D** 212.880.9874   |   [dkleiner@kkwc.com](mailto:dkleiner@kkwc.com)
**F** 212.986.8866   |



**Kleinberg, Kaplan, Wolff & Cohen, P.C.**
500 Fifth Avenue, New York, NY 10110
kkwc.com   |   Follow us on **LinkedIn**

Read our latest insights and sign up to receive our latest client alerts, invitations to events and more.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONFIDENTIALITY NOTICE:
This email together with any attachments is confidential, intended for only the recipient(s) named above and may contain information that is privileged, attorney work product or exempt from disclosure under applicable law. If you have received this email in error, or are not the named recipient(s), you are hereby notified that any use, dissemination, distribution or copying of this email or any attachments is strictly prohibited. Please immediately notify the sender at postmaster@kkwc.com and delete this email and any attachments from your computer. You should not retain, copy or use this email or any attachments for any purpose, or disclose all or any part of the contents to any person.

Thank You.

Kleinberg, Kaplan, Wolff & Cohen, P.C. reserves the right to monitor all email communications through its networks.

For additional information about Kleinberg, Kaplan, Wolff & Cohen, P.C., including a list of attorneys, please see our website at www.kkwc.com.

# EXHIBIT G

**Disclosure Regarding Companies That May Approach You About Selling Your Claim**

If the settlement in this case is approved, claims will be paid in three approximately equal payments: an initial payment made shortly after final approval, a second payment one year after final approval, and the third and final payment one year after that.

Companies may approach you to buy your claim and offer you an immediate payout amount. It is likely that the amount they offer will be lower than the total amount you are entitled to over the three payments. Please bear in mind that these companies are making offers that they deem to be in their best economic interests, and not necessarily yours.

If you have been approached to sell your right to future payments under this settlement for a lump sum payment in advance, you should determine and consider the economic cost to you of doing so and whether, considering your own financial situation and goals, that cost is acceptable as compared to being paid out in full over the two years contemplated by the settlement.

If you are approached to sell your claim in exchange for a current payment, you are urged to:

1) **Not enter into any such transaction until being informed by the Claims Administrator of the amount of money you will be receiving from the settlement.**

Class members will be paid their *pro rata* share of the net settlement fund, which is the amount of the $303 million dollar settlement fund that remains after court-approved deductions for fees, expenses, and service awards to the representative Plaintiffs.

Each class member's *pro rata* share of the net settlement fund will depend on their individual claim value relative to the claim values of all other class members who make valid claims.

For example, if fewer than all class members submit claims, which commonly occurs, money that otherwise would have been distributed to class members who did not file claims will be part of the amount distributed *pro rata* to those class members who did submit allowed claims.

Neither the amount of the net settlement fund nor the claim values of individual allowed claimants will be determined or can be determined until the claims process has been completed.  While the average allocation to class members, if all class members claim (which is unlikely), is approximately $39,000 per year before court-approved deductions, your allocation could be significantly higher, or it may be lower.

Until you know the value of your claim, you will not know with certainty what you are giving up if you sell your claim.

The only way to be sure that if you choose to sell your claim, you are selling your claim for a discount which would be acceptable to you, is to wait until claim is finally valued by the Claims Administrator.

2) **Seek the advice of a financial consultant with respect to any offer you may receive**.

Money received today is generally considered to be worth more than the same amount of money received in the future because of the ability to invest and earn a return on earlier received money.  How much more (also known as "present value") depends on what rate of return you believe you could make on the money you will be receiving in the future if you had the money earlier and invested it and the time within which you will be receiving the later payments.

To give an example:

Assume you are entitled to receive a total of $50,000 under the settlement.  Under the terms of the Settlement, you will receive that $50,000 in three equal payments of about $16,666. Subject to the time required to enter the Final Judgment, the first payment will be made sometime reasonably soon after Final Approval, the second, one year after Final Approval, and the third one year after that.

Now assume that a company offers to pay you on the date you would have received the first payment of $16,666 a one-time payment of $40,000 in exchange for your right to receive that $50,000 you would have received over the course of the two years in which you would have been paid under the settlement.

In that case, instead of the additional $33,334 ($50,000 - $16,666) which you would have received under the settlement, you will only be getting an additional $23,334, or $10,000 less, but sooner.

If you invested the additional $23,334 you receive in the lump sum payment in U.S. Treasury Bills, and assuming  an annual yield of 3.5% interest, for the two years  during which you would have awaited the second and third payments under the Settlement, you would receive approximately $1,235 in interest that you would not have received if you had accepted payments under the Settlement.  This would yield you a total of $41,235 (the $40,000 lump sum payment plus the $1,235 in interest) compared to the $50,000 you would have received under the Settlement ($8,765 less).[1]

---

[1] The example used above assumes a buyout at a 20% discount over two years ($10,000/$50,000); the impact will be higher or lower depending on whether the discount being offered by the purchaser of your claim is higher or lower.   The higher the

A financial consultant can assist you in evaluating the cost to you of accepting an earlier discounted payout offer of the money you have coming to you from the settlement over the settlement's two-year payout period **once you know what you are entitled to under the Settlement.**

**You are urged to await the final determination of your claim value and then seek the advice of a trusted financial adviser before agreeing to sell your second and third payments to any third party.**

### 3) Potential adverse tax consequences

The sale of your right to receive three payments over two years in exchange for a single lump sum payment in one year also may have important tax consequences.   Under some circumstances, you could be liable for taxes on the total amount you were entitled to under the settlement as opposed to the discounted lump sum amount for which you sold your claim.

**You should seek advice from a registered tax preparer or competent tax advisor regarding the specific tax consequences of your particular agreement before signing the agreement.**

.

---

discount, the more you are giving up in future payments in exchange for an early payment of the reduced amount.

# EXHIBIT H

**The Court Overseeing this Case has Ordered that the following disclosure be provided to you in connection with our solicitation of you to purchase your claim for payment under the Settlement in the case of Ray v. NCAA, Case No. 23-cv-00425 WBS CKS pending in the United States District Court for the Eastern District of California.**

**YOU SHOULD CAREFULLY CONSIDER THE FOLLOWING INFORMATION BEFORE AGREEING TO SELL YOUR CLAIM**

**Disclosure Regarding Companies That May Approach You About Selling Your Claim**

If the settlement in this case is approved, claims will be paid in three approximately equal payments: an initial payment made shortly after final approval, a second payment one year after final approval, and the third and final payment one year after that.

Companies may approach you to buy your claim and offer you an immediate payout amount. It is likely that the amount they offer will be lower than the total amount you are entitled to over the three payments. Please bear in mind that these companies are making offers that they deem to be in their best economic interests, and not necessarily yours.

If you have been approached to sell your right to future payments under this settlement for a lump sum payment in advance, you should determine and consider the economic cost to you of doing so and whether, considering your own financial situation and goals, that cost is acceptable as compared to being paid out in full over the two years contemplated by the settlement.

If you are approached to sell your claim in exchange for a current payment, you are urged to:

1) **Not enter into any such transaction until being informed by the Claims Administrator of the amount of money you will be receiving from the settlement.**

Class members will be paid their *pro rata* share of the net settlement fund, which is the amount of the $303 million dollar settlement fund that remains after court-approved deductions for fees, expenses, and service awards to the representative Plaintiffs.

Each class member's *pro rata* share of the net settlement fund will depend on their individual claim value relative to the claim values of all other class members who make valid claims.

For example, if fewer than all class members submit claims, which commonly occurs, money that otherwise would have been distributed to class members who did not file

claims will be part of the amount distributed *pro rata* to those class members who did submit allowed claims.

Neither the amount of the net settlement fund nor the claim values of individual allowed claimants will be determined or can be determined until the claims process has been completed.  While the average allocation to class members, if all class members claim (which is unlikely), is approximately $39,000 per year before court-approved deductions, your allocation could be significantly higher, or it may be lower.

Until you know the value of your claim, you will not know with certainty what you are giving up if you sell your claim.

The only way to be sure that, if you choose to sell your claim, you are selling your claim for a discount which would be acceptable to you, is to wait until your claim is finally valued by the Claims Administrator.

2) **Seek the advice of a financial consultant with respect to any offer you may receive**.

Money received today is generally considered to be worth more than the same amount of money received in the future because of the ability to invest and earn a return on earlier received money.  How much more (also known as "present value") depends on what rate of return you believe you could make on the money you will be receiving in the future if you had the money earlier and invested it and the time within which you will be receiving the later payments.

To give an example:

Assume you are entitled to receive a total of $50,000 under the settlement.  Under the terms of the Settlement, you will receive that $50,000 in three equal payments of about $16,666. Subject to the time required to enter the Final Judgment, the first payment will be made sometime reasonably soon after Final Approval, the second, one year after Final Approval, and the third one year after that.

Now assume that a company offers to pay you on the date you would have received the first payment of $16,666 a one-time payment of $40,000 in exchange for your right to receive that $50,000 you would have received over the course of the two years in which you would have been paid under the settlement.

In that case, instead of the additional $33,334 ($50,000 - $16,666) which you would have received under the settlement, you will only be getting an additional $23,334, or $10,000 less, but sooner.

If you invested the additional $23,334 you receive in the lump sum payment in U.S. Treasury Bills, and assuming  an annual yield of 3.5% interest, for the two years  during

which you would have awaited the second and third payments under the Settlement, you would receive approximately $1,235 in interest that you would not have received if you had accepted payments under the Settlement.  This would yield you a total of $41,235 (the $40,000 lump sum payment plus the $1,235 in interest) compared to the $50,000 you would have received under the Settlement ($8,765 less).[1]

A financial consultant can assist you in evaluating the cost to you of accepting an earlier discounted payout offer of the money you have coming to you from the settlement over the settlement's two-year payout period **once you know what you are entitled to under the Settlement.**

**You are urged to await the final determination of your claim value and then seek the advice of a trusted financial adviser before agreeing to sell your second and third payments to any third party.**

### 3) Potential adverse tax consequences

The sale of your right to receive three payments over two years in exchange for a single lump sum payment in one year also may have important tax consequences.   Under some circumstances, you could be liable for taxes on the total amount you were entitled to under the settlement as opposed to the discounted lump sum amount for which you sold your claim.

**You should seek advice from a registered tax preparer or competent tax advisor regarding the specific tax consequences of your particular agreement before signing the agreement.**

Further information about the case and the proposed Settlement can be found at https://ncaavolunteercoachlawsuit.com and by contacting Class counsel.

---

[1] The example used above assumes a buyout at a 20% discount over two years ($10,000/$50,000); the impact will be higher or lower depending on whether the discount being offered by the purchaser of your claim is higher or lower.   The higher the discount, the more you are giving up in future payments in exchange for an early payment of the reduced amount.

# EXHIBIT I

INDEMNIFICATION OF TAX LIABILITIES

Purchaser hereby represents for the benefit of A.B. Data Ltd. ("A.B. Data") that Purchaser has provided Seller with all required disclosures prior to Seller's execution of this Bill of Sale, and this Bill of Sale was entered into without any misleading statements, coercion, or material omissions from or by the Purchaser to the Seller.  Solely as between Purchaser and A.B. Data, Purchaser agrees to hold A.B. Data harmless from any losses arising out of any determination that Seller is not an eligible class member, or is not legally entitled to receive any payment from the Settlement Funds (including, without limitation, any determination that any laws, regulations, court orders, or other lienholders or payees have a superior or conflicting claim to the same funds or otherwise restrict or limit a third-party's eligibility to receive payment).  Purchaser further acknowledges that A. B. Data shall have no responsibility for the evaluation of competing claims or priorities among lienholders or other third parties.  Purchaser hereby also agrees to indemnify and hold A.B. Data, the Qualified Settlement Fund (the "Fund") and any and all of its respective directors, managers, employees, and controlling persons (collectively and separately each "Indemnified Party") harmless from and against and agrees to defend, and will pay to each Indemnified Party the amount of, any losses (including attorneys' fees) awarded against or incurred or suffered by such Indemnified Party whether or not involving a third-party claim, demand, action or proceeding, arising out of any and all claims, demands, obligations, losses, liabilities, damages, costs and expenses (including U.S. federal taxes, state and local income taxes, withholding taxes, and any interest and penalties) which the Indemnified Party may suffer as a result of any claims, liabilities, or charges asserted against such Indemnified Party by the Internal Revenue Service (the "IRS") or any state or local tax authority) with respect to the filing and reporting (or failure to file and report) any returns or reports relating to the sale of the claim pursuant to the Bill of Sale, and any subsequent payments, required by the IRS or any state and local tax authority with respect thereto, except to the extent that such losses result from the gross negligence, recklessness, or willful misconduct of the Indemnified Party.

If any claim, demand, action, or proceeding (including any investigation by any governmental authority)  shall be brought or alleged against an Indemnified Party in respect of which indemnity is to be sought pursuant to this Bill of Sale, the Indemnified Party shall, as soon as reasonably practicable after receipt of notice of the commencement of any such claim, demand, action or proceeding, notify Purchaser in writing of the commencement of such claim, demand, action or proceeding enclosing a copy of all papers served, if any; provided that the omission to so notify Purchaser will not relieve Purchaser from any liability that it may have to the Indemnified Party under this Indemnification Agreement